## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO, CLEVELAND DIVISION

| | |
|---|---|
| NANCY SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| CITY OF LORAIN, JOEL MILLER, | ) HON. |
| RUSS CAMBARARE, THE ESTATE | ) |
| OF CEL RIVERA, PETE REWAK, | ) |
| MARK CARPENTIERE, JONATHAN | ) MAG. |
| ROSENBAUM, LORAIN COUNTY, | ) |
| AND MARGARET GRONDIN. | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |

## COMPLAINT

Plaintiff, NANCY SMITH, by her undersigned attorneys, complain of

Defendants, CITY OF LORAIN, JOEL MILLER, RUSS CAMBARARE, THE

ESTATE OF CEL RIVERA, PETE REWAK, MARK CARPENTIERE, JONATHAN

ROSENBAUM, LORAIN COUNTY, AND MARGARET GRONDIN, as follows:

### Introduction

1.      Plaintiff, Nancy Smith – a hardworking loving, single mother of four -

was ripped from society for 15 years of her life.

2.      Nancy's loving children were torn from her arms.

3.      Falsely accused and wrongfully convicted of unimaginable crimes,

Nancy was sentenced to effectively die in prison.

4.     Nancy spent more than 15 years wrongfully incarcerated for crimes she did not commit.

5.     Never losing hope, Nancy fought tirelessly each moment of every day to return home where she always belonged.

6.     Now free, Nancy lives each day with the physical injuries, mental anguish, and emotional trauma caused by Defendants' egregious misconduct.

7.     Not only was Nancy completely innocent of these crimes, but significant evidence demonstrates that the crimes never actually occurred.

8.     In 1993, Defendant Margaret Grondin manufactured a sinister insurance scam that preyed upon the most vulnerable in society: young children.

9.     For Defendant Grondin, the false, fabricated, and manufactured allegations against Nancy were nothing more than a means to an end.

10.     Defendant Grondin manipulated children into repeating false allegations of sexual assault against Nancy for one reason: a pay day.

11.     To facilitate this scheme, Defendant Grondin manufactured false allegations of child sexual assault against Nancy, a local school bus driver for Head Start.

12.     Defendant Grondin's scam succeeded – she became a millionaire.

13.     Nancy's life was ruined in the process.

14.     Tragically, Defendant Officers from the Lorain Police Department had the ability to stop Defendant Grondin's insurance scheme before Nancy was ever wrongfully charged.

15.     During the earliest stages of the criminal investigation, Defendant Officers conducted interviews of the children, purported witnesses, and Ms. Grondin.

16.     As part of this investigation, the Defendant Officers uncovered exculpatory evidence that completely discredited the false allegations against Nancy.

17.     After learning of this exculpatory evidence, the Defendant Officers discovered that probable cause did not exist to initiate charges against Nancy.

18.     After learning of this exculpatory evidence, the Defendant Officers came to learn that the children were "coaxed" by parents, provided incoherent and illogical responses, and were not the victims of sexual abuse.

19.     The Defendant Officers buried this exculpatory evidence from Nancy prior to trial.

20.     While probable cause was non-existent, and prior to Nancy being charged with any crime, Defendant Rosenbaum joined Defendants' conspiracy to frame Nancy for crimes she did not commit.

21.     In doing so, Defendant Rosenbaum assisted the other Defendants in manufacturing false and fabricated evidence.

22.     At the time he joined the conspiracy and committed this misconduct, Defendant Rosenbaum was aware that probable cause did not exist against Nancy.

23.     Defendant Rosenbaum knew from the time he joined the conspiracy until the 1994 trial that probable cause did not exist to charge Nancy for any crime and that she was innocent of the allegations against her.

24.     Ignoring this, Defendant Rosenbaum, in an investigative capacity with the other Defendant Officers, conspired to frame Nancy for crimes she did not commit.

25.     He did so by fabricating false evidence and participating in the Defendant Officers' decision to initiate charges against Nancy knowing that probable cause did not exist.

26.     Tragically, Defendants' plan to frame Nancy succeeded.

27.     At the 1994 trial, Nancy was wrongfully convicted of rape, attempted rape, complicity to rape, and gross sexual imposition of four young children.

28.     Contrary to the false narrative presented at trial, Nancy dedicated her life to loving children, protecting them, and driving them to school.

29.     The State's manufactured case against Nancy hinged on false fabricated evidence manufactured by Defendants' egregious misconduct.

30.     Meanwhile, Defendants acquired exculpatory evidence that would have unraveled the fabricated narrative used to wrongfully convict Nancy.

31.     Defendants intentionally withheld such exculpatory evidence to secure Nancy's wrongful conviction.

32.     Due to Defendants' egregious misconduct, Nancy was wrongfully convicted and sentenced to decades of wrongful imprisonment.

33.   Every wrongful conviction is tragic, but Nancy's is particularly heartbreaking.

34.   At the time of her arrest, Plaintiff was a loving mother and a pillar in her community.

35.   Instead of raising her precious children, Nancy was thrown into a maximum-security prison that was incapable of protecting her.

36.   Defendants' misconduct tore apart Nancy's family.

37.   Her children were unjustifiably taken from their mother's loving arms – and each other – all because Defendants enabled Defendant Grondin's insurance scheme to exist and buried the exculpatory evidence that would have exposed it.

38.   Fortunately for Nancy, Defendants' misconduct has since unraveled.

39.   On February 25, 2022, Nancy's wrongful convictions were vacated.

40.   That same day, all charges were dismissed.

41.   Nancy seeks to hold Defendants accountable for their egregious misconduct.

42.   This lawsuit seeks to bring the injustice that happened to Nancy to light so that it will never occur again.

## Jurisdiction

43.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

44. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims pursuant to U.S.C. § 1367.

45. Venue is proper under 28 U.S.C. § 1391(b). The majority of Defendants reside in this district and the events and omissions giving rise to Plaintiff's claims occurred in this district.

## Parties

46. Plaintiff Nancy Smith is a 66-year-old resident of Lorain, Ohio.

47. At all times relevant hereto, Defendants Joel Miller, Russ Cambarare, The Estate of Cel Rivera, Pete Rewak, Mark Carpentiere (hereinafter "Defendant Officers"), were police officers in the Lorain Police Department. All are sued in their individual capacities and acted under color of law and within the scope of their employment during the investigation at issue.

48. Defendant City of Lorain is a municipal corporation under the laws of the State of Ohio. The City of Lorain is liable for all torts committed by the Defendant Officers while employed by the City of Lorain pursuant to the doctrine of *respondeat superior*. Defendant City of Lorain is additionally responsible for the official policies of the Lorain Police Department. The City of Lorain is or was the employer of each of the Defendant Officers.

49. Jonathan Rosenbaum served as a deputy prosecutor in Lorain County in 1994. He is sued in his individual capacity and acted under color of law and within the scope of his employment during the investigation at issue. At the time of

6

his involvement, Mr. Rosenbaum's employment fell under the purview of Lorain County.

50.     Defendant Lorain County is a municipal corporation under the laws of the State of Ohio.  The Lorain County is liable for all torts committed by the Defendant Rosenbaum while employed by the Lorain County Prosecutor's Office pursuant to the doctrine of *respondeat superior*.  Lorain County is or was the employer of Defendant Rosenbaum.

51.     Defendant Margaret Grondin was under the control of Defendants prior to Plaintiff's 1994 trial. She is sued in her individual capacity.

52.     At all times relevant to this action, each of the named individual Defendants acted individually and/or collectively, under the color of the laws, regulations, and customs of the State of Ohio.  Each Defendant's actions constituted "state action" as defined under federal law.

**FACTS**

**Defendants' Investigation into the False Fabricated Allegations
Against Nancy Smith**

53.     In May 1993, the Lorain Police Department started their investigation into allegations of sexual abuse involving pre-school bus riders of the Head Start program.

54.     The investigation of Nancy Smith began when Defendant Grondin informed Lorain County Children's Services and the Lorain Police Department that Defendant Grondin's daughter had been sexually abused.

55.    From inception, Defendant Grondin's allegation was false and fabricated.

56.    Defendant Grondin also spoke with other parents whose children had been on the Head Start bus with her daughter.

57.    Defendant Grondin falsely informed the Defendant Officers that additional children were abused.  These allegations, too, were false.

58.    As a result, the investigation expanded to include other children.

59.    Lorain Detective Tom Cantu led the investigation from the very beginning.

60.    Early in the investigation, Detective Cantu requested that Nancy submit to a polygraph examination.

61.    Nancy voluntarily agreed to do so.

62.    There, Nancy was questioned extensively about the allegations.

63.    Nancy passed the polygraph examination and showed no deception when denying involvement.

**Detective Cantu's Investigation Exonerated Nancy Smith of Any Criminal Misconduct and Determined Probable Cause Did Not Exist**

64.    By 1993, Detective Cantu was in the youth/gang division of the Lorain Police Department.

65.    Detective Cantu performed a full investigation into the allegations.

66.    Detective Cantu's investigation was extensive and included interviews of the alleged victims, potential witnesses, parents, and suspects, among other things.

67.     On May 25, 1993, Detective Cantu interviewed 11 children who rode Nancy's bus.  As a result of those interviews, Detective Cantu documented in his report that: "[t]he children were questioned if Nancy had ever touched them in a bad way, or in any way which would hurt, or upset them, and each one stated that she had never touched them…All of the children stated that they liked Nancy, their bus driver, and that she was nice."

68.     At the conclusion of his investigation, Detective Cantu determined that no crimes had occurred.

69.     Detective Cantu determined that no probable existed.

70.     Detective Cantu determined that no charges should be brought against Nancy.

71.     After Detective Cantu's investigation exonerated Nancy from any wrongdoing, the Defendant Officers and Defendant Rosenbaum conspired to conduct a sham investigation into the allegations.

## Knowing Probable Cause Did Not Exist, Defendant Rosenbaum Joins Conspiracy with Law-Enforcement Defendants

72.     Defendants' sham investigation into the allegations was prompted by a media onslaught by Defendant Grondin.

73.     After Detective Cantu's investigation concluded that the allegations were unfounded, Defendant Grondin lobbied the media and the Mayor of Lorain to initiate false charges.

74.     At this time, Defendant Rosenbaum joined the conspiracy to frame Nancy for crimes she did not commit.

75.     Defendant Rosenbaum joined the conspiracy after Detective Cantu thoroughly investigated the allegations and determined that the allegations were unfounded, that Nancy was innocent, and that probable cause did not exist to charge her for any crimes.

76.     In doing so, Defendant Rosenbaum conspired with Defendants to reopen a closed investigation.

77.     Defendant Rosenbaum then assisted the Defendant Officers in fabricating and manufacturing false evidence against Nancy.

78.     To do so, Defendants coerced witnesses, conducting unduly suggestive questioning and identification procedures, and otherwise manufactured a false case against Nancy.

79.     Defendants did so understanding that probable cause did not exist and that Nancy was actually innocent of the allegations against her.

80.     Defendants' sham investigation hinged on manufacturing false evidence and withholding exculpatory evidence to secure false charges and Nancy's wrongful conviction.

81.     Given that probable cause did not exist, Defendant Rosenbaum engaged in such misconduct in his investigative capacity.

**By November 10, 1993, Defendants' Conspiracy Successfully Resulted in Nancy Being Charged With Crimes She Did Not Commit**

82.     Having fabricated false evidence, coerced witnesses, conducting unduly suggestive identification and questioning procedures - and despite Nancy's innocence and the absence of probable cause - Defendants initiated false charges

against Nancy on November 10, 1993, for rape, gross sexual imposition, attempted rape, and complicity to rape.

83.     At the time of charging, Defendants understood that they did not have probable cause to charge Nancy with any crime.

84.     Nevertheless, they proceeded forward with their ongoing conspiracy.

85.     Nancy's world changed forevermore on November 10, 1993, when she was arrested.

86.     To this day, Nancy's life has never been the same.

87.     In furtherance of their quest to falsely establish probable cause against Nancy, Defendants intentionally failed to disclose evidence unearthed during their investigation which illustrated that probable cause never existed.

**Due to Defendants' Misconduct and Ongoing Withholding of Exculpatory Evidence, Nancy was Wrongfully Convicted at Her 1994 Trial**

88.     In 1994, Nancy was tried by a Lorain County jury.

89.     Nancy's defense was centered on her actual innocence.

90.     The State's case relied on the false and fabricated evidence manufactured by Defendants.

91.     Even still, the State's case was incredibly weak.

92.     Given the weakness of the State's case, Defendant Rosenbaum painted a picture of frightened children and informed the jury that it was inconceivable that the allegations could be incorrect because children "really don't know what lies are at 4 years old."

11

93.     Defendant Rosenbaum implored the jury to overlook inconsistencies and lack of detail in the purported victims' accounts.

94.     Defendant Rosenbaum was successful in obtaining Nancy's wrongful conviction due to the egregious misconduct outlined above.

95.     Defendant Rosenbaum was able to secure a wrongful conviction because Defendants completely violated Nancy's constitutional rights.

96.     By trial, the Defendant Officers withheld exculpatory evidence that would have completely discredited the State's case against Nancy at trial.

97.     Specifically, the Defendant Officers withheld evidence that would have demonstrated that the allegations against Nancy were false.

98.     For instance, the Defendant Officers withheld evidence that would have completely discredited the credibility of the State's main witness: Defendant Grondin.

99.     Defendant Grondin was the main witness for the State at Nancy's 1994 criminal trial.

100.    The Defendant Officers withheld Defendant Grondin's criminal record from the Lorain County Prosecutor's Office.

101.    Unknown to Plaintiff and her counsel, by the time of the 1994 trial, Defendant Grondin had been involved in the distribution of at least two kilograms of cocaine in Lorain County during 1989 and 1990.

102.    As part of that drug trafficking operation, Defendant Grondin received large quantities of cocaine at her residence in Lorain where she lived with her three minor children.

103.    Defendant Grondin's home was also used as a drop off point for the money to purchase cocaine.

104.    Defendant Grondin was ultimately arrested and agreed to serve as an informant for the Government.  At the time, Defendant Grondin was facing a sentence of 10 years to life imprisonment.

105.    The Defendant Officers withheld Defendant Grondin's criminal background from Plaintiff and her counsel at trial.

106.    Due to the withholding of exculpatory and impeachment evidence, Defendant Grondin was not cross-examined about her prior felony record.

107.    The Defendant Officers withheld additional evidence that would have demonstrated that the allegations against Nancy were manufactured by Defendant Grondin and other parents.

108.    The withheld exculpatory evidence includes undisclosed interviews with children – both the accusers and other witnesses –which demonstrates Nancy's innocence.

109.    The withheld exculpatory evidence also includes evidence from Dr. Richardson which demonstrates Nancy's innocence.

110.    The Defendant Officers also fabricated statements from the young children who rode Nancy's bus, alleging that Nancy had sexually abused them.

111.    Further, no Defendants disclosed that the allegations – and purported evidence against Nancy – was a complete fabrication by Defendants.

112.    Nancy's trial was nothing more than a sham proceeding.

113.    As a result of Defendants' misconduct, Nancy was convicted of rape, attempted rape, complicity to commit rape, and gross sexual imposition and received a sentence of 30 to 90 years imprisonment.

114.    At her sentencing, Nancy tearfully exclaimed: "I'm a mother.  I just want my children…I never touched these children, never.  I never hurt them in any way."

115.    For the next three decades, Nancy fought tirelessly to prove her innocence.

## Nancy's Exoneration

116.    For nearly thirty years, the Defendants contrived to frame Nancy for unimaginable crimes, depriving her of her freedom without due process of law.

117.    Nancy fought her wrongful conviction for three decades, asserting her innocence to the charges against her at each step.

118.    On February 25, 2022, Nancy's wrongful conviction was finally vacated and the charges dismissed.

119.    In doing so, the elected Lorain County Prosecutor, J.D. Tomlinson, apologized to Nancy on behalf of the State of Ohio: "To Miss Smith…I want to say that I apologize to you, especially for what was done to your families as a result of

this ill-conceived prosecution.  On behalf of the State of Ohio, I wish nothing but the best for you and your loved ones."

120.    At long last, Nancy was finally exonerated.

121.    The consequences of Defendants' misconduct  - the false allegations, fabricated false evidence, withholding of exculpatory evidence, malicious prosecution, and wrongful incarceration – haunt Nancy to this day.

## Plaintiff's Damages

122.    Nancy Smith was only 37 years old when she was framed for crimes she did not commit.

123.    Her entire life was turned upside down with no warning.

124.    Maliciously arrested and prosecuted for unimaginable and fictitious crimes, Defendants' misconduct robbed Nancy of the opportunity to raise her children.

125.    It traumatizes Nancy and her children to this day.

126.    Instead of living her life, Nancy spent the next 28 years defending herself and her name for crimes she did not commit.

127.     Nancy was ripped from her home, her vocation, and her family, and sentenced to 30-90 years' imprisonment. While unlawfully detained, she missed out raising her children, and on multiple holidays, birthdays, weddings, and family gatherings.

128.    While wrongfully incarcerated, Nancy had to suffer unimaginable physical and emotional pain.

129.    While fighting for her life, Nancy endured the unimaginable losses of her mother and father, among other close family and friends.

130.    Instead of being able to properly grieve the loss of a loved one, Nancy was brought to the funeral home in shackles, where the number of people present was limited to three.

131.    Neither of Nancy's parents survived to see the day when Nancy was finally vindicated and exonerated.

132.    Nancy suffered incredibly physical pain and injuries while wrongly incarcerated.  The medical care was so poor in prison that Nancy ultimately lost her entire top row of teeth.

133.    Nancy was also deprived of opportunities to engage in meaningful labor, to develop her career, and to pursue her interests and passions. She has been deprived of all the basic pleasures of human experience, from the simplest to the most important, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

134.    Nancy's years of unlawful arrest, prosecution, and imprisonment caused her to suffer from extreme trauma, and physical, emotional and psychological pain, including, but not limited to: humiliation, constant fear, severe anxiety, deep depression, despair, and anger, which persist to this day.

**FEDERAL LAW CLAIMS**

**Count I – 42 U.S.C. § 1983**
**Detention Without Probable Cause**

135.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

136.     As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of her constitutional right to be free from unlawful prosecution and continued detention without probable cause.

137.     In the manner described more fully above, the Defendants made, influenced and/or participated in the decision to prosecute Plaintiff for rape, gross sexual imposition, attempted rape, and complicity to rape - charges for which prosecution there was no probable cause and which caused Plaintiff to suffer a deprivation of liberty. Their misconduct included falsifying and manipulating evidence and withholding exculpatory and impeachment evidence.

138.     As described more fully above, the prosecution was resolved in Plaintiff's favor in a manner indicative of her innocence.

139.     The Defendants' misconduct directly resulted in the unlawful prosecution and continued deprivation of Plaintiff's liberty in violation of her constitutional rights.

140.     As a result of this violation of her constitutional rights, Plaintiff suffered physical injuries, including, but not limited to: emotional distress, great mental

anguish, humiliation, anxiety, the threat of physical harm, and other injuries as is more fully alleged above.

141.   The Defendants' misconduct, as described in this Count, was objectively unreasonable and was undertaken intentionally with malice and willful indifference to Plaintiff's constitutional rights.

142.   The misconduct described in this Count was undertaken pursuant to a routine practice of the municipal and government Defendants to pursue wrongful prosecutions and wrongful convictions through reckless investigations and fabricated evidence. In this way, the municipal and government Defendants violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

143.   These widespread practices, so well-settled so as to constitute *de facto* policy in the City of Lorain were able to exist and thrive because city policymakers with authority over these entities exhibited deliberate indifference to the problem, thereby effectively ratifying it.

144.   The widespread practices described in the preceding paragraphs were allowed to flourish because the municipal and government Defendants declined to implement sufficient training and/or enforce legitimate oversight and punishment.

### Count II – 42 U.S.C. § 1983
### Due Process Violations

145.    Each paragraph of this Complaint is incorporated as if restated fully herein.

146.    In the manner described more fully above, the Defendants, individually, jointly and in conspiracy with each other, while acting under color of law and within the scope of their employment, deprived Plaintiff of her constitutional right to a fair trial.

147.    In the manner described more fully above, Defendants conducted a reckless investigation, deliberately withheld exculpatory evidence, and fabricated false reports, false testimony, and other evidence. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

148.    The Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying her constitutional right to a fair trial in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

149.    As a direct and proximate result of the Defendants' actions, Plaintiff's constitutional rights were violated, and she suffered from injuries and damages, including, but not limited to: the loss of liberty, physical injuries, the threat of physical injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

150.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and with willful indifference to Plaintiff constitutional rights and innocence.

151.   Defendants, through affirmative acts or omissions, breached their legal and constitutional duties to provide exculpatory evidence to Plaintiff, thereby misleading and misdirecting the criminal prosecution of Plaintiff and precluding Plaintiff attempts to free herself from her wrongful imprisonment, including her post-conviction litigation.

152.   Defendants who were supervisors charged with overseeing both the investigation in the case at hand and the other Defendants knew of the Defendants' misconduct, the suppression of exculpatory evidence, and the fabrication of a manufactured case against Plaintiff. These supervisors, nonetheless, intentionally ignored Defendants' misconduct and held Plaintiff responsible for crimes she did not commit.

153.   The misconduct described in this Count was undertaken pursuant to a routine practice of the municipal and government Defendants to pursue wrongful prosecutions and wrongful convictions through reckless investigations and fabricated evidence. In this way, the municipal and government Defendants violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

154.   These widespread practices, so well-settled so as to constitute *de facto* policy in the City of Lorain and the other Defendant municipalities and governments,

were able to exist and thrive because city and government policymakers with authority over these entities exhibited deliberate indifference to the problem, thereby effectively ratifying it.

155.    The widespread practices described in the preceding paragraphs flourished because the municipal and government Defendants declined to implement sufficient training and/or enforce legitimate oversight and punishment.

### Count III – 42 U.S.C. § 1983 – Fourth and Fourteenth Amendments Fabrication of False Evidence

156.    Each paragraph of this Complaint is incorporated as if restated fully herein.

157.    In the manner described more fully above, the Defendants, individually, jointly and in conspiracy with each other, fabricated evidence, including, without limitation: false police reports, fabricated statements, and fabricated testimony introduced at court proceedings. The Defendants knowingly fabricated this evidence. A reasonable likelihood exists that the false evidence affected the decision of the court that considered this false evidence when determining whether probable cause existed.

158.    The Defendants were acting under color of law and within their scope of employment when they took these actions.

159.    The Defendants' misconduct directly resulted in the unjust continued incarceration of Plaintiff, thereby denying her constitutional right to due process as guaranteed by the U.S. Constitution. In 1993, no reasonable officer or investigator would have believed that fabricating statements and evidence was lawful. Absent this

misconduct, there would have been no probable cause for Plaintiff's continued detention, and the prosecution of Plaintiff could not and would not have been pursued.

160.　Defendants, through affirmative acts or omissions, breached their legal and constitutional duties to provide exculpatory evidence to Plaintiff, thereby misleading and misdirecting the criminal prosecution of Plaintiff and precluding Plaintiff's attempts to free herself from her wrongful imprisonment, including through post-conviction litigation.

161.　By failing to provide exculpatory evidence in connection with these post-conviction proceedings, Defendants violated Plaintiff's legal and constitutional rights, including her right to rely on this evidence in support of motions and petitions for post-conviction relief, and caused her continued imprisonment and new violations of her civil rights.

162.　As a direct and proximate result of the Defendants' actions, Plaintiff's constitutional rights were violated, and she suffered from injuries and damages, including but not limited to the loss of liberty, physical injuries, the threat of physical injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### Count IV – 42 U.S.C. § 1983
### Supervisory Liability

163.　Each paragraph of this Complaint is incorporated as if restated fully herein.

164.   The continued wrongful detention Plaintiff was caused by the deliberate indifference and recklessness of supervisory Defendants when they failed to adequately train and supervise the individual Defendants.

165.   Specifically, these supervisory Defendants were personally involved in the case against Plaintiff and/or knew or, in the absence of their deliberate indifference and recklessness, should have known of their subordinates' unconstitutional actions and related misconduct in the case.

166.   Furthermore, these supervisory Defendants failed to supervise the Defendants in constitutionally adequate law enforcement practices, thereby encouraging and/or permitting their employees and other Defendants to engage in a reckless investigation, to coerce and fabricate false inculpatory evidence and to withhold exculpatory and impeachment evidence, which caused the constitutional deprivations suffered by Plaintiff.

167.   These failures in producing exculpatory evidence, fabrications and other investigative procedures were contrary to accepted methods used by law enforcement agencies.  The fact that the Defendant supervisors failed to train and supervise their subordinates to ensure that they employed proper investigation procedures demonstrates deliberate indifference and reckless disregard for Plaintiff's constitutional rights.

168.   The personal involvement of the Defendant supervisors, through their actions and omissions, proximately and directly caused the constitutional deprivations and grievous personal injuries suffered by Plaintiff, including the above-mentioned injuries and damages.

169.   The misconduct described in this Count was objectively unreasonable, and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Plaintiff's clearly established constitutional rights.

**Count V - 42 U.S.C. § 1983**
**Failure to Intervene**

170.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

171.   In the manner described above, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct, despite having a reasonable opportunity to do so.

172.   As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, she suffered pain and injuries, as well as emotional distress.

173.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's rights.

174.   The misconduct described in this Count was undertaken pursuant to the policy and practice of the municipal and government Defendants in the manner described more fully in preceding paragraphs and was tacitly ratified by policymakers for the municipal and government Defendants with final policymaking authority.

24

## Count VII - 42 U.S.C. § 1983
### *Monell* Claim Against Defendant City of Lorain

175.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

176.    The actions of Lorain Defendants in fabricating and withholding material exculpatory information from Plaintiff and his counsel were undertaken pursuant to the policies and practices of the City of Lorain Police Department, described above, which were ratified by policymakers for the City of Lorain with final policymaking authority. These policies and practices included the failure to adequately train, supervise, and discipline officers on the requirements concerning the prompt disclosure of exculpatory evidence and the prohibition of fabricating evidence.

177.    The policies and practices described in this Count were maintained and implemented by the Defendant City of Lorain with deliberate indifference to Plaintiff's constitutional rights.

178.    As a direct and proximate result of the Defendant City of Lorain's actions, Plaintiff's constitutional rights were violated, and she suffered injuries and damages, as set forth in this Complaint.

179.    The Defendant City of Lorain is therefore liable for the misconduct committed by its officers.

## STATE LAW CLAIMS

### Count VIII – State Law Claim
### Intentional or Reckless Infliction of Emotional Distress

180.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

181.    As described more fully in the preceding paragraphs, by framing Plaintiff for crimes she did not commit, Defendants intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress.

182.    In doing so, the Defendants' conduct was extreme and outrageous, going beyond all possible bounds of decency such that it can be considered completely intolerable in a civilized society, and this conduct caused Plaintiff to suffer serious emotional distress of the nature no reasonable man or woman could be expected to endure.

183.    The misconduct described in this Count was undertaken with malice, bad faith, and in a wanton and reckless manner, and was undertaken by the Defendants within the scope of their employment.

184.    As a result of this misconduct, Plaintiff sustained injuries, including emotional pain and suffering, as is more fully alleged above.

### Count XIV
### Respondeat Superior

185.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

186.    In committing the acts alleged in the preceding paragraphs, the Defendants were members and agents of the City of Lorain, Lorain Police Department, and the Lorain County Prosecutor's Office, acting at all relevant times within the scope of their employment.

187.    The above-names entities are liable as principal for all state law torts committed by their agents.

WHEREFORE, Plaintiff, NANCY SMITH, respectfully requests that this Court enter judgment in her favor and against Defendants CITY OF LORAIN, JOEL MILLER, RUSS CAMBARARE, THE ESTATE OF CEL RIVERA, PETE REWAK, MARK CARPENTIERE, in their individual capacities, JONATHAN ROSENBAUM, in his individual capacity, LORAIN COUNTY, AND MARGARET GRONDIN, in her individual capacity, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, NANCY SMITH hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


Respectfully submitted,


/s/ Elliot Slosar
*One of Plaintiff's Attorneys*

27

Jon Loevy
Elliot Slosar
Amy Robinson Staples
Margaret Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902