# CORSA

**EXHIBIT A**

## County Risk Sharing Authority
## 2017-2018 MEMORANDUM OF COVERAGE
### Attaching to Coverage Agreement # CORSA CA 001 20170501

| Member Name: Lorain County | | Member Number: CO - 0560 | |
|---|---|---|---|
| **COVERAGE** | **LIMITS OF LIABILITY** | **MEMBER DEDUCTIBLE** | **RETROACTIVE DATE(S)** |
| **I. LIABILITY Claims Made Coverage** | | | |
| **A.** **GENERAL LIABILITY** | $1,000,000 each Occurrence<br>See p. 5, I. A | $25,000 | May 1, 1996 |
| **B.** **LAW ENFORCEMENT LIABILITY** | $1,000,000 each Occurrence<br><br>See p. 5, I. B | $25,000 | May 1, 1996 |
| **C.** **AUTOMOBILE LIABILITY** | $1,000,000 each Occurrence<br>See p. 5, I. C | $25,000 | May 1, 1996 |
| **D.** **ERRORS AND OMISSIONS LIABILITY** | $1,000,000 each Occurrence<br>$1,000,000 annual aggregate<br>$100,000 each Occurrence Back Wages<br>See 5, I. D | $25,000 | May 16, 1991 |
| **E.** **OHIO STOP GAP EMPLOYERS' LIABILITY** | $1,000,000 each Occurrence<br><br>See p. 5, I. E | $25,000 | May 1, 1996 |
| **F.** **EMPLOYEE BENEFITS LIABILITY** | $1,000,000 each Occurrence<br><br>See p. 5, I. F | $25,000 | May 1, 1996 |
| **G.** **PRIVACY AND SECURITY LIABILITY** | $ 1,000,000 each Occurrence<br>$ 1,000,000 annual aggregate | $25,000 | May 1, 2014 |
| **PRIVACY RESPONSE EXPENSES** | $500,000 (included in aggregate) | $25,000 | May 1, 2014 |
| **CLAIMS EXPENSES, REGULATORY PROCEEDINGS/ PENALTIES** | $250,000 (included in aggregate) | $25,000 | May 1, 2014 |
| **PCI-DSS ASSESSMENTS** | $250,000 (included in aggregate)<br>See p. 6, I. G | $25,000 | May 1, 2017 |
| **H.** **ATTORNEY DISCIPLINARY PROCEEDINGS** | $25,000 each Occurrence<br>$25,000 annual aggregate<br><br>See p. 6, I. H | $2,500 | May 1, 2008 |
| **I.** **DECLARATORY, INJUNCTIVE OR EQUITABLE RELIEF** | $25,000 each Occurrence<br>$25,000 annual aggregate<br>See p. 6, I. I | $2,500 | May 1, 2015 |

©2017 County Risk Sharing Authority. All rights reserved    Page 1 of 8                                        4/12/17

# CORSA

### County Risk Sharing Authority

### 2017-2018 MEMORANDUM OF COVERAGE
### Attaching to Coverage Agreement # CORSA CA 001 20170501

| Member Name: Lorain County | | Member Number:  CO - 0560 | |
|---|---|---|---|
| | **LIMITS OF LIABILITY** | **MEMBER DEDUCTIBLE** | **RETROACTIVE DATE(S)** |
| **J.** **EXCESS LIABILITY** | $5,000,000 each Occurrence No annual aggregate with respect to General Liability, Law Enforcement Liability and Automobile Liability<br><br>$5,000,000 each Occurrence $5,000,000 annual aggregate with respect to Errors and Omissions Liability<br><br>$2,000,000 each Occurrence No annual aggregate with respect to General Liability for a County Home<br><br>$2,000,000 each Occurrence No annual aggregate with respect to Ohio Stop Gap Employers Liability<br><br>See p. 6, I. J | Not Applicable | August 1, 1996, except with respect to the County Home which is May 1, 1998 for $1,000,000 xs $1,000,000. |

| | COVERAGE | RETROACTIVE DATE(S) |
|---|---|---|
| A. | **GENERAL LIABILITY** | See page 1 |
| B. | **LAW ENFORCEMENT LIABILITY** | See page 1 |
| C. | **AUTOMOBILE LIABILITY** | See page 1 |
| D. | **ERRORS AND OMISSIONS LIABILITY** | See page 1 |
| E. | **OHIO STOP GAP EMPLOYERS' LIABILITY** | See page 1 |
| F. | **EMPLOYEE BENEFITS LIABILITY** | See page 1 |
| G. | **PRIVACY AND SECURITY LIABILITY** | See page 1 |
| J. | **EXCESS LIABILITY** | See page 2 |

©2017 County Risk Sharing Authority.  All rights reserved     Page 2 of 8

4/12/17

# CORSA

### County Risk Sharing Authority
### 2017-2018 MEMORANDUM OF COVERAGE
### Attaching to Coverage Agreement # CORSA CA 001 20170501

| Member Name:  Lorain County | Member Number: CO - 0560 |
|---|---|

| II. PROPERTY | | LIMITS | MEMBER DEDUCTIBLE | RETROACTIVE DATE(S) |
|---|---|---|---|---|
| A. | DIRECT PHYSICAL LOSS OR DAMAGE | $392,101,104 Total Covered Value See p. 6, II. A | $25,000 | Not Applicable |
| B. | COLLAPSE | Per statement of values | $25,000 | Not Applicable |
| C. | EQUIPMENT BREAKDOWN | $100,000,000 See p. 8, II. C | $25,000 | Not Applicable |

| III. TIME ELEMENT | | LIMITS | MEMBER DEDUCTIBLE | RETROACTIVE DATE(S) |
|---|---|---|---|---|
| A. | GROSS EARNINGS/EXTRA EXPENSE | $2,500,000 each Occurrence See p.8, III. A | $25,000 | Not Applicable |
| B. | CONTINGENT BUSINESS INTERRUPTION | $100,000 each Occurrence See p.8, III. B | $25,000 | Not Applicable |

| IV. CRIME | | LIMITS | MEMBER DEDUCTIBLE | RETROACTIVE DATE(S) |
|---|---|---|---|---|
| A. | CRIME | $1,000,000 See p. 8, IV. A | $25,000 Not Applicable for A.1 Employee Dishonesty/Faithful Performance or A.8 Dog Warden Blanket Bond | Not Applicable |

©2017 County Risk Sharing Authority.  All rights reserved
4/12/17

## COUNTY RISK SHARING AUTHORITY

## ADDENDUM TO 2017-2018 MEMORANDUM OF COVERAGE

| For:    Lorain County | Member No:  CO – 0560 |
|---|---|

---

**THE AMENDMENTS LISTED BELOW CHANGE COVERAGE, PLEASE READ THEM CAREFULLY.**

---

It is hereby understood and agreed that the Coverage Agreement for this **Member** is modified by issuing the following amendment(s), to be effective as of the date specified.

| AMENDMENT NUMBER | TITLE | LIMIT | EFFECTIVE DATE | RETROACTIVE DATE(S) |
|---|---|---|---|---|
| #1 | Uninsured/Underinsured Motorists | $250,000 | May 1, 2017 | May 1, 1996 |
| #2 | Foster Parents | $6,000,000 | May 1, 2017 | January 1, 2010 "with regard to excess limits of liability applicable to this amendment, the retroactive dates will be the later of the dates shown here or the dates shown in Coverage J - Excess Liability" |
| #3 | Bridges | $38,161,371 | May 1, 2017 | Not applicable |
| #4 | Jail Doctor Coverage | $1,000,000 | May 1, 2017 | November 1, 2010 |
| #5 | Traffic Signals | $660,000 | May 1, 2017 | Not applicable |
| #6 | Property Valuation | $20,000 | May 1, 2017 | Not applicable |
|  |  |  |  |  |
|  |  |  |  |  |

All other terms and conditions of the CORSA Coverage Agreement remain unchanged.

| COUNTY RISK SHARING AUTHORITY          By: |
|---|
| Coverage Period: 12:01 a.m.  5/1/2017 to 12:01 a.m. 5/1/2018 |

©2017 County Risk Sharing Authority.  All right reserved      Page 4 of 8

4/10/17

# CORSA
## County Risk Sharing Authority

SECTION I. COMBINED LIABILITY COVERAGE – Claims Made Basis

The Limits of Liability shown apply separately to each Member of CORSA. It is further agreed that in the event of a single Claim and/or Occurrence involving more than one Member of CORSA, the maximum Limit of Liability available under all Coverage Agreements for that Claim and/or Occurrence is the highest limit, including Excess Liability, purchased by any single Member involved in the loss for any one Claim and/or Occurrence.

**A.** **GENERAL LIABILITY, Claims Made basis. Deductible, Retroactive Date(s) as scheduled on page 1 (2)**

Bodily Injury, Property Damage, Personal Injury, Advertising Injury and Medical Professional Liability: $1,000,000 each Occurrence Combined Single Limit no annual aggregate

Products and Completed Operations Limit: $1,000,000 each Occurrence Combined Single Limit $1,000,000 annual aggregate

Medical Payments Limit: $5,000 each person / $50,000 each accident

**B.** **LAW ENFORCEMENT LIABILITY, Claims Made basis. Deductible, Retroactive Date(s) as scheduled on page 1 (2)**

Occurrence or Wrongful Acts Limit: $1,000,000 each Occurrence Combined Single Limit no annual aggregate

**C.** **AUTOMOBILE LIABILITY, Claims Made basis. Deductible, Retroactive Date(s) as scheduled on page 1 (2)**

Bodily Injury, Property Damage Limit: $1,000,000 each Occurrence Combined Single Limit no annual aggregate

Medical Payments Limit: $5,000 each person / $50,000 each accident

**D.** **ERRORS AND OMISSIONS LIABILITY, Claims Made basis. Deductible, Retroactive Date(s) as scheduled on page 1 (2)**

Wrongful Acts Limit: $1,000,000 each Occurrence $1,000,000 annual aggregate

Back Wages Limit: $100,000 each Occurrence

**E.** **OHIO STOP GAP EMPLOYER'S LIABILITY LIMIT:** $1,000,000 each Occurrence Combined Single Limit No annual aggregate

**F.** **EMPLOYEE BENEFITS LIABILITY:** $1,000,000 each Occurrence Combined Single Limit No annual aggregate

G.   **PRIVACY AND SECURITY LIABILITY AND EXPENSE, Claims Made basis.  Deductible, Retroactive Date(s) as schedule on page 1**

    Third Party Liability                                Limit as scheduled on page 1, G.

    Privacy Response Expenses                  $500,000 (included in annual aggregate)

    Claims Expenses, Regulatory Proceedings       $250,000 (included in annual aggregate)
    and Penalties

    PCI-DSS Assessments                           $250,000 (included in annual aggregate)

H.   **ATTORNEY DISCIPLINARY PROCEEDINGS**     $25,000 each Occurrence
                                                        $25,000 annual aggregate

I.   **DECLARATORY, INJUNCTIVE OR**
    **EQUITABLE RELIEF**                       $25,000 each Occurrence
                                                        $25,000 annual aggregate

J.   **EXCESS LIABILITY, Claims Made basis. Deductible, Retroactive Date(s) as scheduled on page 1 (2)**

    Excess of underlying limits for A-F above.       Limit as scheduled on page 2, J
    Does not apply to Uninsured/Underinsured
    Motorists Coverage, Privacy and Security
    Liability and Expense, Attorney Disciplinary
    Proceedings and Declaratory, Injunctive or
    Equitable Relief coverages.

    EXTENDED CLAIMS REPORTING PERIOD      24 months for an additional contribution

## SECTION II: PROPERTY COVERAGE

A.   **DIRECT PHYSICAL LOSS OR DAMAGE**

    REAL AND PERSONAL PROPERTY:         Per Statement of Values
    Incl. Electronic Data Processing Equipment    Replacement Cost, unless modified by amendment

    FLOOD:                                       $100,000,000 each Occurrence
    (EXCLUDING PROPERTY IN FLOOD ZONE A)    $100,000,000 annual CORSA aggregate

    EARTHQUAKE:                         $100,000,000 each Occurrence
                                             $100,000,000 annual CORSA aggregate

    ACCOUNTS RECEIVABLE               $1,000,000, unless modified by amendment

    AUTO PHYSICAL DAMAGE:            Actual Cash Value (ACV) or cost of repair,
                                             whichever is less

    AUTOMATIC ACQUISITION:          $5,000,000

| | |
|---|---|
| BRIDGES: <br>     (OTHER THAN COVERED BRIDGES): | If covered by amendment |
| CONTRACTOR'S EQUIPMENT: | Per renewal schedule <br> Replacement Cost or Actual Cash Value <br> per renewal application |
| ELECTRONIC DATA PROCESSING (EDP): <br>     MEDIA <br>     EXTRA EXPENSE | <br> $250,000 each Occurrence, unless modified by amendment <br> $25,000 each Occurrence, unless modified by amendment |
| ERRORS AND OMISSIONS: | $250,000 each Occurrence |
| FINE ARTS: | $1,000,000 each Occurrence |
| LAW ENFORCEMENT AND THERAPY CANINES: | If covered by amendment |
| MOBILE MEDICAL EQUIPMENT: | $250,000 each Occurrence |
| POLLUTANT CLEANUP/REMOVAL | $10,000 each coverage period |
| PROPERTY IN TRANSIT: | $100,000 each Occurrence, unless modified by amendment |
| SERVICE INTERRUPTION <br>     PROPERTY DAMAGE | $2,500,000 <br> 24 hour waiting period |
| TRAFFIC SIGNALS: | If covered by amendment |
| UNDERGROUND FIBER OPTIC LINES: | If covered by amendment |
| VALUABLE PAPERS | $2,500,000 each Occurrence, unless modified <br> by amendment |
| WATER AND SEWER LINES: | If covered by amendment |

OTHER COVERAGES AS REQUESTED ON 2017 CORSA RENEWAL APPLICATION


**B.**    **COLLAPSE**                                      Per Statement of Values <br>                                                                Replacement Cost, unless modified by amendment

## C.   EQUIPMENT BREAKDOWN COVERAGE

Comprehensive Coverage (Repair or Replacement cost basis) including Boilers, Fired and Unfired Pressure Vessels, Air Conditioners, Pumps, Motors, Generators, Electronic Data Processing Equipment, Internal Combustion Engines, including any production and maintenance machines.

Combined Limits: Property Damage,
Business Income, Extra Expense,
Service Interruption                              $100,000,000 each Breakdown

Sublimits:

| | |
|---|---|
| Demolition and Increased Cost of Construction | $5,000,000 |
| Spoilage | $500,000 |
| Expediting Expense | $500,000 |
| EDP Extra Expense | $25,000 |
| Data & Media | $100,000 |
| Hazardous Substance | $250,000 |
| Ammonia Contamination | $500,000 |
| CFC Refrigerants | $500,000 |

## SECTION III: TIME ELEMENT COVERAGE

**A.   GROSS EARNINGS/EXTRA EXPENSE**          $2,500,000 each Occurrence
unless modified by amendment

**B.   CONTINGENT BUSINESS INTERRUPTION**     $100,000

## SECTION IV. CRIME COVERAGE

**A.   CRIME COVERAGE**

| | |
|---|---|
| 1. Employee Dishonesty/Faithful Performance | $1,000,000 each Occurrence |
| Individual Public Official Bond Excess | $250,000 each Occurrence |
| Claims Expense | $1,000 each Occurrence |
| 2. Loss Inside the Premises (Money & Securities) | $1,000,000 each Occurrence |
| 3. Loss Outside the Premises (Money & Securities) | $1,000,000 each Occurrence |
| 4. Money Orders and Counterfeit Paper Currency | $1,000,000 each Occurrence |
| 5. Depositors Forgery | $1,000,000 each Occurrence |
| 6. Fund Transfer Fraud | $500,000 each Occurrence |
| 7. Computer Fraud | $500,000 each Occurrence |
| 8. Dog Warden Blanket Bond | $2,000 Bond Limit |

This outline constitutes a summary of the major points of coverage and is not to be considered as an interpretation of the intent of the Coverage Agreement.  This is for reference only and does not add to, alter, amend, or extend coverage. Coverage terms, conditions, and exclusions are set forth in the Coverage Agreement, and in case of any actual or perceived conflict or inconsistency between the Memorandum of Coverage and the Coverage Agreement, the terms of the latter shall control.

# CORSA

## County Risk Sharing Authority

AMENDMENT attaching to and forming part of Coverage Agreement:     CORSA CA 001 20170501

MEMBER NAME:    Lorain County            MEMBER NO.      CO - 0560

AMENDMENT Effective Date:    May 1, 2017          AMENDMENT NO.    1

## UNINSURED/UNDERINSURED MOTORIST COVERAGE

### A. COVERAGE AGREEMENT

CORSA hereby agrees, subject to the limitations, terms and conditions hereunder mentioned, to pay all sums a **Covered Party** is legally entitled to recover as compensatory damages from the owner or operator of an **Uninsured Motor Vehicle** (as defined below) because of **Bodily Injury** sustained by a **Covered Party** and caused by an **Occurrence**. The liability of the owner or operator for those damages must result from the ownership, maintenance or use of the **Uninsured Motor Vehicle**.

CORSA is not obligated to make any payment under this Amendment unless the limits of any and all applicable liability bonds or insurance policies have been exhausted or a tentative settlement has been made between a **Covered Party** and the owner, operator or insurer of a vehicle described in paragraph F.2.b. of the definition of **Uninsured Motor Vehicle**, below. In the case of such tentative settlement, CORSA must have been given prompt written notice thereof and have advanced payment to the **Covered Party** in an amount equal thereto within thirty (30) days after receipt of notice, or have consented to such settlement.

### B. WHO ARE COVERED PARTIES.

It is understood and agreed for purposes of the coverage afforded by this Amendment that the definition of **Covered Party** at page 2 of the Coverage Agreement is deleted and that the following is substituted therefor:

The following persons are **Covered Parties** for Uninsured/Underinsured Motorist Coverage:

1. Any person while **Occupying** an **Automobile** owned by the **Member.**

2. Any person while **Occupying** an **Automobile** hired by the **Member** or an **Automobile** not owned by the **Member** while such **Automobile** is being used in furtherance of the operations of the **Member**, except a volunteer and except an independent contractor to whom the **Member** has paid a fee for the use of such **Automobile** and any agent or employee of such independent contractor.

3. Any employee of the **Member** while within the course and scope of his or her employment.

4. Any other person for such damages as he or she is legally entitled to recover because of **Bodily Injury** sustained by a person covered under (1), (2) or (3) above.

© 2017 County Risk Sharing Authority. All rights reserved.      Page 1 of 5            3/6/2017

**C. EXCLUSIONS.** Uninsured/underinsured motorist coverage does not apply to:

1. Any **Claims** in which a **Covered Party** (or anyone acting on his or her behalf) has settled with the owner or operator of an **Uninsured Motor Vehicle** without the consent of CORSA; however, the exclusion does not apply to a settlement made with the owner, operator or insurer of a vehicle described in paragraph F.2.b. of the definition of **Uninsured Motor Vehicle**, below;

2. Any **Covered Party** using a vehicle without a reasonable belief that he or she is entitled to do so.

3. Punitive or exemplary damages.

4. Damages which a **Covered Party** is legally entitled to recover because of **Bodily Injury** to (including death of) a relative who is not a **Covered Party**.

5. **Bodily Injury** suffered by relatives of employees of the **Covered Party**, except such relatives as qualify as **Covered Party** under paragraphs B.1. or B.2. or B.3., WHO ARE COVERED PARTIES above.

6. Damages for which other coverage or benefits are paid or available to the **Covered Party.**

**D. LIMIT OF LIABILITY.**

1. Regardless of the number of persons who may be entitled to recover damages because of **Bodily Injury** sustained by one or more **Covered Parties** in any one **Occurrence**, the most CORSA will pay for all damages resulting from **Bodily Injury** or death is the limit of Uninsured/Underinsured Motorists coverage shown in the Memorandum of Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of damages under this Amendment and under Section I.A. or I.C.1. of the Coverage Agreement.

   CORSA will not make a duplicate payment under this Amendment for any element of damages for which payment has been made by or for anyone who is legally responsible for such damages.

3. Subject to the above, the most CORSA will pay for all damages arising out of and due to **Bodily Injury** to one person is the lesser of:

   a. the difference between the **Limit of Liability** of this coverage, and the amount available for payment for that **Bodily Injury** by or for any person or organization who is or may be held legally liable for the **Bodily Injury**; or

   b. the difference between the amount of damages for such **Bodily Injury**, and the amount available for payment for that **Bodily Injury** by or for any person or organization who is or may be held legally liable for the **Bodily Injury**.

**E. CHANGES AND ADDITIONS TO CONDITIONS:**

For purposes of the coverage afforded by the Amendment, the Conditions in the Coverage Agreement are changed as follows:

1. General Condition J. (OTHER COVERAGE) is deleted and replaced by the following:

If there is other applicable coverage available under one or more policies or coverage documents:

a.   The maximum recovery under all policies or coverage agreements may equal but not exceed the highest applicable limit for any one vehicle under any policy or form providing coverage on either a primary or excess basis.

b.   Any coverage provided with respect to injuries sustained by a **Covered Party** while **Occupying** or when struck by a vehicle not owned by the **Member** shall be excess over any other collectible uninsured motorist insurance or coverage.

c.   If the coverage under this Amendment is provided:
   (1) On a primary basis, CORSA will pay only its share of the loss that must be paid under policies or coverage agreements providing coverage on a primary basis. Its share is the proportion that its **Limit of Liability** bears to the total of all applicable limits of liability for coverage on a primary basis.
   (2) On an excess basis, CORSA will pay only its share of the loss that must be paid under policies or coverage agreements providing coverage on an excess basis. Its share is the proportion that its **Limit of Liability** bears to the total of all applicable limits of liability for coverage on an excess basis.

d.   Regardless of whether coverage under the Amendment is provided on a primary or an excess basis, the **Limit of Liability** under this Amendment shall be reduced by:
   (i)  all amounts available for payment under all applicable bodily injury liability bonds, insurance policies or coverage documents covering persons liable to the **Covered Party**; and
   (ii) the greater of all amounts available for payment or paid to or on behalf of the **Covered Party** as uninsured or underinsured motorist coverage benefits under insurance policies or other documents.

2.   The following conditions are hereby added:

   I.   DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS.

   CORSA has no duty to provide coverage under this Amendment unless there has been full compliance with the following duties.

   a.   In the event of accident, claim, suit or loss, CORSA's authorized representative must be given prompt notice of the accident or loss, such notice to include:
      (1) How, when and where the accident or loss occurred.
      (2) The **Covered Party's** name and address.
      (3) To the extent possible, the names and addresses of any injured persons and witnesses.

   b.   The **Covered Party** and/or **Member** must:
      (1) Assume no obligation, make no payment or incur no expenses without the consent of CORSA's authorized representative, except at the **Covered Party's** own cost.
      (2) Immediately send CORSA's authorized representative copies of any request, demand, order, notice, summons or other legal paper received concerning the claims or suit.
      (3) Cooperate with CORSA in the investigation or settlement of the claim.
      (4) Authorize CORSA to obtain medical records or other pertinent information.

In addition, **Covered Party** must:

(1) Submit to examinations, at CORSA's expense, by physicians of CORSA's choice, as often as CORSA reasonably requires.

c. Promptly notify the police if a hit-and-run driver is involved.

d. Promptly send CORSA copies of the legal papers if a suit is brought against the owner or operator of an **Uninsured Motor Vehicle.**

e. A person seeking Uninsured Motorist Coverage must also promptly notify CORSA by notifying the Service Organization in writing of a tentative settlement between a **Covered Party** and the owner, operator or insurer of the vehicle described in paragraph F.2.b. of the definition of **Uninsured Motor Vehicle** below, and allow CORSA 30 days to advance payment to that **Covered Party** in an amount equal to the tentative settlement to preserve CORSA's rights against the owner, operator or insurer of such vehicle described in Paragraph F.2.b. of the definition of **Uninsured Motor Vehicle.**

II. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO CORSA.

If CORSA makes any payment and the **Covered Party** recovers from another party, the **Covered Party** shall hold the proceeds in trust for CORSA and pay CORSA back the amount CORSA has paid.  CORSA's rights do not apply under this provision with respect to Uninsured Motorists Coverage if it:

a. Has been given prompt notice of a tentative settlement between a **Covered Party** and the owner, operator or insurer of a vehicle described in paragraph F.2.b. of the definition of **Uninsured Motor Vehicle**; and

b. Fails to advance payment to the **Covered Party** in an amount equal to the tentative settlement within 30 days after receipt of notification.

If CORSA advances payment to the **Covered Party** in an amount equal to the tentative settlement within 30 days after receipt of notification:

c. That payment will be separate from any amount the **Covered Party** is entitled to recover under the provisions of Uninsured Motorists Coverage; and

d. CORSA also has a right to recover the advanced payment.

III. RESOLUTION OF DISPUTED CLAIMS.

a. If CORSA and a **Covered Party** disagree whether the **Covered Party** is legally entitled to recover damages from the owner or operator of an **Uninsured Motor Vehicle** or do not agree as to the amount of damages that are recoverable by that **Covered Party**, then such issues shall be resolved in a lawsuit commenced by CORSA or the **Covered Party** in the Common Pleas Court of the **Member** county.

b. Any recovery in such a lawsuit shall be limited to compensatory damages within the **Limit of Liability** which were caused by an uninsured or underinsured motorist and shall not include attorney fees, punitive damages, prejudgment interest.

c. The damages payable by CORSA shall be reduced by all amounts payable under any workers' compensation law, disability benefits law or similar law.

© 2017 County Risk Sharing Authority. All rights reserved.       Page 4 of 5                                3/6/2017

**F.  ADDITIONAL DEFINITIONS.**

As used in the Amendment:

1. **Occupying** means in, upon, getting in, on, out or off.

2. **Uninsured Motor Vehicle** means a land motor vehicle or trailer:

    a. For which no liability bond or policy or coverage agreement at the time of an accident provides at least the amounts required by financial responsibility law of Ohio;

    b. Which is an Underinsured Motor Vehicle.  An Underinsured Motor Vehicle means a land motor vehicle or trailer for which the sum of all liability bonds or policies or coverage agreements applicable at the time of an accident provides at least the amounts required by the financial responsibility law of Ohio, but their limits are less than the Limit of Liability of this coverage;

    c. For which an insuring or bonding company or the provider of other similar coverage denies coverage or is or becomes insolvent; or

    d. That is a hit-and-run vehicle and neither the operator nor owner can be identified.  The vehicle must either:

        (1) Hit a **Covered Party** or a vehicle a **Covered Party** is **Occupying**; or
        (2) Cause **Bodily Injury** to a **Covered Party** without hitting a **Covered Party** or a vehicle a **Covered Party** is **Occupying**.

        The facts of the accident or intentional act must be proved by independent corroborative evidence, other than the testimony of a **Covered Party** making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

        However, **Uninsured Motor Vehicle** does not include any vehicle:

    e. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law:

    f. Designed for use mainly off public roads while not on public roads.

    g. Owned by any governmental unit or agency, unless the owner or operator of the **Uninsured Motor Vehicle** has:

        (1) An immunity under the Ohio Political Subdivision Tort Liability Law; or
        (2) A diplomatic immunity.

© 2017 County Risk Sharing Authority. All rights reserved.          Page 5 of 5                                                3/6/2017

# CORSA

## County Risk Sharing Authority

AMENDMENT attaching to and forming part of Coverage Agreement:     CORSA CA 001 20170501

MEMBER NAME:     Lorain County                    MEMBER NO.        CO - 0560

AMENDMENT Effective Date:     May 1, 2017          AMENDMENT NO.   2

---

### FOSTER PARENTS

---

It is hereby understood and agreed the definition of **Covered Party** is amended to include Foster Parents for General Liability (Section I.A.) and Errors and Omissions Liability (Section I.D.) only.

The **Limit of Liability** and **Retroactive Date** are as shown on page 4 of the Memorandum of Coverage.

All other terms, conditions and limitations of this Coverage Agreement remain unchanged.

# CORSA
## County Risk Sharing Authority

AMENDMENT attaching to and forming part of Coverage Agreement:    CORSA CA 001 20170501

MEMBER NAME:    Lorain County                                    MEMBER NO.    CO - 0560

AMENDMENT Effective Date:    May 1, 2017                         AMENDMENT NO.   3

---

**BRIDGES**

---

It is hereby understood and agreed Section II Property Coverage Agreement is amended to include coverage for bridges, subject to the following limit and subject to the terms and conditions outlined in Section II:

      Limit:    $38,161,371

All other terms, conditions and limitations of this Coverage Agreement remain unchanged.

# CORSA

## County Risk Sharing Authority

AMENDMENT attaching to and forming part of Coverage Agreement:  CORSA CA 001 20170501

MEMBER NAME:  Lorain County                          MEMBER NO.        CO - 0560

AMENDMENT Effective Date:  May 1, 2017              AMENDMENT NO.    4

---

### MEDICAL PROFESSIONAL LIABILITY - JAIL/CORRECTIONAL FACILITY PHYSICIANS

---

It is hereby understood and agreed the Coverage Agreement is amended to include **Medical Professional Liability** for the following physician(s) while providing professional medical services at the described jail/correctional facility on behalf of the **Member**:

Name of Physician:   Dr. Richard Kesslor
Facility:                  Lorain County Jail

The **Limit of Liability** and **Retroactive Date(s)** are as shown on page 4 of the Memorandum of Coverage.

# CORSA
## County Risk Sharing Authority

AMENDMENT attaching to and forming part of Coverage Agreement:    CORSA CA 001 20170501

MEMBER NAME:    Lorain County                MEMBER NO.    CO - 0560

AMENDMENT Effective Date:    May 1, 2017           AMENDMENT NO.   5

---

### TRAFFIC SIGNALS

---

It is hereby understood and agreed Section II Property Coverage Agreement is amended to include coverage for Traffic Signals, subject to the following limit and subject to the terms and conditions outlined in Section II:

Limit:        $    660,000

All other terms, conditions and limitations of this Coverage Agreement remain unchanged.

# CORSA
## County Risk Sharing Authority

AMENDMENT attaching to and forming part of Coverage Agreement:          CORSA CA 001 20170501

MEMBER NAME:     Lorain County                                          MEMBER NO.        CO - 0560

AMENDMENT Effective Date:     May 1,2017                                AMENDMENT NO.   6

---

### PROPERTY VALUATION

---

It is hereby understood and agreed the valuation for the following buildings listed  below
is changed from Replacement Cost to Agreed Amount.

       Location CC01 - Property Limit - $20,000 (Vacant)
       1826 W. 22nd St., Lorain, OH


Valuation - CORSA shall not be liable for loss or damage in excess of the following valuation on the
date of loss:

       The cost to repair, rebuild, replace or Agreed Amount, whichever is less.

All other terms, conditions and limitations of this Coverage Agreement remain unchanged.

THIS AMENDMENT CHANGES THE COVERAGE AGREEMENT.  PLEASE READ
IT CAREFULLY.

**EXTENDED REPORTING PERIOD AMENDMENT**

**Member:**        **Lorain County**

**Coverage Agreement:  CORSA CA 001 20170501**

The Coverage Agreement is amended as follows:

SECTION I – LIABILITY SPECIFIC CONDITIONS, PARAGRAPH E. EXTENDED
CLAIMS REPORTING PERIOD is deleted in its entirety and replaced by the following
new paragraph:

E.  EXTENDED CLAIMS REPORTING PERIOD

1. An Extended Reporting Period is provided for the following Coverage Parts
   under SECTION I – LIABILITY COVERAGE AGREEMENTS:

   A. General Liability;
   B. Law Enforcement Liability;
   C. Automobile Liability;
   E. Ohio Stop Gap Employers' Liability
   F. Employee Benefits Liability.

2. The Extended Reporting Period shall commence as of the last day of the
   **Coverage Period** and continue in force until the date on which the **Member's**
   participation in CORSA terminates.

3. With respect to Coverage Parts A., B., C., E. and F., the coverage provided
   under SECTION I – LIABILITY COVERAGE AGREEMENTS shall include
   **Claims** first made during the Extended Reporting Period and reported to
   CORSA as soon as reasonably practicable. This coverage applies only to
   **Claims** arising out of an **Occurrence** or **Wrongful Act** that commences on or
   after the applicable **Retroactive Date** and before the end of the **Coverage
   Period**.

4. The Extended Reporting Period does not extend the **Coverage Period** or
   change any **Retroactive Date**.  The Extended Reporting Period does not
   reinstate or increase the **Limits of Liability**.

All other terms and conditions of the Coverage Agreement are unchanged.

# CORSA

# COVERAGE AGREEMENT

## MAY 1, 2017



**County Risk Sharing Authority**
A Service Program of the County Commissioners Association of Ohio

**CORSA**
**209 E. State St.**
**Columbus, OH 43215-4195**

# CORSA

**County Risk Sharing Authority**
209 EAST STATE STREET, COLUMBUS, OHIO 43215

## COVERAGE AGREEMENT
Table of Contents

|  | Page # |
|---|---|
| **Coverage Agreement, Member Obligations** | 1 |
| **General Definitions** | 1-16 |
| **SECTION I - LIABILITY COVERAGE AGREEMENTS** | 16-17 |
|     A.  General Liability | 17 |
|       1.  Bodily Injury; Property Damage; Personal Injury; Advertising Injury; Products/Completed Operations; Medical Professional Liability | 17 |
|       2.  Medical Payments | 17 |
|     B.  Law Enforcement Liability | 17 |
|     C.  Automobile Liability | 17 |
|       1.  Bodily Injury; Property Damage | 17 |
|       2.  Automobile Medical Payments | 17 |
|       3.  Uninsured/ Underinsured Motorist | 18 |
|     D.  Errors and Omissions Liability | 18 |
|     E.  Ohio Stop Gap Employers' Liability | 18 |
|     F.  Employee Benefits Liability | 19 |
|     G.  Privacy and Security Liability and Expense | 19-21 |
|       1.  Third-Party Liability | 19 |
|       2.  Privacy Response Expenses | 19-20 |
|       3.  Regulatory Proceedings and Penalties | 20 |
|       4.  PCI-DSS Assessments | 20-21 |
|     H.  Attorney Disciplinary Proceedings | 21 |
|     I.  Declaratory, Injunctive, or Equitable Relief Defense Costs | 21-22 |
| **SECTION I -  LIABILITY EXCLUSIONS** | 22-30 |
|     A.  General Exclusions | 22-24 |
|     B.  General Liability Exclusions | 24-25 |
|     C.  Law Enforcement Liability Exclusions | 25 |
|     D.  Automobile Liability Exclusions | 25 |
|     E.  Errors and Omissions Liability Exclusions | 25-26 |

1

|  | **Page #** |
|---|---|
| F.  Ohio Stop Gap Employers' Liability Exclusions | 26-27 |
| G. Employee Benefits Liability Exclusions | 27-28 |
| H.  Privacy and Security Liability and Expense Exclusions | 28-30 |
| I.  Declaratory, Injunctive or Equitable Relief Exclusions | 30 |

**SECTION I – LIABILITY SPECIFIC CONDITIONS** — 30-32

| A.  Appeals | 30 |
| B.  Coordination of Liability Limits | 30 |
| C.  Cross Liability | 30-31 |
| D.  Defense and Settlement | 31 |
| E.  Extended Claims Reporting Period | 31-32 |
| F.  Governmental and Official Immunity | 32 |
| G.  Interlocking Clause | 32 |
| H.  Reimbursements | 32 |

**SECTION II - PROPERTY COVERAGE AGREEMENTS** — 32-53

| A. Direct Physical Loss or Damage | 32 |
| 1.a.  Real Property | 33 |
| 1.b.  Tower & Covered Bridges | 33 |
| 1.c.  Property of Member in the Open | 33 |
| 1.d.  Personal Property | 33 |
| 1.e.  Contractor's Equipment | 33 |
| 1.f.  Automobiles | 33 |
| 1.g.  Property for which Member is Liable | 33 |
| 1.h.  Any other Property Added by Amendment | 33 |
| 2.  Interest of Contractors | 33 |
| 3.  Excluded Property | 33-34 |
| B. Collapse | 34-35 |
| C. Equipment Breakdown | 35 |
| 1-2.  Breakdown Defined | 35-36 |
| 3-4.  Covered Equipment Defined | 36 |
| 5.  Equipment Breakdown Coverage Extensions | 36 |
| a.  Spoilage | 36-37 |
| b.  Service Interruption | 37 |
| c.  Business Income | 37 |
| d.  Expediting Costs | 37 |

**Page #**

|  |  |
|---|---|
| e.  Hazardous Substance | 38 |
| f.  Ammonia Contamination | 38 |
| g.  Water Damage | 38 |
| h.  Consequential Loss | 38 |
| i.  Data & Media | 38 |
| j.  CFC Refrigerants | 38 |
| k.  Computer Equipment | 39 |
| l.  Demolition & Increased Cost of Construction | 39 |
| 6.  Exclusions to Equipment Breakdown | 39 |
| 7.  Definitions for Equipment Breakdown | 40 |
| 8.  Condition to Equipment Breakdown | 40 |
| D.  Additional Coverages | 40-47 |
| 1.  Accounts Receivable | 40-41 |
| 2.  Automatic Coverage (Newly Acquired) | 41 |
| 3.  Debris Removal | 41-42 |
| 4.  Demolition and Increased Cost of Construction | 42-43 |
| 5.  Earthquake | 43 |
| 6.  Errors and Omissions | 43-44 |
| 7.  Expediting Costs | 44 |
| 8.  Fine Arts | 44 |
| 9.  Flood | 44-45 |
| 10.  Land and Water Contaminant or Pollutant Cleanup, Removal & Disposal | 45 |
| 11.  Law Enforcement and Therapy Canines | 45 |
| 12.  Mobile Medical Equipment | 45-46 |
| 13.  Protection and Preservation of Property | 46 |
| 14.  Service Interruption Property Damage | 46 |
| 15.  Temporary Removal of Property | 47 |
| 16.  Valuable Papers and Records & EDP Data & Media | 47 |
| E.  Property Coverage Exclusions | 47 |
| 1-19.  All Property | 47-50 |
| 20.  Personal Property and Property in the Open | 50 |
| 21.  Property in Course of Construction | 50 |
| F.  Valuation | 50-53 |

3

| | Page # |
|---|---|
| **SECTION III – TIME ELEMENT COVERAGE AGREEMENTS** | 53-56 |
| A.  Time Element Coverages | 54-55 |
| B.  Time Element Exclusions | 55 |
| C.  Time Element Valuation | 55-56 |
| | |
| **SECTION IV -  CRIME COVERAGE AGREEMENTS** | 56-87 |
| 1.  Employee Dishonesty/ Faithful Performance | 56-57 |
| 2.  Loss Inside Premises | 57 |
| 3.  Loss Outside Premises | 57 |
| 4.  Money Orders and Counterfeit Paper Currency | 57 |
| 5.  Depositors Forgery | 57 |
| 6.  Fund Transfer Fraud | 57 |
| 7.  Computer Fraud | 58 |
| 8.  Dog Warden Blanket Bond | 58 |
| | |
| **SECTION IV – CRIME EXCLUSIONS** | 59-60 |
| | |
| **SECTION IV – CRIME SPECIFIC CONDITIONS** | 60-62 |
| 1.  Loss Caused by Unidentifiable Employees | 60 |
| 2. Ownership of Property, Interest Covered | 60 |
| 3.  Books and Records | 60 |
| 4.  Limit of Liability | 61 |
| 5.  Limit of Liability Under This Subsection and Prior Coverage Agreement | 61 |
| 6.  Cancellation As to Any Employee | 61-62 |
| 7.  Joint Covered Party(ies) | 62 |
| 8.  No Benefit to Bailee | 62 |
| 9.  Valuation | 62 |
| | |
| **SECTION V  -  GENERAL EXCLUSIONS** | 62-67 |
| A. Date Functionality | 62-63 |
| B. Governmental Complaints, Regulatory and Enforcement Actions | 63 |
| C. War & Military Action | 64 |
| D. Nuclear Hazard | 64 |
| E. Pathogenic or Poisonous Biological or Chemical Materials | 65 |
| F. Electronic Vandalism | 65 |

4

|  | **Page #** |
|---|---|
| G.  Pollution | 65-66 |
| H. Prior Acts or Losses | 66 |
| I. Bond & Financial Securities | 66-67 |
| J. Declaratory, Injunctive or Equitable Relief | 67 |
| **SECTION VI  -  GENERAL CONDITIONS** | 67-70 |
| A.  Assignment | 67 |
| B.  Bankruptcy and Insolvency | 67 |
| C.  Cancellation / Withdrawal | 68 |
| D.  Changes | 68 |
| E.  Duties in the Event of a Claim, Occurrence or Wrongful Act, or Privacy or Security Event | 68 |
| F.  Fraud | 69 |
| G.  Inspections, Audit and Verification of Values | 69 |
| H.  Member Application | 69 |
| I.  Mortgage Clause | 69 |
| J.  Other Coverage | 69-70 |
| K.  Salvage and Recovery | 70 |
| L.  Subrogation | 70 |
| M.  Waiver of Subrogation | 70 |

# County Risk Sharing Authority

209 East State Street, Columbus, Ohio 43215

# COVERAGE AGREEMENT

CERTAIN PROVISIONS IN THIS COVERAGE AGREEMENT RESTRICT COVERAGE.  READ THE ENTIRE COVERAGE AGREEMENT CAREFULLY TO DETERMINE YOUR RIGHTS AND DUTIES AND TO DETERMINE WHAT IS AND IS NOT COVERED.

ALL WORDS OR PHRASES, OTHER THAN CAPTIONS, PRINTED IN BOLD ARE DEFINED IN THE COVERAGE AGREEMENT.

### MEMBER OBLIGATIONS

This Coverage Agreement is issued to the **Member** on the express condition that the **Member** fully complies with its obligations as specified in this Coverage Agreement and the CORSA Code of Regulations and the **Member's** Participation Agreement.

In consideration of the payment of the required contribution, and in reliance on the statements made and all information submitted to CORSA for consideration and evaluation of the risk, and subject to the **Limits of Liability**, Amendments and **Deductibles** specified in the Memorandum of Coverage, and Exclusions, Definitions, Conditions, and other provisions of this Coverage Agreement, CORSA agrees with the **Member** to the following:

### GENERAL DEFINITIONS

The following words have specific meanings under various sections of the Coverage Agreement:

**Administration**, when used in relation to a **Covered Benefit Plan**, means providing counseling or interpretation, or handling of records in connection, with the enrollment, notification, revision, termination, or cancellation of any group life insurance, group accident or health insurance, pension plan, employee stock subscription plan, worker's compensations benefits, unemployment compensation insurance, social security, disability benefits, employee welfare benefits plans and welfare plans and any other similar **Covered Benefit Plan**.

**Advertisement** means a notice that is broadcast or published to the general public or specific market segments about the **Member's** goods, products or services. For the purposes of this definition:

a) Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b) Regarding websites, only that part of a website that is about the **Member's** goods, products or services is considered an advertisement.

**Advertising Injury** means injury arising solely out of one or more of the following offenses committed in the course of advertising the **Member**'s goods, products, or services:

a) Oral or written publication in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services.

b) Oral or written publication, in any manner, of material that violates a person's right of privacy;

1 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

c) Misappropriation of advertising ideas; or

d) Infringement of copyrighted materials, trade dress, or slogans.

**Automobile** means a land motor vehicle licensed by the State of Ohio or other State for travel on public roads, including any attached machinery or equipment, but does not include **Contractor's Equipment**.

**Bodily Injury** means physical injury, sickness, or disease sustained by a person, including death resulting from any of these, and also includes mental anguish and emotional distress resulting from such physical injury and **Damages** awarded to a person for loss of another person's services and consortium due to a physical injury, sickness or disease sustained by such other person.  **Bodily Injury** does not include mental anguish or emotional distress of a person who has not been physically injured.  Solely for **Medical Professional Liability**, **Bodily Injury** also includes mental anguish and emotional distress even though not arising from a physical injury, sickness or disease.

**Business Income** means:

1.  Gross Earnings including ordinary payroll;

2.  Less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services;

3.  Plus all other earnings derived from the operation of the **Member**, including rental value that would have been earned or incurred.

**Claim(s)** means:

1.  With respect to Section I, Liability Coverage Agreements, A. General Liability, B. Law Enforcement Liability, C. Automobile Liability, D. Errors and Omissions Liability, E. Ohio Stop Gap Employers' Liability and F. Employee Benefits Liability:

    a) A written demand for **Damages** (including filing a **Suit** seeking those **Damages**) as a result of an **Occurrence** (subsections A, General Liability, B, Law Enforcement Liability, C, Automobile Liability, E, Ohio Stop Gap Employers' Liability and F, Employee Benefits Liability); or

    b) Written notice including a **Suit**, of the intent to hold a **Covered Party(ies)** liable for the results of a **Wrongful Act** (subsection D., Errors and Omissions Liability).

2.  With respect to Section I, Liability Coverage Agreements, G. Privacy and Security Liability and Expense Coverage, any demand, **Suit** for **Damages** or **Regulatory Proceeding** resulting from a **Privacy or Security Event.**

3.  With respect to Section I, Liability Coverage Agreements, I. Declaratory, Injunctive, or Equitable Relief Defense Costs Coverage, any **Suit.**

4.  With respect to Section II, Property Coverage Agreements, an **Occurrence** resulting in direct physical damage to and/or loss of use of property of the **Member**.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

5. With respect to both Section I, Liability Coverage Agreements and Section II, Property Coverage Agreements, a **Claim** is considered to have been first made when CORSA:

   a) Receives notice of **Suit** or written request for **Damages**: or

   b) Receives notice from a **Member** in accordance with Section V, General Conditions, E, Duties in the Event of a Claim, Occurrence, Wrongful Act, or Privacy or Security Event, of circumstances likely to give rise to a **Claim**.

6. Except as provided in paragraph 2 above with respect to, **Regulatory Proceedings** resulting from **Privacy or Security Events**, **Claim** does not mean investigations, audits or requests for information from government entities or others, any investigation or disciplinary or criminal proceedings against an individual **Covered Party(ies)**.

7. **Claim** does not include any criminal action.

8. With respect to more than one **Claim** being brought by persons or entities arising out of the same **Occurrence,** or **Wrongful Act** or **Privacy or Security Event,** a series of acts all related to a single **Occurrence or Wrongful Act** shall be treated as a single **Claim,** regardless of the number of individuals or entities making such **Claims** or the time period over which such **Claims** are made, even if subsequent **Claims** are made after the **Coverage Period,** and shall be deemed to have been made at the time that the first **Claim** is made against any **Covered Party(ies).**

**Claim Expenses** means:

1. Reasonable and necessary fees charged by attorneys designated by CORSA or to assist with the investigation, adjustment, negotiation, arbitration, defense or appeal of a **Claim**;

2. All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, defense or appeal of a **Claim** and incurred by CORSA;

3. Premiums on appeal bonds, attachment bonds or similar bonds; however, CORSA is not obligated to apply for or furnish any such bond;

Provided, however, **Claim Expenses** do not include:

1. Any internal salary, administrative, overhead or other related expenses of any **Covered Party(ies)** or any charges by a **Covered Party(ies**) for time spent cooperating with the investigation and defense of any **Claim**;

2. **Privacy Response Expenses; or**

3. **PCI-DSS Assessments**.

**Collapse** means: An abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose, provided that:

1. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of **Collapse**.

2. A part of a building that is standing is not considered to be in a state of **Collapse** even if it has separated from another part of the building.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

3. A building that is standing or any part of a building that is standing is not considered to be in a state of **Collapse** even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

**Computer System** means computers and associated input and output devices, data storage devices, networking equipment and backup facilities:

1. Operated by and either owned by or leased to the **Member**; or

2. Operated by a third party service provider and used to provide hosted computer application services to the **Member** or for processing, maintaining, hosting or storing the **Member's** electronic data pursuant to a written contract with the **Member** for such services.

**Contractor's Equipment** means:

1. Machinery, equipment, and tools of a mobile nature;

2. Self-propelled vehicles designed and used primarily to carry mounted equipment;

3. Land motor vehicle, other than an **Automobile**

**Coverage Period** means the period of time from the first date and hour stated in Memorandum of Coverage until the earlier of the last date and hour stated in the Memorandum of Coverage or the date and hour of cancellation of this Coverage Agreement.

**Coverage Territory** means anywhere provided that, with respect to an **Occurrence** or **Wrongful Act** that takes place outside the United States, any liability that may result from the activities of a **Covered Party(ies)** temporarily out of the United States on the **Member's** business and the **Covered Party(ies)** liability to pay **Damages** requested in a **Suit** will be determined on the merits in the United States (including its territories and possessions) or Canada, or in a settlement to which CORSA agrees.   With respect to Property, **Coverage Territory** means covered **Locations** in the United States of America.

**Covered Benefit Plan** means any Employee Benefits Plan or program that is provided by the **Member**, or any fiduciary for whose acts the **Member** is legally liable in the **Administration** of the **Member's** Employee Benefits Plan, for the benefit of its **Employees.**

**Covered Contract** means that part of any contract or agreement usual and customary to the **Member's** operations, duly executed by county officials or **Employees**, under which the **Member** assumes the tort liability of another to pay **Damages** because of **Bodily Injury** or **Property Damage** to a third party, provided such contract or agreement is made prior to the **Bodily Injury** or **Property Damage**, including but not limited to:

1. A lease of premises;

2. A sidetrack agreement;

3. An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

4. Any other easement agreement in connection with construction or demolition on or within 50 feet of a railroad;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

5.  Mutual aid agreements made among political subdivisions or law enforcement agencies;

6.  An elevator maintenance agreement.

**Covered Contract** does not mean a contract with a physician to provide **Professional Medical Services**.

**Covered Party(ies)** means, individually and collectively:

1.  The CORSA **Member** entity;

2.  The **Member's** Agencies, Boards, Commissions or Districts under the supervision or control of the **Member** whether now or hereafter constituted, which are listed on the current program year CORSA renewal application with associated schedules agreed to and updated at least annually.

3.  Any **Employee** of the **Member**, or volunteer of the **Member** who is designated by an authorized **Employee** of the **Member**, while acting within the scope of his/her duties as such, and any person, organization, trustee or estate to whom the **Member** is obligated by virtue of a written contract or agreement that is approved by CORSA, to provide coverage such as is offered by this Coverage Agreement, but only with respect to operations by or on behalf of the **Member**;

4.  Those **Employees** added by specific Amendment who are providing **Professional Medical Services** and who are duly licensed or certified physician assistants or nurse practitioners, and only if rendered within the scope of their duties on behalf of the **Member**;

5.  Those **Employees**, and volunteers who are designated by an authorized **Employee** of the **Member**, who are providing **Professional Medical Services** and veterinary services and who are duly licensed or certified nurses, Emergency Medical Technicians, Paramedics, occupational and physical therapists, psychologists, dental hygienists, optometrists, audiologists, speech therapists, pharmacists and veterinarians, and only if rendered within the scope of their duties on behalf of the **Member**;

6.  Physicians who provide **Professional Medical Services** at correctional facilities, but only if added by specific Amendment;

7.  Physicians who are under contract with the **Member** to perform solely administrative duties, while performing such duties on behalf of the **Member**, or physicians holding the office of County Coroner for the **Member**, but only while performing the statutory duties of a Coroner.  Such persons are not **Covered Party(ies)** for any **Professional Medical Services** rendered or which they fail to render to others. Dentists are not **Covered Party(ies)** for any **Professional Medical Services** rendered or which they fail to render to others;

8.  Any person legally responsible for the use of an **Automobile** owned, rented, leased by the **Member** and operated with its permission, and any other officer, **Employee** or volunteer of the **Member** while acting within the scope of his/her duties as such for the use of a hired or non-owned **Automobile** used by the **Member**.  **Covered Party(ies)** does not mean or include any person or organization (other than the **Member** or their agent or **Employee**), operating an **Automobile** repair shop, public garage, sales agency, service station, or public parking place with respect to any **Occurrence** arising out of the operation thereof;

9.  The **Member's** Law Enforcement Officers while engaged in Special Duty activities for third parties, provided that such Special Duty activities are approved in advance by the **Member's** Sheriff;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

10. Foster Parents added by specific Amendment, who are approved by the **Member**, but only for liability in connection with children placed by the **Member**.

This definition does not apply to Uninsured/Underinsured Motorist Coverage.

The inclusion hereunder of more than one **Covered Party(ies)** shall not increase CORSA's **Limits of Liability**.

**Damages** means monetary compensation including interest that a **Covered Party(ies)** becomes legally obligated to pay to an injured party under Section I, Liability, for **Bodily Injury**, **Advertising Injury**, **Property Damage** or **Personal Injury**, **Wrongful Acts**, and **Privacy or Security Events** to which this Coverage Agreement applies, and includes settlements to which CORSA has consented, but **Damages** does not include:

1. Any matters for which coverage is prohibited under the law of the State of Ohio;

2. Under Section I, Liability Coverage Agreements,

   a) Any amount for which a **Covered Party(ies)** was already obligated at the time of an **Occurrence** or **Wrongful Act**;

   b) Any obligation under the provisions of any contract or agreement;

   c) The return of grants, gifts, loans, or tuition;

   d) Sums representing restitution or disgorgement of sums wrongfully paid, received by, or retained by a **Covered Party(ies).**

3. Punitive, exemplary or multiplied damages or civil or criminal fines or penalties imposed by law, except that;

   a) With respect to Section I, Liability Coverage Agreements, D. Errors and Omissions Liability, "penalties imposed by law" does not mean penalties imposed under the Civil Rights Act of 1991 as compensation for discrimination in employment; and

4. Settlements to which a **Covered Party(ies)** has committed without CORSA's consent;

5. **Defense Costs**.

**Deductible** means the applicable amounts, as specified in the Memorandum of Coverage, that a **Covered Party(ies)** or the **Member** must first pay or reimburse to CORSA provided, however,

1. Loss or losses arising out of the same **Occurrence, Wrongful Act** or **Privacy or Security Event** giving rise to a **Claim** or **Claims** shall be construed as a single loss and only one **Deductible** amount shall apply thereto: and

2. Only one **Deductible** applies with respect to each **Occurrence** or **Wrongful Act**, which amount shall be the largest of the applicable **Deductible** amounts specified in the Memorandum of Coverage and related schedules.

**Defense Costs** means fees and expenses incurred by CORSA or with CORSA's consent to investigate and defend civil **Claims** and includes the cost of appeal or similar bonds, court costs, and the cost of arbitration, mediation or other alternative dispute resolution process to which the **Covered Party(ies)** must submit or has submitted with CORSA's consent.  **Defense Costs** do not include the wages or salary of any CORSA employees or of any **Employee** of the **Member**, or any fees or expenses incurred by anyone without CORSA's prior consent.

6 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

**Earthquake** means any natural or man-made earth movement including, but not limited to earthquake, landslide, subsidence (except subsidence caused by man-made underground cavities) or volcanic eruption regardless of any other cause or event contributing concurrently or in any other sequence of loss.  However, physical damage by fire, explosion, or sprinkler leakage resulting from Earthquake will not be considered to be loss by Earthquake within the terms and conditions of this Coverage Agreement.  All Earthquakes within a continuous 168 hour period will be considered a single Earthquake; the beginning of such period shall be determined by the **Member.**

**Electronic Vandalism** means of:

1. Willful or malicious destruction of computer programs, content, instructions or other electronic or digital data stored within computer systems;

2. Unauthorized computer code or programming that:

    a) Deletes, distorts, corrupts, or manipulates computer programs, content, instructions or other electronic or digital data, or otherwise results in damage to computers or computer systems or networks to which it is introduced;

    b) Replicates itself, impairing the performance of computers or computer systems or networks; or

    c) Gains remote control access to data and programming within computers or computer systems or networks to which it is introduced, for uses other than those intended for authorized users of the computers or computer systems or networks.

**Employee** means:

1. As used in Section I, Liability Coverage Agreements, any person employed by the **Member**, a **Leased Worker,** or an elected or appointed official who is compensated for performing services for the **Member**;

2. As used in Section IV, Crime, any natural person:

    a) While in the **Member's** service, and for thirty (30) days after termination of service;

    b) Whom the **Member** compensates directly by salary, wages, or commissions; or

    c) Whom the **Member** has the right to direct and control while performing services for the **Member;**

    d) **Leased Worker** while that person is subject to the **Member's** direction and control and performing services for the **Member** excluding, however, any **Leased Worker** while having care and custody of property outside the **Member's** premises.

3. But **Employee** does not mean any:

    a) Agent, broker, factor, commission merchant, consignee, independent contractor, or representative of the same general character; or

    b) Elected or appointed official except while performing acts within the scope of the duties of an **Employee;**

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

c) Any physician or dentist for the provision or non-provision of **Professional Medical Services,** with the exception of those physicians added by specific Amendment who provide **Professional Medical Services** at correctional facilities;

d) In Section IV, Crime Coverage Agreement, any Public official who is required by law to furnish a bond prior to taking office, and who is prohibited by law from being covered by a Blanket Bond, except to the extent of the sublimit shown on the Memorandum of Coverage, which shall be excess to the Public Official's individual bond.

e) In Section IV, Crime Coverage Agreement, any **Employee** for whom similar prior coverage has been cancelled and not reinstated since the effective date of the last such cancellation.

**Extra Expense** means the reasonable and necessary extra costs incurred by the **Member** of the following during the **Period of Restoration**:

1. Expenses to temporarily continue as nearly normal as practicable the conduct of the **Member's** business; and

2. Extra costs of temporarily using property or facilities of the **Member** or others;

Less any value remaining at the end of the **Period of Restoration** for property obtained in connection with the above.

**Fine Arts** means paintings, murals, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, sculptures, marbles, bronzes, antique furniture, antique jewelry, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, and similar property of rarity, historical value, or artistic merit excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money, and securities, all of which are owned by the **Member** or while in custody of anyone else to whom the **Member** has entrusted the property.

**Flood** means:

1. A general and temporary condition of partial or complete inundation of normally dry land areas from:

   a) Flood, or rising waters, waves, tide, or tidal water;

   b) The unusual and rapid accumulation or runoff of surface waters from any source; or,

   c) Mudslide or mud flow caused by accumulation of water on or under the ground.

2. The release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water, or the spray therefrom.

   However, physical damage by fire, explosion or sprinkler leakage resulting from **Flood** is not considered to be loss by **Flood** within the terms and conditions of this Coverage Agreement.

**Fraudulent Instruction** means:

1. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by a **Covered Party(ies)** or its authorized agent, but which was in fact fraudulently transmitted by someone else without their knowledge or consent;

8 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

2. A written instruction issued by a **Covered Party(ies)**, which was forged or altered by someone other than them, without their knowledge or consent, or which purports to have been issued by them, but was in fact fraudulently issued without their knowledge or consent.

**Law Enforcement Activities** means the specific and unique duties and responsibilities of law enforcement officers in the course of their employment by a Law Enforcement Department or Agency of the **Member,** including but not limited to the Sheriff's Office, Probation and Parole Departments, Prosecutors, and County Jail.  **Law Enforcement Activities** also means all policymaking, supervisory, and executive functions of any **Covered Party(ies)** relating to the duties and responsibilities of law enforcement officers.

**Leased Worker** means a person leased to the **Member** by a labor leasing firm under an agreement between the **Member** and the labor leasing firm, to perform duties related to the conduct of the **Member's** operations.   **Leased Worker** does not include a temporary worker, who is a person furnished to the **Member** to substitute for a permanent **Employee** on leave or to meet seasonal or short term workload conditions.

**Limit of Liability** means the respective amounts stated as such in the Memorandum of Coverage.  Each amount is the most CORSA will pay:

1. For a single **Occurrence, Wrongful Act,** or **Privacy or Security Event** regardless of the number of **Covered Party(ies)**, **Claims** made, **Suits** brought, persons or organizations making **Claims** or bringing **Suits**, contributions paid or covered **Automobiles** or vehicles involved in an accident;

2. With respect to Section I, Liability Coverage Agreements:

   a) Under Subsections A. General Liability, B. Law Enforcement Liability, C. Automobile Liability, E. Ohio Stop Gap Employers' Liability and F. Employee Benefit Liability respectively for **Damages** for each **Occurrence** (amounts paid as **Medical Payments** and **Defense Costs** are in addition to the **Limit of Liability**); and

   b) Under Subsection D, Errors and Omissions Liability, for **Damages** for each **Occurrence** seeking relief from **Wrongful Acts** (amounts paid as **Defense Costs** are in addition to the **Limit of Liability**).

   c) Under Subsection E, Privacy and Security Liability and Expense, **Claims Expenses** are included in the **Limit of Liability.**

   The Coverage Agreement will cease to apply and CORSA will have no further obligation to any person or organization after the applicable **Limit of Liability** has been exhausted by payment of **Damages**;

3. With respect to Section II, Property Coverage Agreements, for direct physical damage to or loss of use of property.

**Location** means a location listed on the schedules of property on file with CORSA or a location covered under the Automatic Coverage or Errors and Omissions coverage.

**Medical Professional Liability** means a **Covered Party(ies)** liability for **Professional Medical Services** rendered or which should have been rendered to any person or persons (other than **Employees** of the **Member** injured during the course of their employment).

**Member** means the entity that is a participating **Member** of CORSA subject to the CORSA Code of Regulations and Participation Agreement, and is named as such in the Memorandum of Coverage.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

**Money** means currency, coins, bank notes in current use and having a face value, and traveler's checks, registered checks, and money orders held for sale to the public.

**Occurrence** means:

1. With respect to Section I, Liability Coverage Agreements, A. General Liability,  B. Law Enforcement Liability, C. Automobile Liability, E. Ohio Stop Gap Employer's Liability and F. Employee Benefits Liability, an accident on or after the applicable **Retroactive Date** and before the end of the **Coverage Period**, or a continuous or repeated exposure to substantially the same general conditions that commences on or after the applicable **Retroactive Date** and before the end of the **Coverage Period** which results in **Bodily Injury, Personal Injury, Advertising Injury** or **Property Damage**.  All **Bodily Injury**, **Personal Injury, Advertising Injury or Property Damage** arising out of an accident or a continuous or repeated exposure to substantially the same general conditions shall be deemed to be one **Occurrence** regardless of the number of **Covered Party(ies)** involved, the number of individuals or entities affected, the number of locations involved, or the period of time involved, even if subsequent exposure takes place after the **Coverage Period**;

2. With respect to Section I, Liability Coverage Agreements, D. Errors and Omissions Liability, an alleged **Wrongful Act** that commences on or after the applicable **Retroactive Date** and before the end of the **Coverage Period**.  A series of continuous, repeated or related **Wrongful Acts** by one or more **Covered Party(ies)** shall be deemed to be one **Occurrence** regardless of the number of **Covered Party(ies)** engaged in such **Wrongful Acts**, the number of individuals or entities affected by such **Wrongful Acts**, the number of locations where such **Wrongful Acts** occur, the number of **Wrongful Acts** occurring or the period of time over which they occur, even if subsequent **Wrongful Acts** take place after the **Coverage Period**;

3. With respect to Section I, Liability Coverage Agreements, G. Privacy and Security Liability and Expense, a **Privacy or Security Event.**

4. With respect to Section II, Property Coverage Agreements, an accidental happening or event or a continuous or repeated exposure to conditions which result in damage to or loss of use of property to which this Coverage Agreement applies.

5. With respect to Section IV, Crime Coverage Agreements, all loss up to the **Limit of Liability** as shown in the Memorandum of Coverage caused by, or involving, one or more **Employees**, whether the result of a single act or series of acts.

**Operations** for **Business Income and Extra Expense** means business activities occurring at the **Member's** premises; and the tenantability of the described premises.

**PCI-DSS Assessment** means any monetary penalty owed by a **Covered Party(ies)** due to the **Covered Party(ies)** noncompliance with Payment Card Industry Data Security Standards under an agreement between the **Covered Party(ies)** and a financial institution or other person enabling the **Covered Party(ies)** to accept credit cards, debit cards, prepaid cards, or other payment cards.

**Period of Restoration** means:

1. For building and equipment, the period:
   a. Starting from the time of physical loss or damage of the type covered against; and

   b. Ending when with due diligence and dispatch the building and equipment could be:

      i.    Repaired or replaced; and

10 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

ii.      Made ready for operations;

under the same or equivalent physical and operating conditions that existed prior to the damage.

iii.     Not to be limited by the end of the **Coverage Period**.

2.   For building and equipment under construction:

a. The equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

b. Due consideration will be given to the actual experience of the business compiled after completion of the construction and startup.

3.   For stock-in-process and mercantile stock, including finished goods not manufactured by the **Member**, the time required with the exercise of due diligence and dispatch:

a. To restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

b. To replace physically damaged mercantile stock.

This item does not apply to rental value that would have been earned or incurred.

4.   For raw materials and supplies, the period of time:

a. Of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

b. Limited to that period for which the damaged raw material and supplies would have supplied operating needs.

5.   For physically damaged exposed file, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation.  This time does not include research, engineering or any other time necessary to restore or recreate lost information.

This item does not apply to rental value that would have been earned or incurred.

6.   For physically damaged or destroyed data, programs, or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, the time to recreate or restore including the time for researching or engineering lost information.

This item does not apply to rental value that would have been earned or incurred.

The **Period of Restoration** does not include any additional time due to the **Member's** inability to resume operations for any reason, including but not limited to:

1.   Making changes to equipment;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

2. Making changes to the buildings or structures except as provided in the Demolition and Increased Cost of Construction provision;

3. Restaffing or retraining employees.

If two or more **Periods of Restoration** apply, such periods will not be cumulative.

   **Period of Service Interruption** means the period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the **Location** receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the **Period of Restoration** provision of this Coverage Agreement. It is limited to only those hours during which the **Member** would or could have used services(s) if it had been available and it does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

**Personal Information** means an individual's name in combination with one or more of the following:

1. Information concerning the individual that constitutes "nonpublic personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and implementing regulations;

2. Medical or health care information concerning the individual, including without limitation "protected health information" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and implementing regulations;

3. The individual's Social Security number, driver's license or state identification number, credit, debit, or other financial account numbers and associated security codes, access codes, passwords or personal identification numbers that allow access to the individual's financial account information; or

4. Other nonpublic personally identifiable information, as protected under any local, state, federal or foreign law;

Provided, however, **Personal Information** does not include information that is lawfully available to the public, including without limitation information lawfully available from any **Covered Party(ies)** or any local, state, federal or foreign governmental entity.

   **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses; false arrest, detention or imprisonment; malicious prosecution; humiliation; false or improper service of process; publication or utterance of libel or slander or disparaging material or a publication or utterance in violation of an individual's right to privacy; violation of right of public occupancy; wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor.

   **Pollutant(s)** means any solid, liquid, gaseous or thermal irritant; including but not limited to a contaminant or toxic or hazardous substance; or any substance the presence, existence, or release of which endangers or threatens to endanger the health, safety, or welfare of persons or the environment; smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals and waste; except heat, smoke or fumes from a hostile fire.  Waste includes materials to be recycled, disposed, reconditioned or reclaimed.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

**Privacy or Security Event** means:

1. The actual or reasonably suspected theft, loss or unauthorized disclosure of or access to electronic **Personal Information** in the care, custody or control of the **Member** or for which the **Member** is legally responsible, regardless of whether such **Personal Information** is maintained in electronic, paper or any other format; or

2. A violation or failure of the security of a **Computer System**, including but not limited to unauthorized access, unauthorized use, a denial of service attack or receipt or transmission of malicious code.

Any **Privacy or Security Event** that is continuous or part of a series of repeated or related **Privacy or Security Events** will be considered to be a single **Privacy or Security Event** and will be considered to have commenced when the first such **Privacy or Security Event** commenced regardless of:

1. The number of individuals or entities engaged in such **Privacy or Security Events**;

2. The number of individuals or entities affected by such **Privacy or Security Events**;

3. The number of locations where such **Privacy or Security Events** occurred; or

4. The number of such **Privacy or Security Events** occurring or period of time over which they occur, even if subsequent **Privacy or Security Events** take place after the **Coverage Period**.

**Privacy Response Expenses** means the following reasonable and necessary costs incurred by the **Member** within one year of the discovery of a **Privacy or Security Event** that results in the actual or reasonably suspected theft, loss or unauthorized disclosure of or access to electronic **Personal Information** in the care, custody or control of the **Member** or for which the **Member** is legally responsible:

1. For the services of a security expert designated by CORSA to determine the scope and cause of a **Privacy or Security Event** and the extent to which **Personal Information** was disclosed to or accessed by unauthorized persons;

2. For the services of consultants or attorneys designated by CORSA to determine the **Member's** obligations, if any, under applicable law to give notice to affected individuals;

3. To notify affected individuals if required by applicable law or if the **Member** voluntarily elects to give such notice, and for the services of a contractor designated by CORSA to assist with providing such notice and responding to questions and concerns raised by individuals who are notified;

4. For the services of a contractor designated by CORSA to provide identity theft protection services to affected individuals if the **Member** elects to provide such services; and

5. For the services of a public relations consultant designated by CORSA to avert or mitigate damage to the **Member's** reputation as a result of the **Privacy or Security Event**;

Provided, however, **Privacy Response Expenses** do not include:

1. Any internal salary, administrative, overhead or other related expenses of any **Covered Party(ies)** or any charges by a **Covered Party(ies)** for time spent cooperating with the investigation and response to any **Privacy or Security Event**;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

2. **Claim Expenses; or**

3. **PCI-DSS Assessments**.

**Products/Completed Operations Hazard** includes liability for **Bodily Injury** or **Property Damage** arising out of the **Member's** products or work or reliance upon a representation or warranty made at any time with respect thereto, but only if the **Bodily Injury** or **Property Damage** occurs away from premises owned by or rented to the **Member**, and;

1. After physical possession of such products has been relinquished to others; or

2. Work has been completed or abandoned.

This Hazard does not include **Bodily Injury** or **Property Damage** arising out of;

1. The transportation of property unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it; or

2. The existence of tools, uninstalled equipment, or abandoned or unused materials.

**Professional Medical Services** means professional medical services, and includes policy-making in connection with the provision of professional medical services, as well as the supervision of professional medical services rendered by others.

**Proof of Loss** means documentation by the **Member** on forms provided by CORSA Administrators of a covered loss to a property of the **Member**.

**Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

All such losses shall be deemed to occur at the time of, for 1., the physical injury that caused it, or for 2., the **Occurrence** that caused it.  For purposes of this definition tangible property does not include information or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, compact disks, tapes, drives, cells, data processing devices or any other media that are used with electronically controlled equipment.

**Regulatory Penalties** means any civil fine or civil monetary penalty imposed in a **Regulatory Proceeding** payable by a **Covered Party(ies)** to the governmental entity bringing the **Regulatory Proceeding** and any sum of money that a **Covered Party(ies)** is legally obligated to deposit in a fund as equitable relief for the payment of consumer claims due to an adverse judgment or settlement of a Regulatory Proceeding.

**Regulatory Proceeding** means a request for information, civil investigative demand, **Suit**, civil investigation or civil proceeding commenced by or on behalf any local, state, federal or foreign governmental entity in the entity's regulatory or official capacity.

**Retroactive Date** means the dates specified as such in the Memorandum of Coverage.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

**Robbery** means the unlawful taking of property from the care or custody of a person by one who has caused or threatened to cause that person bodily harm or committed an obviously unlawful act witnessed by that person.

**Safe Burglary** means the unlawful taking of:

1.  Property within a locked safe or vault by a person unlawfully entering the safe or vault evidenced by marks of forcible entry upon its exterior;

2.  A safe or vault from inside the premises.

**Securities** means all negotiable and non-negotiable instruments or contracts representing either **Money** or other property and includes:

1.  all revenue and other stamps in current use, tokens, and tickets, and

2.  evidences of debt issued in connection with credit or charge cards, which cards are not issued by the **Member;**

but does not include **Money**.

**Sexual Abuse** means any actual or attempted criminal sexual conduct towards a person by another person, or persons acting in concert, which causes physical and/or mental injury.  **Sexual Abuse** includes: sexual molestation, sexual assault, sexual exploitation or sexual injury.  **Sexual Abuse** does not include **Sexual Harassment**.

**Sexual Harassment** means any actual, attempted or alleged unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature towards a person by another person, or persons acting in concert, which causes physical and/or mental injuries.  **Sexual Harassment** includes:

1.  The above conduct when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person; or

2.  The above conduct when such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile, or offensive work environment.

**Suit** means a complaint filed in state or federal court seeking **Damages** to which this Coverage Agreement applies. A **Suit** does not mean administrative proceedings pending before any local, state, or federal board or agency, except the Ohio Civil Rights Commission, and the Equal Employment Opportunity Commission.  With respect to Section 1, Liability Coverage Agreement, G., Privacy and Security Liability and Expense, **Suit** means a civil proceeding arising out of a **Privacy or Security Event** and includes an arbitration proceeding or other alternative dispute resolution proceeding and to which the **Covered Party(ies)** must submit or does submit with the consent of CORSA. With respect to Section 1, Liability Coverage Agreement, I., Declaratory, Injunctive, or Equitable Relief Defense Costs, **Suit** means a complaint filed in state or federal court to which this Coverage Agreement applies.

**Transfer Account** means an account maintained by the **Member** at a financial institution from which the **Member** or its agent can initiate the transfer, payment or delivery of **Money** or **Securities**:

1.  By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

2.  By means of written instructions establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

15 of 70

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

**Valuable Papers and Records** means written, printed, electronically recorded on data processing media, or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, but not including **Money** or **Securities**.

**Wrongful Act** means any actual or alleged tortious error, act, omission, misstatement, misleading statement, neglect or breach of duty on or after the applicable **Retroactive Date** and before the end of the **Coverage Period**, or continuous or repeated exposure to any of these, that commences on or after the applicable **Retroactive Date** and before the end of the **Coverage Period**, committed by a **Covered Party(ies)** in the discharge of their duties. **Wrongful Act** includes actual or alleged **Wrongful Employment Practices**, discrimination, violation of civil rights, misfeasance, malfeasance, or nonfeasance in the discharge of duties, individually or collectively, that results directly but unexpectedly and unintentionally in damage to others.  A series of continuous, repeated or related **Wrongful Acts**, by one or more **Covered Party(ies)**, shall be deemed to be one **Wrongful Act** regardless of the number of **Covered Party(ies)** engaged in such **Wrongful Acts**, the number of individuals or entities affected by such **Wrongful Acts**, the number of locations where such **Wrongful Acts** occur, the number of **Wrongful Acts** occurring or the period of time over which they occur, even if subsequent **Wrongful Acts** take place after the **Coverage Period**.

**Wrongful Employment Practice** means a **Wrongful Act** with respect to its **Employee** or prospective **Employee** by the **Member** as employer or by a person or entity for whose acts the **Member** is liable, including wrongful activities related to recruitment, hiring, evaluation, promotion, demotion, discipline, or termination of an **Employee**, including **Sexual Harassment**, and including related mental injury, emotional distress or shock arising out of such **Wrongful Acts**.


### SECTION I – LIABILITY COVERAGE AGREEMENTS

### THIS IS A CLAIMS MADE COVERAGE

With respect to Parts A., B., C., D., E., F., and G. below, CORSA agrees, subject to the limitations, terms and conditions hereunder mentioned, to pay on behalf of a **Covered Party(ies)** all **Damages** in excess of the applicable **Deductible** amount, and then up to the applicable **Limit of Liability**, which the **Member** becomes legally obligated to pay because of liability arising out of **Occurrences, Wrongful Acts** or **Cyber Security Events**  in the **Coverage Territory** commencing on or after the applicable **Retroactive Date** and before the end of the **Coverage Period** and for which a **Claim** under this Section  is first made against a **Covered Party(ies)** during the **Coverage Period** and reported to CORSA as soon as reasonably practicable.

CORSA has the right to investigate, defend, or settle any **Claim, Occurrence, Wrongful Act** or **Cyber Security Event** to which Section I, Liability Coverage Agreements, applies.  CORSA has the duty to investigate, defend, or settle any **Suit** for **Damages**, to which Section I, Liability Coverage Agreements, applies.  However, CORSA shall have no duty to investigate, defend, or settle any **Suit** for **Damages** to which Section I, Liability Coverage Agreements, does not apply.  CORSA's duty to defend begins when CORSA receives written notice of a **Suit** for **Damages** to which Section I, Liability Coverage Agreements, applies, and ends when the **Limit of Liability** has been exhausted by the payment for **Damages** for:

A.  General Liability; Medical Payments;
B.  Law Enforcement Liability
C.  Automobile Liability; Medical Payments
D.  Errors and Omissions Liability
E.  Ohio Stop Gap Employers' Liability
F.  Employee Benefits Liability
G.  Privacy and Security Liability and Expense

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

When CORSA has the duty to defend under Section I, Liability Coverage Agreements, A, B, C, D, E and F, CORSA will pay **Defense Costs** in addition to the **Limit of Liability**.  When CORSA has the duty to defend under Section I, Liability Coverage Agreements, G, Privacy and Security Liability and Expense, **Claims Expenses** are included in the **Limit of Liability**.

Coverage is provided under:

A.  GENERAL LIABILITY:

1.  By reason of the liability imposed upon a **Covered Party(ies)** by law, or assumed by a **Covered Party(ies)** under a **Covered Contract**, for **Damages**, direct or consequential, that the **Covered Party(ies)** becomes legally obligated to pay and that arises out of any **Occurrence** on account of: **Bodily Injury**, **Property Damage**, **Personal Injury**, **Advertising Injury**, **Products/Completed Operations Hazard**, or **Medical Professional Liability.**

2.  Medical Payments:  If no other insurance or benefits are available to the injured person, CORSA will pay up to the amount specified in the Memorandum of Coverage to each injured person for the usual, customary, and reasonable expenses of first aid administered at the time of an accident, and necessary and reasonable hospital, medical, surgical, X-ray, dental, ambulance, nursing and funeral services.  Such services must arise out of **Bodily Injury** to a person other than a **Covered Party(ies)** sustained in an accident during the **Coverage Period** on premises owned, used, or rented by, or leased to, a **Covered Party(ies)**.  The expenses must be incurred and reported to CORSA within one year of the date of the accident.

B.  LAW ENFORCEMENT LIABLITY:

1.  By reason of the liability imposed upon the **Covered Party(ies)** by law or assumed by a **Covered Party(ies)** under a **Covered Contract** for **Damages**, direct or consequential, that the **Covered Party(ies)** becomes legally obligated to pay and that arises out of any **Occurrence** or  **Wrongful Act** during the performance of the **Covered Party(ies)** duties in the regular course of **Law Enforcement Activities**, except for **Wrongful Employment Practices**, provided for under Section I, Liability Coverage Agreements, D., Errors and Omissions Liability.

C.  AUTOMOBILE LIABLITY:

1.  By reason of the liability imposed upon the **Covered Party(ies)** by law or assumed by a **Covered Party(ies)** under a **Covered Contract** for **Damages**, direct or consequential, that a **Covered Party(ies)** becomes legally obligated to pay, and that arises out of any **Occurrence**, on account of **Bodily Injury** and/or **Property Damage** arising out of the ownership, maintenance, or use of any **Automobile** by the **Covered Party(ies)**.

2.  Automobile Medical Payments:  If no other insurance or benefits are available to the injured person, CORSA will pay up to the amount specified in the Memorandum of Coverage for the usual, customary, and reasonable expenses for first aid administered at the time of an accident to, and for reasonable and necessary hospital, medical, surgical, X-ray, dental, ambulance and funeral expenses of, persons injured while occupying or using any covered **Automobile**.  The accident must occur within the **Coverage Period**, and such expenses for services must be incurred and reported to CORSA within one year of the date of the accident.

17 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

3. Uninsured/Underinsured Motorist Coverage:  If included by Amendment in the Memorandum of Coverage.

D.  ERRORS AND OMISSIONS LIABILITY:

1. By reason of liability for any **Wrongful Act** committed by a **Covered Party(ies)**, during the performance of the **Covered Party(ies)** duties. Coverage includes:

   a) **Damages** a Covered Party(ies) becomes legally obligated to pay and the cost of attachment or similar bonds, but without any obligation on the part of CORSA to apply for or furnish such bonds; and

   b) Costs, charges, and expenses incurred in connection with any governmental investigation provided that a **Claim** is brought against a **Covered Party(ies)** for a **Wrongful Act** that is or was a subject of said governmental investigation, and such **Claim** is otherwise covered by this Coverage Agreement.

E.  OHIO STOP GAP EMPLOYERS' LIABILITY:

1. CORSA will pay those sums that the **Covered Party(ies)** becomes legally obligated to pay as **Damages** in excess of the applicable **Deductible** amount, and then up to the applicable **Limit of Liability,** because of **Bodily Injury** to which this coverage applies.  CORSA will have the right and duty to defend any **Suit** seeking those **Damages**.  CORSA may at its discretion investigate any accident or disease and settle any **Claim** or **Suit** that may result.  But CORSA's right and duty to defend ends when it has used up the applicable **Limit of Liability** in the payment of judgments or settlements.

2. This insurance applies to **Bodily Injury** only if:

   a) The **Bodily Injury** is sustained by an **Employee** of the **Member** and arises out of and in the course of such **Employee**'s employment by the **Member;**

   b) The **Bodily Injury** takes place in the **Coverage Territory**;

   c) Such **Employee** has been reported and declared under the Workers' Compensation Laws of Ohio.

3. **Damages** because of **Bodily Injury** include **Damages** claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.  The **Damages** CORSA will pay, where recovery is permitted by law, include **Damages**:

   a) For which the **Covered Party(ies)** is liable to a third party by reason of a **Claim** or **Suit** against it by that third party to recover the **Damages** claimed against such third party as a result of injury to the **Covered Party(ies) Employee**.

   b) For care and loss of services;

   c) For consequential **Bodily Injury** to a spouse, child, parent, brother or sister of the injured **Employee**; provided that these **Damages** are the direct consequence of **Bodily Injury** that arises out of and in the course of the injured **Employee**'s employment by the **Covered Party(ies);** and

   d) Because of **Bodily Injury** to an **Employee** that arises out of and in the course of employment, claimed against the **Covered Party(ies)** in a capacity other than as an employer.

18 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

F.  EMPLOYEE BENEFITS LIABILITY:

By reason of the liability imposed upon a **Covered Party(ies)** by law or assumed by a **Covered Party(ies)** under a **Covered Contract** for **Damages**, direct or consequential, that the **Covered Party(ies)** becomes legally obligated to pay and that arises out of any **Occurrence** on account of a negligent act, error, or omission in the **Administration** of a **Covered Benefit Plan**.

G.  PRIVACY AND SECURITY LIABILITY AND EXPENSE COVERAGE

1.  Third-Party Liability

CORSA will pay those sums a **Covered Party(ies)** becomes legally obligated to pay as **Damages,** in excess of the applicable **Deductible** amount, and then up to the applicable **Limit of Liability,** because of a **Privacy or Security Event**.  CORSA will have the right and duty to defend the **Covered Party(ies)** against any **Suit** seeking such damages.  However, CORSA will have no duty to defend any **Covered Party(ies)** against any Suit seeking damages to which this coverage does not apply.  CORSA may at its discretion investigate any **Privacy or Security Event** and settle any **Claim** that may result.

But:

a)  The amount CORSA will pay for **Damages** and **Claim Expenses** is limited as described in the Memorandum of Coverage; and

b)  The right and duty of CORSA to defend ends when the applicable limit of liability is exhausted in the payment of judgments or settlements, **Regulatory Penalties**, **Claims Expenses, Privacy Response Expenses** and **PCI-DSS Assessments**.

This coverage applies only if:

c)  The **Privacy or Security Event** commenced on or after the applicable **Retroactive Date** and before the end of the **Coverage Period;** and

d)  A **Claim** for **Damages** because of the **Privacy or Security Event** is first made against the **Covered Party(ies)** during the **Coverage Period** or any Extended Reporting Period; and

e)  The **Covered Party(ies)** gives written notice of the **Claim to** CORSA in accordance with Section VI, General Conditions, E.  Duties in the Event of a Claim, Occurrence, Wrongful Act or Privacy or Security Event.

2.  **Privacy Response Expenses**

CORSA will pay for **Privacy Response Expenses** incurred by the **Covered Party(ies)** in connection with a **Privacy or Security Event** that results in the actual or reasonably suspected theft, loss or unauthorized disclosure of or access to **Personal Information**.

But:

a)  The amount CORSA will pay for **Privacy Response Expenses** is limited as described on the Memorandum of Coverage.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

This coverage applies only if:

a) The **Privacy or Security Event** commenced on or after the **Retroactive Date**, if any, shown in the Memorandum of Coverage and before the end of the **Coverage Period**;

b) and **Member** gives written notice of the **Privacy or Security Event** to CORSA in accordance with Section VI-General Conditions, E. Duties in the Event of a Claim, Occurrence, Wrongful Act, or Privacy or Security Event.

3. **Regulatory Proceedings** and **Penalties**

CORSA will pay for **Regulatory Penalties** the Member becomes legally obligated to pay as a result of a **Regulatory Proceeding** resulting from a **Privacy or Security Event.** CORSA will have the right and duty to defend the **Covered Party(ies)** against any **Regulatory Proceeding** to which this coverage applies. CORSA may at its discretion investigate any **Privacy or Security Event** and settle any **Claim** that may result.

But:

a) The amount CORSA will pay for **Regulatory Penalties** and **Claim Expenses** resulting from a **Regulatory Proceeding** is limited as described in the Memorandum of Coverage; and

b) The right and duty of CORSA to defend a **Regulatory Proceeding** ends when the applicable limit of liability is exhausted.

This coverage applies only if:

a) The **Privacy or Security Event** commenced on or after the **Retroactive Date**, if any, shown in the Memorandum of Coverage and before the end of the **Coverage Period**;

b) A **Regulatory Proceeding** because of the **Privacy or Security Event** is initiated against the **Covered Party(ies)** during the **Coverage Period** or any Extended Reporting Period; and

c) The **Covered Party(ies)** gives written notice of the **Regulatory Proceeding** to CORSA in accordance with Section VI-General Conditions, E. Duties in the Event of a Claim, Occurrence, Wrongful Act, or Privacy or Security Event.

A **Regulatory Proceeding** will be deemed to have been initiated when notice of the **Regulatory Proceeding** is received by any **Covered Party(ies)** or by CORSA, whichever occurs first.

4. **PCI-DSS Assessments**

CORSA will pay for **PCI-DSS Assessments** for which a **Covered Party(ies)** is liable if the **PCI-DSS Assessments** are due to noncompliance by the **Covered Party(ies)** with PCI Data Security Standards and the noncompliance resulted in a **Privacy or Security Event.**

But:

a) The amount CORSA will pay for **PCI-DSS Assessments** is limited as described om the Memorandum of Coverage.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

This coverage applies only if:

a)   The **Privacy or Security Event** commenced on or after the **Retroactive Date**, if any, shown in the Memorandum of Coverage and before the end of the **Coverage Period**;

b)  A **Claim** for **PCI-DSS Assessments** is first made against the **Covered Party(ies**) during the Coverage Period or any Extended Reporting Period; and

c)  The **Member** gives written notice of the **Privacy or Security Event** to CORSA in accordance with Section VI-General Conditions, E. Duties in the Event of a Claim, Occurrence, Wrongful Act, or Privacy or Security Event.

H.   ATTORNEY DISCIPLINARY PROCEEDINGS

CORSA will provide a defense for Grievances filed by either a certified local bar association grievance committee or the Disciplinary Counsel with the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio alleging that any attorney who is an Elected Official or **Employee** of the **Member** committed acts of misconduct while acting within the course and scope of their position.

This coverage will commence once CORSA receives notice of a grievance before the Disciplinary Counsel of the Ohio Supreme Court, or the Certified Grievance Committee of a local bar association.  Once CORSA receives notice of a grievance, CORSA will provide a defense under the terms and conditions of the CORSA coverage agreement.

But:

a)   The amount CORSA will pay for Attorney Disciplinary Proceedings is limited to defense costs only; and

b)  The amount CORSA will pay for Attorney Disciplinary Proceedings is limited as described on the Memorandum of Coverage; and

c)  A $2500 deductible will apply.

I.   DECLARATORY, INJUNCTIVE, OR EQUITABLE RELIEF DEFENSE COSTS

Subject to the limitations, terms and conditions set forth in this Coverage Agreement, CORSA will pay **Defense Costs** for any **Suit** against a **Covered Party(ies)** seeking only declaratory, injunctive or equitable relief to which this coverage applies.

This coverage applies to any **Suit** against a **Covered Party(ies)** seeking only declaratory, injunctive or equitable relief arising out of **Wrongful Acts** or **Privacy or Security Events** in the **Coverage Territory** commencing on or after the applicable **Retroactive Date** and before the end of the **Coverage Period** and for which a **Suit** is brought against a **Covered Party(ies)** during the **Coverage Period** and reported to CORSA as soon as reasonably practicable.

21 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

CORSA will not pay nominal damages in connection with such **Suit,** or any costs or expenses incurred to comply with orders providing for fines, penalties, or declaratory, injunctive, or equitable relief, including but not limited to attorney's fees and expenses of the claimant.

CORSA shall have the right and duty to defend any **Suit** against a Covered Party(ies) seeking only declaratory, injunctive or equitable relief to which this coverage applies.  CORSA's duty to defend begins when CORSA receives written notice of a **Suit** to which the coverage provided under Section I, Liability Coverages, Coverage I. Declaratory, Injunctive and Equitable Defense Costs applies.  CORSA's duty to defend ends when the Declaratory, Injunctive or Equitable Relief **Limit of Liability** shown in the Memorandum of Coverage has been exhausted by the payment for defense costs.

## SECTION I – LIABILITY EXCLUSIONS

A.   General Exclusions, SECTION I, LIABLITY COVERAGE AGREEMENTS, DOES NOT APPLY TO:

1.   **Bodily Injury**, **Personal Injury**, **Advertising Injury, Property Damage, or Privacy or Security Events**  which a **Covered Party(ies)** intended or expected or reasonably could have expected, but this exclusion shall not apply to **Claims** resulting from the use of reasonable force to protect persons or property while acting within the scope of his/her duties for the **Member**;

2.   Any **Claim** caused or contributed to by fraud, dishonesty, or criminal act of that **Covered Party(ies)** or self-dealing or gaining of profit or advantage to which a **Covered Party(ies)** is not legally entitled;

3.   Any **Claim** arising out of the willful violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of any **Covered Party(ies)**;

4.   Any obligation for which the **Covered Party(ies)** may be held liable under any Worker's Compensation (including The United States Longshoremen and Harborworkers' Act, the Federal Employee's Liability Act or the Jones Act), disability benefits, Ohio Stop Gap Employers Liability, Fair Labor Standards Act, unemployment compensation law or similar law;

5.   **Property Damage** to personal property of the **Covered Party(ies)**, or to property held by the **Covered Party(ies)** in trust or on commission or on consignment for which the **Covered Party(ies)** may be held legally liable, while in due course of transit;

6.   The ownership, negligent entrustment, maintenance or use, including loading or unloading, of watercraft over fifty (50) feet in length, or being used to carry persons or property for a charge.  This exclusion applies even if a **Claim** alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by a **Covered Party(ies)**;

7.   **Property Damage** to property owned or occupied by or rented to the **Member** or damage to property in the care, custody, or control of a **Covered Party(ies)**, except for personal property of others held, or while being transported by a covered law enforcement agency;

8.   Any liability arising out of or in any way connected with the operation of the principles of eminent domain, condemnation proceedings, or inverse condemnation proceedings, or inverse condemnation, or claims alleging constructive taking of property, or a taking of property without payment of just compensation by whatever name called, whether such liability accrues directly against the **Member** or by virtue of any agreement entered into by or on behalf of the **Member**;

22 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

9.  Any act or the participation in any act of physical abuse or **Sexual Abuse** of any person by any **Covered Party(ies)**, provided however this exclusion does not apply to allegations or **Claims** of negligence or other wrongdoing in the hiring, employment, training, supervision, or monitoring of the **Covered Party(ies)** perpetrating or participating in the physical or **Sexual Abuse**;

10.  Any **Claim** against a **Covered Party(ies)** arising out of estimates of probable costs or cost estimates being exceeded or for faulty preparation of bid specifications or plans;

11.  Any **Claim** arising out of any breach of or failure to perform a contractual obligation, including warranties of any kind or any **Suit** by unsuccessful bidders on public projects or contracts.  This exclusion does not apply to **Claims** brought by **Employee**s or officials alleging **Wrongful Employment Practices**;

12.  Any **Claim** resulting from an **Occurrence, Wrongful Act** or **Privacy or Security Event** which commences prior to 12:01 am of the **Retroactive Date(s)** in the Memorandum of Coverage;

13.  Any **Claim** based upon or attributable to the rendering or failure to render any professional opinion, treatment, consultation or service if such opinion, treatment, consultation or service was rendered or failed to have been rendered while the **Covered Party(ies)** was engaged in any activity for which the **Covered Party(ies)** received compensation from any source other than the **Member**;

14.  Mold/Fungus; All loss, cost, or expense directly or indirectly arising out of, resulting from or in any manner related to Fungal Pathogens whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss.  Fungal Pathogens as utilized herein, shall mean any fungus or mycota or any byproduct or type of infestation produced by such fungus or mycota, including but not limited to mold, mildew, mycotoxins, spores, or any biogenic aerosols;

15.  Except to the extent provided by any Stop Gap Employers' Liability, **Claims** (a) for **Bodily Injury** to any person arising out of and in the course of employment by a **Covered Party(ies)** or performing duties related to the conduct of the **Covered Party(ies)** operations, or (b) brought by the spouse, child, parent, brother, sister, of such a person as a consequence of such **Bodily Injury**.  This exclusion applies whether the **Covered Party(ies)** may be liable as an employer or in any other capacity and to any obligation to share **Damages** with or repay someone else who must pay **Damages** because of the injury;

16.  Any **Claim** arising out of any professional or organized racing or demolition contest or stunting activity. However, this exclusion applies only if **Automobile**s, motorized vehicles or **Contractor's Equipment** are participating in such contest or activity, and if such contest or activity is sponsored by a **Covered Party(ies)**;

17.  Any **Claim** arising out of or in any way related to **Automobile**, **Contractor's Equipment** or motorized vehicles which are either owned, loaned, or leased by the **Member**, while used in any professional or organized racing or demolition contest or stunting activity or while practicing for such contest or activity or while being prepared for such activity;

18.  Any **Employee** operating an **Automobile**, motorized vehicle, or **Contractor's Equipment** while participating in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

19.  Any **Claim** for which any **Covered Party(ies)** may be held liable by reason of:

    a) Causing or contributing to the intoxication of any person;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

    b) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    c) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if the **Covered Party(ies)** is in the business of manufacturing, distributing, **selling, serving or furnishing alcoholic beverages.**

20.  Except as provided in Section I, Liability Coverage Agreements, G, Privacy and Security Liability and Expenses, any liability loss, penalty or expense arising from any **Privacy or Security Event**.

21.  Liability arising out of the maintenance, loading or unloading, use or operation or negligent entrustment of any aircraft, airfields, runways, hangars, buildings or other properties in connection with aviation activities, other than premises liability in areas to which the general public is admitted.  This exclusion applies even if a **Claim** alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by a **Covered Party(ies)**.  For purposes of this exclusion, aircraft includes but is not limited to any aerial vehicle that is not controlled by a person from within or on the aerial vehicle, unless specifically added by amendment.

B.  In addition, under Section I, Liability Coverage Agreements, A. General Liability, E. Ohio Stop Gap Employers' Liability and F. Employee Benefits Liability, coverage does not apply to:

1.  Any **Claim** arising out of the ownership, operation, occupancy, or use by the **Member** of a hospital;

2.  Any **Claim** for **Damages**, whether direct or consequential, or any cause of action which is covered under any other subsection of Section I, Liability Coverage Agreements;

3.  Any **Claim** for **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use of entrustment to others of any **Automobile** owned or operated by or rented or loaned to any **Covered Party(ies)**.  This exclusion applies even if **Claims** against any **Covered Party(ies)** allege negligence in the supervision, hiring, employment, training, or monitoring of others by that **Covered Party(ies)**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any **Automobile** that is owned or operated by or loaned to any **Covered Party(ies)**;

4.  Any **Claim** arising out of **Wrongful Employment Practices**; (See Liability Coverage D.);

5.  Liability assumed by the **Covered Party(ies)**, under any contract or agreement whether written, oral or implied except under a **Covered Contract**;

6.  Any **Damages Claimed** for any loss, cost, or expense incurred by the **Member** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of the **Member**'s product or a **Covered Party(ies)** work, if such product or work is recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it;

7.  **Personal Injury** or **Advertising Injury** caused by or at the directions of the **Covered Party(ies)** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury** or **Advertising Injury**;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

8. **Personal Injury** or **Advertising Injury** arising out of oral or written publication of material, if done by or at the direction of the **Covered Party(ies)** with knowledge of its falsity;

9. **Personal Injury** or **Advertising Injury** arising out of oral or written publication of material whose first publication took place prior to the applicable **Retroactive Date**;

10. **Personal Injury** or **Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade-secret or other intellectual property rights.  However, this exclusion does not apply to infringement, in the **Member's Advertisement** of copyright, trade dress or slogan.

C.  In addition, under Section I, Liability Coverage Agreements, B., Law Enforcement Liability coverage does not apply to:

1. Any **Claim** for **Damages**, whether direct or consequential, or any cause of action which is covered under any other subsection of Section I., Liability;

2. Liability assumed by the **Covered Party(ies)** under any contract or agreement whether written, oral, or implied except **Covered Contract**s.

D.  In addition, under Section I, Liability Coverage Agreements, C., Automobile Liability, coverage does not apply to:

1. Any **Claim** for **Damages**, whether direct or consequential, or any cause of action which is covered under any other subsection of Section I, Liability Coverage Agreements;

2. Any person operating or occupying an Automobile without a reasonable belief that he or she is entitled to do so;

3. The owner or lessor of any Automobile rented, leased, borrowed, or hired by the **Covered Party(ies)**; nor any agent or employee of such owner or lessor;

4. Any use by a **Covered Party(ies)** of any Automobile not owned by or leased or rented to the **Member**, except on behalf of or in the business of the **Member**, and then only in excess of coverage provided under any other applicable insurance policy, coverage document, or financial responsibility bond;

5. Liability assumed by the **Covered Party(ies)** under any contract or agreement either written, oral, or implied except **Covered Contract**s.

E.  In addition, under Section I, Liability Coverage Agreements, D., Errors and Omissions Liability, coverage does not apply to any **Claim** against a **Covered Party(ies)**;

1. For **Damages**, whether direct or consequential, or any cause of action which is covered under any other subsection of Section I, Liability Coverage Agreements;

2. Based upon or attributable to a **Covered Party(ies)** gaining in fact any personal profit or advantage to which the **Covered Party(ies)** was not legally entitled, including remuneration paid in violation of law;

3. Arising out of the failure to supply a specific amount of electrical power or fuel arising out of the interruption of the electrical power or fuel supply;

4. Arising out of any fiduciary obligation or duty imposed by the Employee Retirement Income Security Act of 1974 (ERISA) Public Law 93-406 commonly referred to as the Pension Reform Act of 1974; the Consolidated

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

Omnibus Budget Reconciliation Act of 1986 (COBRA); or any Amendments thereto, or similar provisions of any federal, state, or local, statutory law or common law;

5. For **Bodily Injury** or **Personal Injury**, or **Advertising Injury**, but this does not apply to:

   a) Defamation, emotional distress, or humiliation that arises out of or constitutes a **Wrongful Employment Practice**.  (See Section I. Liability, Coverage A. General Liability); or

   b) Mental anguish, emotional distress or other emotional injury which arises out of violation of constitutional or civil rights under any Federal or State Constitution or under Section 1983 of Title 42 of the United States Code;

6. For **Property Damage**;

7. Arising out of collective bargaining, or alleging the failure to engage in required collective bargaining;

8. For back wages and benefits, front wages and benefits, severance obligations, overtime, or similar items, even if designated as liquidated damages under any federal, state, or local statute, rule or regulation; and for sums owed  due to any collective bargaining agreement.   This exclusion does not apply to back wages or benefits, front wages or benefits, or severance obligations which result from a covered **Claim** to the extent of the Back Wages **Limit of Liability** shown in the Memorandum of Coverage.

9. Any **Claim** arising out of the ownership, operation, occupancy, or use by the **Member** of a hospital;

10. Arising out of the calculation, collection, refund, disbursement, or application of any taxes.

F.  In addition, under Section I Liability Coverage Agreements, E. Ohio Stop Gap Employers' Liability, coverage does not apply to:

   1. **Bodily Injury** intentionally caused or aggravated by the **Covered Party(ies)**.  However, this exclusion does not apply to **Bodily Injury** resulting from an act which is determined to have been committed by a **Covered Party(ies)** with the belief that an injury is substantially certain to occur.

   2. Aircraft operation or the performance of any duty in connection with aircraft while in flight.

   3. Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by:

      a) The Federal Employer's Liability Act (45 USC Sections 51-60);

      b) The Non-appropriated Fun Instrumentalities Act (5 USC Sections 8171-8173);

      c) The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950); or

      d) The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

      e) The Defense Base Act (42 USC Sections 1651-1654);

      f) The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

      g) The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872); and

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

    h) Any Workers' Compensation Law, PERRP, unemployment compensation or disability laws or any similar law.

4. Any liability assumed by the **Covered Party(ies)** under any agreement or contract.

5. **Bodily Injury** to an **Employee** when the **Covered Party(ies)** is:

    a) Deprived of common law defenses; or

    b) Otherwise subject to penalty because of its failure to secure its obligations or other failure to comply with the Ohio Workers' Compensation Law.

6. **Damages** arising out of coercion, criticism, demotion, evaluations, reassignment, discipline, defamation harassment, humiliation, discrimination against or termination of any **Employee**, or any personnel practices, policies, acts or omissions.

7. **Bodily Injury** suffered or caused by any person:

    b) Knowingly employed by the **Covered Party(ies)** in violation of any law as to age; or

    c) Under the age of 14 years, regardless of any such law.

8. Multiplied, exemplary or punitive damages.

G. In addition, under Section 1 Liability Coverage Agreements, F., Employee Benefits Liability, coverage does not apply to:

1. Issuance of bonds; or improper collection of taxes;

2. Any dishonest, fraudulent, criminal, or malicious act, libel, slander, discrimination or humiliation;

3. Any **Claim** for failure of performance of contract by any insurer;

4. Any **Claim** based upon:

    a) failure of investments to perform as represented or

    b) advice given to an **Employee** to participate or not participate in stock subscription plans;

5. Fiduciary obligation or duty imposed by the Employee Retirement Income Security Act of 1974 (ERISA); Reconciliation Act of 1986 (COBRA); or any Amendments thereto, or similar provisions of any federal, state, or local statutory law or common law;

6. An activity, act or omission of a Third Party Administrator, a firm or person, other than an **Employee**, who administers a **Covered Benefit Plan**;

7. The failure of any **Covered Party(ies)** to perform under any contract or agreement;

8. Any dishonest, fraudulent, criminal, or malicious act or omission of any **Covered Party(ies)**; or self-dealing or gaining profit or advantage to which a **Covered Party(ies)** is not legally entitled;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

9. **Bodily Injury**, **Property Damage** or **Personal Injury**;

10. **Damages** arising out of an insufficiency of funds to meet any obligations under a **Covered Benefit Plan**;

11. Taxes, fines, or penalties, including those imposed under the Internal Revenue Code or any similar state or local law;

12. The performance of any investment;

13. Legal advice or investment advice given to an **Employee** or an **Employee**'s beneficiaries;

14. Errors in providing information on the past performance of investments;

15. The investment or non-investment of funds;

16. Any intentional violation of any workers' compensation law, unemployment insurance law, social security law, disability benefits law or the administrative interpretation of such law;

17. Any insufficiency of funds to meet any obligations under a **Covered Benefit Plan**;

18. Any loss that results from the termination of a **Covered Benefit Plan**

H. In addition, under Section I, Liability Coverage Agreements, G., Privacy and Security Liability and Expense coverage does not apply to any **Claim, Suit, Regulatory Proceeding, Damages, Regulatory Penalties, Claim Expenses, Privacy Response Expenses or PCI-DSS Assessments** against a **Covered Party(ies)**;

1. For, arising out of, or resulting from **Bodily Injury, Property Damage**, **Personal Injury**, **Advertising Injury, Products/Completed Operations Hazard,** or **Medical Professional Liability.**

2. For, arising out of, or resulting from any contractual liability or obligation, or arising out of or resulting from breach of contract or agreement either oral or written; provided, however, that this exclusion shall not apply:

   a) to the extent the **Covered Party(ies)** would have been liable in the absence of such contract or agreement; or

   b) to amounts payable as **PCI-DSS Assessments**.

3. For, arising out of, or resulting from any actual or alleged antitrust violation, restraint of trade, unfair competition, or false or deceptive or misleading advertising or violation of the Sherman Anti-Trust Act, the Clayton Act, or the Robinson-Patman Act, as amended;

4. For, arising out of or resulting from any actual or alleged false, deceptive or unfair trade practices; however, this exclusion does not apply to any **Claim** or loss covered under Section 1, Liability Coverage Agreements, E., Privacy and Security Liability and Expense that results from a theft, loss or unauthorized disclosure of or access to **Personal Information**;

5. For, arising out of or resulting from:

   a) The actual or alleged unlawful collection or acquisition of **Personal Information** by or on behalf of the **Covered Party(ies)** or the failure to comply with a legal requirement to provide individuals with the

28 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

ability to assent to or withhold assent (*i.e.*, opt-in or opt-out) from the collection, disclosure or use of **Personal Information**; or

b) The distribution of unsolicited email, direct mail, or facsimiles, wiretapping, audio or video recording, or telemarketing, if such distribution, wiretapping, audio or video recording or telemarketing is done by or on behalf of the **Covered Party(ies)**;

6. For, arising out of or resulting from any of the following conduct by a **Covered Party(ies)**:

a) Any actual or alleged violation of the Organized Crime Control Act of 1970 (commonly known as the Racketeer Influenced and Corrupt Organizations Act or RICO), as amended, or any regulation promulgated thereunder or any similar federal law or law of any state, locality or foreign government, whether such law is statutory, regulatory or common law;

b) Any actual or alleged violation of any securities law, regulation or legislation, including but not limited to the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Act of 1940, any state blue sky or securities law, any other federal securities law or legislation, or any other similar law or legislation of any state, locality or foreign government, or any amendment to such laws, or any violation of any order, ruling or regulation issued pursuant to such laws;

c) Any actual or alleged violation of the Fair Labor Standards Act of 1938, the National Labor Relations Act, the Worker Adjustment and Retraining Act of 1988, the Certified Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act of 1970, the Employee Retirement Security Act of 1974 or any similar law or legislation of any state, locality or foreign government, or any amendment to such laws, or any violation of any order, ruling or regulation issued pursuant to such laws; or

d) Any actual or alleged discrimination of any kind including but not limited to age, color, race, sex, creed, national origin, marital status, sexual preference, disability or pregnancy;

7. For, arising out of, or resulting from any criminal, dishonest, fraudulent, or malicious act, error or omission, any intentional security breach, or any intentional or knowing violation of the law committed by any **Covered Party(ies);** provided however, this exclusion shall not apply unless there is a final adjudication of such conduct, an admission of such conduct by the **Covered Party(ies),** or in a criminal proceeding a plea of guilty, *nolo contendere,* no contest or any similar plea by the **Covered Party(ies);**

8. For, arising out of or resulting from any actual or alleged:

a) Infringement of patent or patent rights or misuse or abuse of patent; or

b) Infringement of copyright arising from or related to software code or software products; or

c) Use or misappropriation of any ideas or trade secrets by a **Covered Party(ies)** or on behalf of, or in collusion with a **Covered Party(ies)**;

9. Arising out of or resulting from any of the following:

a) Trading losses, trading liabilities or change in value of accounts;

b) Any loss of monies, securities or tangible property of others in the care, custody or control of the **Covered Party(ies);**

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

    c) The monetary value of any electronic fund transfers or transactions by or on behalf of the **Covered Party(ies)** that is lost, diminished, or damaged during transfer from, to or between accounts; or

    d) The value of coupons, price discounts, prizes awards, or any other valuable consideration given in excess of the total contracted or expected amount that is lost, diminished or damaged;

10. For damage to, destruction of, corruption of, or any loss of use by any **Covered Party(ies)** of any **Computer System** or data, including without limitation any costs or expenses to the **Covered Party(ies)** to repair or replace any **Computer System** or data;

11. For, arising out of or resulting from any threat, extortion or blackmail including but not limited to ransom payments.

I. In addition, under Section I, Liability Coverage Agreements, I., Declaratory, Injunctive or Equitable Relief coverage does not apply to any **Suit** against a **Covered Party(ies)**;

    1. Containing allegations of ethics violations;

    2. Seeking removal from office of any elected or appointed official;

    3. Containing allegations for which there would be no coverage under Section I, Liability Coverage Parts A., B., C., D., E., F., or G. by operation of the Definitions, Liability Exclusions, Liability Conditions, General Exclusions or General Conditions contained in this Coverage Agreement;

## SECTION I – LIABILITY SPECIFIC CONDITIONS

A.  APPEALS:

CORSA has no duty to appeal any judgment, but at its sole option CORSA may appeal a judgment on behalf of any or all **Covered Party(ies)** at CORSA's own cost (including disbursements and interest on judgments incidental to the appeal). If CORSA elects not to appeal any judgment or judicial decision, the **Covered Party(ies)** may do so at their own cost and for their own account, but in no event shall CORSA's liability for **Damages** or **Defense Costs** exceed the amount for which CORSA was liable prior to such appeal.

B.  COORDINATION OF LIABILITY LIMITS:

In the event that an **Occurrence** or **Wrongful Act** is covered under more than one of Sections A, B, C, D, E or F of Section I, Liability, any amount of **Damages** paid under one Section for that **Occurrence** or **Wrongful Act** shall reduce the **Limits of Liability** for any other applicable coverage for that **Occurrence** or **Wrongful Act**, by the same amount.

C.  CROSS LIABILITY:

In the event of **Claims** being made by reason of **Bodily Injury** or **Personal Injury** suffered by any **Employee** of one **Covered Party(ies)** which does not arise out of the injured **Employee**'s employment, for which another **Covered Party(ies)** is liable, then this Coverage Agreement shall cover the **Covered Party(ies)** against whom such **Claim** is made in the same manner as if separate Coverage Agreements had been issued to each **Covered Party(ies)**.

In the event of **Claims** being made by reason of **Property Damage** to property belonging to any **Covered Party(ies)** for which another **Covered Party(ies)** is liable, then this Coverage Agreement shall cover such **Covered**

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

**Party(ies)** against whom such **Claim** is made in the same manner as if separate Coverage Agreements had been issued to each **Covered Party(ies)**.

Nothing contained in this Condition shall operate:

1. To increase CORSA's **Limits of Liability**;

2. To include coverage for a **Member** that sustains **Property Damage** as a consequence of its own **Employee**'s acts.

D.  DEFENSE AND SETTLEMENT:

1. A **Deductible** amount applies to each **Occurrence**, to be reimbursed to CORSA if paid by CORSA.  After the **Member** has paid the applicable **Deductible** amount for Section I, Liability Coverages A, B, C, D or E, CORSA shall pay all reasonable **Defense Costs** incurred by CORSA, or by the **Member** with CORSA's prior consent, up to the **Limit of Liability**, and payment of **Defense Costs** by CORSA shall not reduce the amount available to pay **Damages**.  CORSA shall have no further obligation for **Defense Costs** or **Damages** when the **Limit of Liability** is exhausted;

2. As a condition precedent to a **Covered Party(ies)** rights with respect to any **Occurrence, Wrongful Act, Privacy or Security Event** or **Claim** that may or could involve this Coverage Agreement:

   a) The **Covered Party(ies)** shall cooperate in the investigation and defense of **Occurrences, Wrongful Acts, Privacy or Security Events** and **Claims** and furnish CORSA or its Claims Administrators, and direct others to furnish CORSA or its Claims Administrators, with information requested to evaluate any such **Occurrence**, **Claim**, **Suit**, or circumstance;

   b) No **Covered Party(ies)** or any person on behalf of a **Covered Party(ies)** shall admit any liability or without CORSA's prior consent, or make any payment, propose any settlement, settle any **Claim**, or incur any expense, except at the sole expense of such **Covered Party(ies)**;

   c) The **Covered Party(ies)** shall immediately notify CORSA or its Claims Administrators of any settlement demand made with respect to any **Claim**, Occurrence, **Wrongful Act** or **Privacy or Security Event.**

E.  EXTENDED CLAIMS REPORTING PERIOD:

1. If the **Member** does not renew or cancels or if CORSA cancels or refused to renew any coverage provided by this Coverage Agreement for reasons other than the **Covered Party(ies)** non-payment of contribution or non-compliance with the terms and conditions of this Coverage Agreement, then the **Member** shall have the right, upon payment of any additional contribution stated in the Memorandum of Coverage, Section I, Liability Coverage Agreements, of extending the reporting period for twenty-four (24) months for **Claims** made with respect to **Occurrences, Wrongful Acts** or **Privacy or Security Events** subsequent to the respective **Retroactive Dates** stated in the Memorandum of Coverage and prior to the effective date of such cancellation or non-renewal unless such **Occurrences, Wrongful Acts** or **Privacy or Security Events** are covered by another in-force extended reporting period.  The **Member** agrees that any change in contribution, retained amounts, or any other terms and conditions does not constitute a refusal to renew;

2. If this Coverage Agreement is succeeded immediately by Claims-Made Coverage with any Insurer and/or Underwriter on which the **Retroactive Date** is the same as or earlier than that shown in the Memorandum of Coverage, the succeeding coverage shall be deemed to be a renewal of this Coverage Agreement, and the **Member** shall have no right to secure an extended reporting period hereon;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

3. With respect to perils covered herein that are not covered by said succeeding coverage, the **Member** shall have the right to secure an extended reporting period.  Such perils, if any, are to be selected by the **Member** at the time the election to extend the reporting period is made and CORSA shall then determine that portion of the additional contribution stated in the Memorandum of Coverage applicable to these perils;

4. The **Member**'s right to purchase the extended reporting period must be exercised by giving notice to and making payment of the entire contribution for this extended reporting period to CORSA not later than thirty (30) days after the cancellation or termination date of this Coverage Agreement. If such notice and payment is not so made to CORSA, the **Member** shall not at a later date be able to exercise such right;

5. At the commencement of any extended reporting period the entire contribution shall be deemed fully earned, and in the event the **Member** terminates the extended reporting period before its expiration date for any reasons, CORSA shall not be liable to return to the **Member** any portion of the contribution paid for the extended reporting period;

6. The extended reporting period does not reinstate or increase the applicable **Limit of Liability**.

F.  GOVERNMENTAL AND OFFICIAL IMMUNITY:

The **Member** shall not waive any of the immunities provided State or Federal statutory or common law.

G.  INTERLOCKING CLAUSE:

In the event of an **Occurrence, Wrongful Act** or **Privacy or Security Event** involving this Coverage Agreement and/or any Coverage Agreement of which this Coverage Agreement is a renewal or replacement, CORSA's liability over all **Coverage Period**s shall not exceed what it would have been, in the absence of this specific condition, under anyone Coverage Agreement involved in such **Occurrence, Wrongful Act** or **Privacy or Security Event**.  Coverage Agreement terms, limits, and conditions applicable to the **Coverage Period** which responds at the time the **Claim** is first made shall apply, not the Coverage Agreement terms, limits, and conditions applicable at the time of the **Occurrence, Wrongful Act** or **Privacy or Security Event**.

The apportionment of such amount under this Coverage Agreement and such other **Coverage Period**s shall be determined by CORSA for the sole purpose of establishing the impairment of the separate **Deductible(s)** and/or self-insured retention(s) and/or loss funds and/or specific excess limits of the excess and/or reinsurance certificates involved.

H.  REIMBURSEMENTS:

**Deductible**.  CORSA may pay any part of the entire **Deductible** amount to effect settlement of any **Claim** and upon notification of the action, the **Covered Party(ies)** shall promptly reimburse CORSA for such payments.

## SECTION II – PROPERTY COVERAGE AGREEMENTS

A.  DIRECT PHYSICAL LOSS OR DAMAGE: CORSA agrees, subject to the limitations, exclusions, terms, and conditions of the Coverage Agreement and the maximum applicable **Limit of Liability** as shown in the Memorandum of Coverage, and all according to the current program year CORSA renewal application and schedules of property required by the renewal application agreed to and updated at least annually by the **Member** and kept on file by CORSA, to indemnify the **Member** for direct physical loss or damage occurring during the **Coverage Period** and in excess of the applicable **Deductible** amount and not otherwise excluded.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

1. This Coverage Agreement covers the following property, unless otherwise excluded elsewhere in this Coverage Agreement, to the extent of the interest of the **Member** in such property.

   a. Real Property, including buildings, remodeling, installations, and additions under construction, including building materials, at **Location(s)** in which the **Member** has an insurable interest.

   b. Towers and covered bridges

   c. Property of the **Member** in the Open

   d. Personal Property:

      i  Owned by the **Member** including the **Member's** interest as a tenant in improvements and betterments.  In the event of physical loss or damage, CORSA agrees to accept and consider the **Member** as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary;

      ii Of the **Member** or for which the **Member** may be held legally liable, while in due course of transit within the continental United States of America and Canada. The Property in Transit **Limit of Liability** shown on the Memorandum of Coverage will apply with an exception for Voting Machines.  Voting machines **Limit of Liability** will be the limit reported on the current program year CORSA renewal application.  Coverage attaches when the property is loaded on the transporting vehicle and continues during transit, including temporary warehousing, until the property is removed from the transporting vehicle at the site of the original addressee.  Coverage includes loss of or damage to property in transit arising from acceptance by a **Covered Party(ies)** or a **Covered Party(ies)** customer or consignees of fraudulent bills of lading, shopping, or messenger receipts, or from fraud or deceit perpetuated by any person(s) representing themselves to be the proper party or parties to receive the property for shipment or to accept it for delivery;

   e. **Contractor's Equipment** owned by the **Member** and while being used for the purposes for which it is intended**,** as per schedules of **Contractors Equipment** agreed to, and updated at least annually by the **Member** and kept on file by CORSA.

   f. **Automobiles** owned by the **Member** as per schedules of **Automobiles** agreed to, and updated at least annually by the **Member** and kept on file by CORSA

   g. Property for which the **Member** is liable or agrees to cover by any contractual agreement normal to its operations;

   h. Any other Property added by amendment.

2. This Coverage Agreement also covers the interest of contractors and subcontractors in covered property during construction at a covered **Location** to the extent of the **Member's** legal liability for covered physical loss or damage to such property.  Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any Time Element coverage provided under this Coverage Agreement.

3. EXCLUDED PROPERTY.  Section II, Property Coverage Agreements, A. Direct Physical Loss or Damage does not apply to any of the following property:

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

a. **Money and Securities**, precious metal in bullion form, notes, or securities;

b. Jewelry, furs or precious stones, unless specifically added by amendment;

c. Land, ditches and culverts, water or any other substance in or on land including betterments such as pavements, sidewalks, driveways, guardrails, parking lots and roads; except this exclusion does not apply to loss or damage to Athletic Fields caused by or resulting from:  **Earthquake**, explosion, falling aircraft, fire, **Flood**, hail, lightning, smoke, tornado, vehicle impact, wind driven water and windstorm.

d. Animals except law enforcement and therapy canines specifically added by amendment;

e. Watercraft greater than 50 feet; spacecraft or satellites; aircraft, except aerial vehicles that are not controlled by a person from within or on the aerial vehicles and specifically added by amendment;

f. Underground mines, mineshafts or caverns or any property within such mine, shaft or cavern;

g. Canals, off shore drilling rigs, or reservoirs;

h. Overhead transmission and distribution lines located more than 1,000 feet from the **Member's** covered building;

i. Standing timber; growing crops; sod; grass; or greens and tees at golf courses;

j. Property undergoing insulation breakdown tests;

k. Foundations below the lowest basement floor or below the surface of the ground if there is no basement;

l. Underground pipes, flues, drains or tunnels, all whether or not connected to buildings;

m. Bridges (other than covered bridges), traffic signals, underground water and sewer lines, underground fiber optic lines, unless specifically added by amendment;

n. Retaining walls not constituting part of a building when loss is caused by ice or water pressure;

o. Property sold by the **Member** under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers.

B. COLLAPSE:

1. **Collapse**: Not withstanding any other portion of this Coverage Agreement, coverage is extended with respect to direct physical loss or damage to the property of the **Member,** caused by **Collapse** of a building or any part of a building that is covered under this Coverage Agreement, or that contains personal property covered under this Coverage Agreement, if the **Collapse** is caused by one or more of the following:

a. Fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action, falling objects, weight of snow, ice, or sleet, water damage, breakage of building glass, but all only as covered under this Coverage Agreement;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

      i.   With respect to only 1a. above, sinkhole collapse means the sudden sinking of land into underground empty spaces created by the action of water or limestone or dolomite.  This cause of loss does not include the cost of filling sinkholes or the sinking or collapse of land into man-made underground cavities;

      ii.   With respect to only 1a. above, falling objects does not include loss or damage to the interior of structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object;

      iii.   With respect to only 1a. above, water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam;

   b.   Weight of people or personal property;

   c.   Weight of rain that collects on a roof.

## C.  EQUIPMENT BREAKDOWN

CORSA agrees, subject to the limitations, terms, and conditions of the Coverage Agreement and the maximum applicable Equipment Breakdown **Limit of Liability** as shown in the Memorandum of Coverage, and all according to the Statement of Values agreed to and updated at least annually and kept on file by CORSA, to indemnify the **Member** for loss due to Breakdown of Covered Equipment.

   1.  Breakdown means the direct physical loss resulting from one or more of the following items that causes damage to Covered Equipment and necessitates its repair or replacement:

   a)   Failure of pressure or vacuum equipment;

   b)   Mechanical failure including rupture or bursting caused by centrifugal force;

   c)   Electrical failure including arcing;

   d)   Explosion of steam boilers, steam piping, steam engines or steam turbines owned or leased by you, or operated under your control;

   e)   Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   f)   Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

Unless such loss or damage is otherwise excluded within the Coverage Agreement.

   2.  Breakdown does not mean or include:

   a)   Defects, erasures, errors, limitations or viruses in **computer equipment** and programs including the inability to recognize and process any date or time or provide instructions to Covered Equipment;

   b)   Damage to any structure or foundation supporting the Covered Equipment or any of its parts;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

c)   The functioning of any safety or protective device; or

d)   The cracking of any part on an internal combustion gas turbine exposed to the products of combustion.

3.  Covered Equipment means and includes any:

a)   Equipment built to operate under internal pressure or vacuum other than weight of contents;

b)   Electrical or mechanical equipment that is used in the generation, transmission or utilization of energy; and

c)   Communication equipment, and **computer equipment**.

4.  Covered Equipment does not mean or include any:

a)   **Media**;

b)   Insulating or refractory material, but not excluding the glass lining of any Covered Equipment;

c)   Vessels, piping and other equipment that is buried below ground and requires the excavation of materials to inspect, remove, repair or replace;

d)   Structure, foundation, cabinet or compartment supporting or containing the Covered Equipment or part of the Covered Equipment including penstock, draft tube or well casing;

e)   Vehicle, aircraft, self-propelled equipment or floating vessel including any Covered Equipment that is mounted upon or used solely with any one or more vehicle(s), aircraft, self-propelled equipment or floating vessel;

f)   Dragline, excavation, or construction equipment including any Covered Equipment that is mounted upon or used solely with any one or more dragline(s), excavation, or construction equipment;

g)   Equipment or any part of such equipment manufactured by the **Member** for sale.

h)   Machines or apparatus used solely for research, diagnosis, medication, surgical, therapeutic, dental or pathological purposes.

5.  Equipment Breakdown Coverage Extensions:      The limits for coverage extensions are part of, not in addition to, the **Limit of Liability** for Equipment Breakdown:

a)   Spoilage:   CORSA will pay for the spoilage damage to raw materials, property in process or finished products, provided all of the following conditions are met:

      i.   The raw materials, property in process or finished products must be in storage or in the course of being manufactured;

      ii.   The **Member** must own or be legally liable under written contract for the raw materials, property in process or finished products; and

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

     iii.    The spoilage damage must be due to the lack or excess of power, light, heat, steam or refrigeration.

CORSA will also pay any necessary expenses the Member incurs to reduce the amount of loss under this coverage.  CORSA will pay such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage form.

The most CORSA will pay for this coverage is $500,000.

b)    Service Interruption:  CORSA will pay for loss resulting from the interruption of utility services provided all of the following conditions are met:

    i.    The interruption is the direct result of a Breakdown to Covered Equipment owned, operated or controlled by the local private or public utility or distributor that directly generates, transmits, distributes or provides utility services which the **Member** receives;

    ii.    The Covered Equipment is used to supply electric power, communication services, air conditioning, heating, gas, sewer, water or steam to the **Member's** premises; and

    iii.    The interruption of utility service to the Insured's premises lasts at least twenty four (24) hours. Once this waiting period is met, coverage will commence at the initial time of the interruption and will be subject to all applicable deductibles.

c)    Business Income:

    i.    CORSA will pay the **Member's** actual loss of business income that results directly from the necessary total or partial interruption of the **Member's** business caused by a Breakdown.

    ii.    CORSA will also pay any necessary expenses the **Member's** incurs to reduce the amount of loss under this coverage. CORSA will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

    iii.    CORSA will consider the actual experience of the **Member's** business before the Breakdown and the probable experience the **Member** would have had without the breakdown in determining the amount of its payment.

    iv.    This coverage continues until the date the damaged property is repaired or replaced.

d)    Expediting Costs:

CORSA will pay the reasonable and necessary costs incurred to pay for the temporary repair of covered damage to Covered Equipment and to expedite the permanent repair or replacement of such damaged equipment caused by a Breakdown.

This coverage extension does not cover costs:

    i.    Recoverable elsewhere in this Coverage Agreement; or

    ii.    Of permanent repair or replacement of damaged equipment.

The most CORSA will pay for this coverage is $500,000.

©2017 County Risk Sharing Authority.  All rights reserved.

e) **Hazardous Substance**:

CORSA will pay any additional expenses incurred by the **Member** for the clean-up, repair or replacement or disposal of Covered Equipment that is damaged, contaminated or polluted by a **Hazardous Substance** caused by a Breakdown.

As used here, additional expenses mean the additional cost incurred over and above the amount that CORSA would have paid had no **Hazardous Substance** been involved with the loss.

The most CORSA will pay for this coverage is $250,000.

f) Ammonia Contamination:

CORSA will pay the spoilage to Covered Equipment contaminated by ammonia, including any salvage expense caused by a Breakdown.

The most CORSA will pay for this coverage is $500,000.

g) Water Damage:

CORSA will pay for the damage to Covered Equipment by water including any salvage expenses caused by a Breakdown, except no coverage applies to such damage resulting from leakage of a sprinkler system or domestic water piping.

h) Consequential Loss:

CORSA will pay the reduction in the value of undamaged stock parts of a product which becomes unmarketable.  The reduction in value must be caused by a physical loss or damage to another part of the product.

i) **Data** & **Media**:

CORSA will pay the Member's cost to research, replace or restore damaged **Data** or **Media** including the cost to reprogram instructions used in any **computer equipment** if the loss is caused by a Breakdown.

The most CORSA will pay for this coverage is $100,000.

j) CFC Refrigerants:

CORSA will pay for the additional cost to repair or replace Covered Equipment because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances if the loss is caused by a Breakdown. This means the additional expense to do the least expensive of the following:

   i.    Repair the damaged equipment and replace any lost CFC refrigerant;

   ii.   Repair the damaged equipment, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

   iii.  Replace the system with one using a non-CFC refrigerant.

The most CORSA will pay for this coverage is $500,000.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

k) **Computer Equipment**:

CORSA will pay for direct damage to **Computer Equipment** that is damaged by a Breakdown to such equipment.

l) Demolition and ICC (Increased Cost of Construction).  If a Breakdown to Covered Equipment damages a building that is Covered Property; and the loss is increased by enforcement of any ordinance or law in force at the time of the Breakdown that regulates the construction or repair of buildings, or establishes zoning or land use requirements, CORSA agrees to pay the following additional costs to comply with such ordinance or law;

     i.    The **Member's** actual expenditures for the cost to demolish and clear the site of undamaged parts;

     ii.    The **Member**'s actual expenditures for increased costs to repair, rebuild, or construct the building.  If the building is repaired or rebuilt, it must be intended for similar use or occupancy as the current building, unless otherwise required by zoning or land use ordinance or law;

     iii.    The **Member**'s loss as described in Business Income and Extra Expense coverages caused by loss covered in i) or ii) above;

     iv.    CORSA shall not be liable for:

          1)    Any fine;

          2)    Any liability to a third party;

          3)    Any increase in loss due to compliance with any ordinance or law relating to a **Hazardous Substance**; or

          4)    Increased construction costs until the building is actually repaired or replaced.

The most CORSA agrees to pay for loss or damage under this coverage is $5,000,000.

6. Exclusions to Equipment Breakdown:

a) Loss or damage to **Data** or **Media** which is obsolete or no longer used by the Member;

b) Depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions.  But if loss or damage from a Breakdown results, CORSA agrees to pay for that resulting loss or damage;

c) Any of the following tests:

     i.  Hydrostatic, pneumatic, or gas pressure test of any boiler or pressure vessel; or

     ii.  An insulation breakdown test of any type of electrical equipment

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

7. Definitions relating to Equipment Breakdown:

a) **Data** means

    i.     Programmed and recorded material stored on **Media**; and

    ii.     Programming records used for electronic data processing, or electronically controlled equipment.

b) **Hazardous Substance** means any substance other than ammonia that has been declared to be hazardous to health by a government agency.

Ammonia is not considered to be a **Hazardous Substance** as respects this limitation.

c) **Media** means all forms of electronic, magnetic and optical tapes and discs for use in any electronic computer or electronic data processing equipment.

d) **One Breakdown** means if an initial Breakdown causes other Breakdowns, all will be considered **One Breakdown.** All Breakdowns at any one premises that manifest themselves at the same time and are the direct result of the same cause will be considered **One Breakdown**.

e) **Computer Equipment** means covered property that is electronic computer or other electronic data processing equipment, including media and peripherals used in conjunction with such equipment.

f) **Stock** means merchandise held in storage or for sale, raw materials, property in process or finished products including supplies used in their packing or shipping.

8. Condition to Equipment Breakdown

On discovery of a dangerous condition, CORSA may immediately suspend Equipment Breakdown coverage on any machine, vessel or part thereof by giving written notice to the **Member**. The suspended coverage may be reinstated by CORSA.

D. ADDITIONAL COVERAGES

This Coverage Agreement includes the following Additional Coverages for physical loss or damage covered by this Coverage Agreement, subject to the applicable **Limit of Liability.**  These additional coverages will not increase the **Limit of Liability** and are subject to the Coverage Agreement provisions, including applicable exclusions and deductibles; all as shown in this Section and elsewhere in this Coverage Agreement.

1. ACCOUNTS RECEIVABLE

This Coverage Agreement covers any shortage in the collection of Accounts Receivable, resulting from covered physical loss or damage to Accounts Receivable records, including while in transit. CORSA will be liable for the interest charges on any loan to offset impaired collections pending repayment of such sum uncollectible as the result of such loss or damage. Unearned interest and service charges on deferred payment accounts and Normal credit losses on bad debts will be deducted in determining the recovery.  For this section, Normal means the condition that would have existed had no physical loss or damage occurred.

a) In the event of loss to Accounts Receivable Records, the **Member** will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding Accounts Receivable.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

b) The **Member** agrees to use any suitable property or service:

    i.   Owned or controlled by the **Member**; or

    ii.   obtainable from other sources;

in reducing the loss under this Additional Coverage.

c) This Coverage Agreement covers any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

d) If it is possible to reconstruct Accounts Receivable records so that no shortage is sustained, CORSA will be liable only for the reasonable and necessary cost incurred for material and time required to re-establish or reconstruct such records, and not for any costs covered by any other coverage.

e) This additional coverage does not provide coverage against shortage resulting from:

    i.   Bookkeeping, accounting or billing errors or omissions; or

    ii.   Electrical or magnetic injury or disturbance, or erasure of electronic recordings (except by a covered peril);

    iii.   Alteration, falsification, manipulation; or concealment, destruction or disposal of Accounts Receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of **Money, Securities** or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

    iv.   The proof of which is dependent upon an audit of records or an inventory computation; but this shall not preclude the use of such procedures in support of **Claim** for loss which the **Member** can prove, through separate, objective evidence, is due solely to a risk of loss to records of accounts receivable not otherwise excluded hereunder;

f) The settlement of loss will be made within 90 days from the date of physical loss or damage.  All amounts recovered by the **Member** on outstanding accounts receivable on the date of loss will belong and be paid to CORSA up to the amount of loss paid by CORSA.  All recoveries exceeding the amount paid will belong to the **Member**.

g) The most CORSA will pay for this coverage is $1,000,000.

2. AUTOMATIC COVERAGE (NEWLY ACQUIRED)

It is understood and agreed that this Coverage Agreement is automatically extended to include additional property and interests which may be acquired or otherwise become the responsibility of the **Member** during the **Coverage Period**, subject to a maximum total value of $5,000,000.  If their value exceeds $5,000,000, details of additional property and interests must be provided to CORSA within sixty (60) days of their acquisition.

3. DEBRIS REMOVAL

This Coverage Agreement covers the expense of removal, from a premises containing building(s)/structure(s) constituting property of the **Member**, of debris resulting from any covered loss to such building(s)/structure(s), except that there shall be no liability assumed for the expense of removal of any foundations.  In the event of

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

direct physical loss or damage to the property covered hereunder, within the applicable **Limit of Liability**, coverage includes:

    a)   Expenses incurred in removal of debris of the covered property destroyed or damaged; and/or

    b)   Cost of clean up, made necessary as a result of such loss or damage.

It is a condition precedent to recovery under this extension that CORSA shall have paid or agreed to pay for direct physical loss or damage and that the **Member** shall give notice to CORSA of intent to **Claim** for cost of removal of debris or cost of clean up no later than twelve (12) months after the date of such direct physical loss

This Additional Coverage does not cover the costs of removal of:

    a)   Contaminated property not covered; or

    b)   The contaminant in or on property not covered;

whether or not the contamination results from covered physical loss or damage.  Contamination includes, but is not limited to, the presence of **Pollutants** or hazardous material.

4.  DEMOLITION AND INCREASED COST OF CONSTRUCTION

    a)   This Coverage Agreement covers the reasonable and necessary costs incurred, described in Item (c) below, to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of real property of the **Member** provided:

        i.   Such law or ordinance is in force on the date of covered physical loss or damage; and

        ii.   Its enforcement is a direct result of such covered physical loss or damage; and

    b)   This Additional Coverage does not cover any loss due to any law or ordinance with which the **Member** should have complied before the loss.

    c)   This Additional Coverage, as respects to property covered in item a) above covers:

        i.   The cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

        ii.   The cost:

           a) to demolish the physically undamaged portion of such property covered; and

           b) to rebuild it with materials and in a manner to satisfy such law or ordinance;

        to the extent that such costs result when the total demolition of the physically damaged covered property is required to satisfy such law or ordinance.

    d)   This Additional Coverage excludes any costs incurred as a direct or indirect result of enforcement of any laws or ordinances regulating any form of contamination including but not limited to the presence of **Pollutants** or hazardous material, or due to the presence, growth, proliferation, spread or any activity of fungus, wet or dry rot or bacteria.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

e) CORSA's maximum liability for this Additional Coverage at each covered **Location** in any occurrence will not exceed the actual cost incurred in demolishing the physically undamaged portion of the property plus the lesser of:

    i. The reasonable and necessary cost incurred, excluding the cost of land, in rebuilding on another site; or

    ii. The cost of rebuilding on the same site.

f) For loss payable:

    i. Under c. i. above,  CORSA will pay the amount actually spent to repair, rebuild, or reconstruct the covered property, but not more than the amount it would cost to restore the covered Property on the same premises and to the same height, floor area, style, and comparable quality of the original covered Property;

    ii. Under c.ii.a. above, CORSA will pay not more than the amount actually spent to demolish and clear the site of the covered Property.

    iii. Under c.ii.b. above, CORSA will pay the increased costs only if repair or replacement is either complete or commences and is continuing within twenty-four (24) months of the date of loss.  If repair or replacement is not complete within this time period, the most CORSA will pay is the Actual Cash Value of the covered Property on the date of loss or damage.

5. EARTHQUAKE

This Coverage Agreement covers physical loss or damage caused by or resulting from **Earthquake**.

This Additional Coverage does not apply to loss or damage caused by or resulting from flood; rising waters; waves; tide or tidal water; the release of water; the rising, overflowing or breaking of boundaries of natural or man-made bodies of water, or the spray therefrom; surface water or sewer back-up resulting from any of the foregoing; all regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

6. ERRORS AND OMISSIONS

If physical loss or damage is not payable under this Coverage Agreement solely due to an error or unintentional omission:

a) In the description of where covered property is physically located;

b) In reporting to CORSA any:

    i. **Location** owned, rented or leased by the **Member** prior to the effective date of this Coverage Period;

    ii. **Location** purchased, rented or leased by the **Member** during the term of this Coverage Period; or

    iii. Any **Automobile** or **Contractors Equipment** acquired prior to the effective date of the Coverage Period.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

This Coverage Agreement covers such physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this Additional Coverage that any error or unintentional omission be reported by the **Member** to CORSA when discovered and corrected.

The most CORSA will pay for this coverage is $250,000.

7.  EXPEDITING COSTS

This Coverage Agreement covers the reasonable and necessary costs incurred to pay for the temporary repair of covered damage to covered property and to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs:

a)      Recoverable elsewhere in this Coverage Agreement; or

b)      Of permanent repair or replacement of damaged property.

8.  FINE ARTS

This Coverage Agreement covers physical loss or damage to Fine Arts, including while in transit.

This Additional Coverage does not cover:

a)      Loss or damage if the Fine Arts cannot be replaced with other of like kind and quality, unless it is specifically reported to CORSA;

b)       Loss or damage from any repairing, restoration or retouching process

The most CORSA will pay for this coverage is $1,000,000.  Any object over $250,000 in value must be reported to CORSA and will be included in this sublimit.

9.  FLOOD

This Coverage Agreement covers physical loss or damage caused by or resulting from **Flood** but does not include any property of the **Member** located in a Special Hazard Zone for Flood.

a)      Special Hazard Zone for Flood shall mean areas in which the covered property is located and which at the time of direct physical loss, damage or destruction has been designated on a Flood Insurance Rate Map published by the Federal Insurance Administration to be a Special Flood Hazard Area.   In areas where the National Flood Insurance Program is not in effect, any area which in the past 100 years has been subjected to flooding where the covered property is located regardless of whether:

i.   the building or structure existed at the time of the flooding; or

ii.  any direct physical loss or damage from flood occurred; or

iii. any flood claim for loss was ever filed

44 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

shall also be designated as a Special Hazard Zone for Flood.

b)   Special Flood Hazard Area (SFHA) shall mean the areas of a flood insurance rate map which FIRM identifies as Zones A, AO, AH, AI — A30, AE, A99, AR, AR/A, AR/AE, AR/A1 — A30, AR/AH, AR/A0, V, V1-V30, and VE.  For purposes of determining which areas qualify as Special Flood Hazard Areas as specified above, only those flood zone maps which were in effect at the time of the flood loss shall apply.

c)   Federal Insurance Administration (FIA) shall mean the federal entity within FEMA that directly administers the National Flood Insurance Program (NFIP).

d)   Federal Emergency Management Agency (FEMA) shall mean the federal agency under which the National Flood Insurance Program is administered.

e)   Flood Insurance Rate Map (FIRM) shall mean the official map of a community on which the administrator has designated the special hazards area applicable to the community.

## 10.  LAND AND WATER CONTAMINANT OR POLLUTANT CLEANUP, REMOVAL & DISPOSAL

CORSA will pay the reasonable and necessary cost for the cleanup, removal and disposal of contaminants or **Pollutants** from land, including water or any other substance in land, and water on land, at the **Member's** premises if the release, seepage, migration, discharge or dispersal of contaminants or **Pollutants** is caused by or results from loss for which the **Member** is entitled to indemnity under SECTION II-PROPERTY COVERAGE AGREEMENTS, A. DIRECT PHYSICAL LOSS OR DAMAGE that occurs during the **Coverage Period.**

This coverage does not cover the cost to cleanup, remove and dispose of contaminants or pollutants from such property:

a)   At any location covered for personal property only; or

b)   At any property covered under Automatic Coverage (Newly Acquired)  or Errors And Omissions coverage provided by this Coverage Agreement; or

c)   When the **Member** fails to give written notice of loss to CORSA within 180 days after inception of the loss.

This additional coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of **Pollutants**.  However, CORSA will pay for testing which is performed in the course of extracting the **Pollutants** from the land or water to which this Pollutant Clean Up and Removal coverage applies. The most CORSA  will pay under this coverage is $10,000 for the sum of all covered expenses arising out of any and all losses occurring during each separate **Coverage Period**.

## 11. LAW ENFORCEMENT AND THERAPY CANINES

This Coverage Agreement covers Law Enforcement and Therapy Canines provided that such physical loss or damage occurs while such animal is working in the scope of their duties for the Member's activities.  This Additional Coverage does not include coverage for loss, injury or death resulting from illness, disease or natural causes.

## 12. MOBILE MEDICAL EQUIPMENT

This Coverage Agreement covers physical loss or damage to mobile medical equipment.

45 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

The most CORSA will pay for this coverage is $250,000.

13. PROTECTION AND PRESERVATION OF PROPERTY

This Coverage Agreement covers:

a)  Reasonable and necessary costs incurred for actions to temporarily protect or preserve covered property, provided such actions are necessary due to actual, or to prevent immediately impending, covered physical loss or damage to such covered property.

b)  Reasonable and necessary:

    i.  Fire department fire-fighting charges imposed as a result of responding to a fire in, on or exposing the covered property;

    ii.  Costs incurred of restoring and recharging fire protection systems following an covered loss; and

    iii.  Costs incurred for the water used for fighting a fire in, on or exposing the covered property.

This Additional Coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

14.  SERVICE INTERRUPTION PROPERTY DAMAGE

a)  This Coverage Agreement covers physical loss or damage to covered property at a covered **Location** when such physical loss or damage results from the interruption of the specified incoming or outgoing services consisting of electricity, telecommunications, gas, fuel, steam, water, refrigeration or from the lack of incoming or outgoing sewerage service by reason of physical loss or damage of the type covered against to real and personal property of the type covered to the facilities of the supplier of such service located within this Coverage Agreement's territory, that immediately prevents in whole or in part the delivery of such usable service.

This Additional Coverage will apply when the Period of Service Interruption is in excess of the Waiting Period, which is twenty-four (24) hours.  The Period of Service Interruption is the period starting with the time when an interruption of specific services occurs and ending when with due diligence and dispatch the service could be wholly restored.

b)  Additional General Provisions:

    i.  The **Member** will immediately notify the suppliers of services of any interruption of such services.

    ii.  CORSA will not be liable if the interruption of such services is caused directly or indirectly by the failure of  the **Member** to comply with the terms and conditions of any contracts the **Member** has for the supply of such specified services.

The most CORSA will pay for this coverage is $2,500,000.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

15. TEMPORARY REMOVAL OF PROPERTY

    a)   When covered property is removed from a covered **Location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type covered by this Coverage Agreement, CORSA will cover such property:

        i.   While at the location to which such property has been moved; and

        ii.   For physical loss or damage as provided at the covered **Location** from which such property was removed.

    b)   This Additional Coverage does not apply to property:

        i.   Covered, in whole or in part, elsewhere in this Coverage Agreement;

        ii.   Covered, in whole or in part, by any other insurance policy; or

        iii.   Removed for normal storage, processing or preparation for sale or delivery.

16. **VALUABLE PAPERS AND RECORDS** & EDP DATA & MEDIA

This Coverage Agreement covers physical loss or damage to **Valuable Papers and Records** & EDP Data & Media, while in the premises of the **Member** and including while in transit.

    a)   This Additional Coverage excludes loss or damage to:

        i.   Currency, money or securities;

        ii.   Property held as samples or for sale or for delivery after sale, and

    b)   This Coverage Agreement does not cover:

        i.   Errors or omissions in processing, programming or copying unless physical damage not excluded by this Coverage Agreement results, in which event, CORSA will cover only such resulting damage.

        ii.   Deterioration, inherent vice, vermin or wear and tear; all unless physical damage not excluded by this coverage results, in which event, CORSA will cover only such resulting damage.

EDP Data and Media means all forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles employed.

The most CORSA will pay for this coverage is $2,500,000.

E.  PROPERTY COVERAGE EXCLUSIONS

This Section does not apply to any **Claim** for **Damages**, whether direct or consequential, or for any cause of action which is covered under any other Section of this Coverage Agreement.

**CORSA will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.**

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

1.  Indirect or remote loss or damage;

2.  Interruption of business; except to the extent provided by Section III, Time Element Coverage Agreements;

3.  Loss of market or loss of use;

4.  Loss or damage or deterioration arising from any delay;

5.  Inventory loss or shortage, mysterious disappearance, or, except under Section IV, Crime, 1. Employee Dishonesty/Faithful Performance Coverage, loss resulting from any kind of infidelity or dishonesty on the part of the **Member** or any of its **Employees**, whether alone or in collusion with others;

6.  Loss from enforcement of any law or ordinance:

    a.  Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

    b.  Requiring the demolition of any property, including the cost in removing its debris;

    except as provided by the Debris Removal and Demolition and Increased Cost of Construction coverages;

7.  Loss, except to data processing system equipment and data processing media, resulting from smog, acid rain; dampness or dryness of atmosphere; changes in or extremes of temperature, except to water piping or space heating equipment due to freezing, or unless caused by a peril not otherwise excluded; marring, or scratching;

8.  Lack of the following services:

    a.  Incoming or outgoing electricity, fuel, water, gas, steam, refrigerant;

    b.  Incoming or outgoing sewerage;

    c.  Incoming or outgoing telecommunications;

    All when caused by an **Occurrence** off the covered **Location,** except as provided by Service Interruption Property Damage coverage.  But, if the lack of such a service directly causes physical damage covered by the Coverage Agreement on the covered **Location,** then only that resulting damage is covered;

9.  Faulty, inadequate or defective: planning, zoning, development, surveying, or siting; design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction, unless fire or explosion ensues and then only for direct physical loss or damage caused by such ensuing fire or explosion; materials used in repair, construction, renovation or remodeling; maintenance, except as covered under Equipment Breakdown;

10.  Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires, unless fire or explosion ensues and then only for direct loss or damage caused by such ensuing fire or explosion, except as covered under Equipment Breakdown;

11.  For the peril of **Flood**, any property of the **Member** located in a Special Hazard Zone for Flood;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

12. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more;

13. Mold/Fungus

    a. All loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of fungus or bacteria;

    b. If fungus or bacteria results from a loss not otherwise excluded, CORSA will pay up to $1,000,000 each **Occurrence** and $1,000,000 annual aggregate provided that the fungus or bacteria is discovered and reported to CORSA within 365 days of that covered loss;

    c. Fungus means any type or form of fungus, including but not limited to mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

14. Loss of or damage to the interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    a. The building or structure first sustains damage by a cause of loss insured against under this Coverage Agreement to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    b. The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure and the thawing of snow, sleet or ice is a cause of loss insured under this Coverage Agreement.

15. Any increase of loss due to interference with rebuilding, repairing, or replacing the property or with the resumption or continuation of business at the described premises caused by strikers or other persons;

16. Any increase of loss due to the suspension, lapse, or cancellation of any lease or license, contract or order;

17. Wet or dry rot or decay;

18. This Coverage Agreement will not cover the following, but, if physical damage not excluded by this Coverage Agreement results, then only that resulting damage is covered:

    a. Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on;

    b. Settling, cracking, shrinking, bulging, or expansion of foundations (including any pedestal, pad, platform or other property supporting machinery), floors, pavements, walls, ceilings or roofs;

    c. Changes of temperature damage (except water piping or space heating equipment due to freezing), or changes in relative humidity damage, all whether atmospheric or not;

    d. Nesting, infestation, or discharge or release of waste products or secretions by insects, bird, rodents, or other animals.

    e. Wear and tear, rust, corrosion or erosion, deterioration, depletion, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

19. This Coverage Agreement will not cover the following unless directly resulting from other physical damage not excluded by this Coverage Agreement:

    a. Shrinkage, evaporation, loss of weight, leakage, depletion, erosion, marring, scratching, exposure to light, or change in color, texture, or flavor.

20. This Coverage Agreement will not cover the following with regard to Personal Property and Property of the Member in the open:

    a. Loss by mechanical derangement or latent defect;

    b. Loss resulting from processing, renovating, repairing or faulty workmanship, including data processing media failure, or breakdown or malfunction of the data processing system including equipment and component parts while said media is being run through the system, unless a covered peril ensues and then only for direct loss, damage, or expense caused by such ensuing perils;

    c. Loss or damage to data and media which is obsolete or no longer used by the **Member**;

    d. Error in machine programming or instructions to machine.

21. This Coverage Agreement will not cover the following with regard to Property in course of construction:

    a. Loss or damage to property caused by or resulting from errors in design or testing of that property but not excluding resultant direct physical loss or damage to property covered hereunder other than the particular property lost or damaged by error in the design or testing of that property;

    b. The repair or replacement of faulty or defective workmanship, material, or construction, but this exclusion shall not apply to physical damage to other property resulting from such faulty or defective workmanship or material;

    c. Penalties for non-completion of or delay in completion of contract or non-compliance with contract conditions, nor for loss of use of occupancy however caused.

## F. VALUATION

Adjustment of the physical damage loss amount under this Coverage Agreement will be computed as of the date of loss at the **Location** of the loss, and for no more than the interest of the, Member, subject to the following:

1. On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

2. On finished goods manufactured by the Member, the regular cash selling price at the **Location** where the loss happens, less all discounts and charges to which the finished goods would have been subject had no loss happened.

3. On raw materials, supplies and other merchandise not manufactured by the Member:

    a. If repaired or replaced, the actual expenditure incurred in repairing or replacing the damaged or destroyed property; or

50 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

       b.      If not repaired or replaced, the actual cash value

4. On **Fine Arts** articles, the lesser of:

    a)    The reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of loss;

    b)    Cost to replace the article; or

    c)    The value, if any, stated on a schedule on file with CORSA.

In the event a **Fine Arts** article is part of a pair or set, and a physically damaged article cannot be replaced, or repaired or restored to the condition that existed immediately prior to the loss, CORSA will be liable for the lesser of the full value of such pair or set or the amount designated on the schedule.  The **Member** agrees to surrender the pair or set to CORSA.

5. On **Valuable Papers & Records** & EDP Data & Media:

    a)    On data, programs or software stored on electronic, electro-mechanical, or electro-magnetic data processing or production equipment:

        i.  The cost to repair, replace or restore data, programs or software including the costs to recreate, research and engineer;

        ii.  If not repaired, replaced or restored within two years from the date of loss, the blank value of the media.

    b)    On all other **Valuable Papers & Records** & EDP Data & Media, the lesser of the following:

        i.  The cost to repair or restore, including the cost to recreate, research and engineer the item to the condition that existed immediately prior to the loss;

        ii.  The cost to replace the item; or

        iii.  The amount designated for the item on the Schedule on file with the Company.

6. On **Contractor's Equipment**:

    a)    When Replacement Cost is declared for **Contractors Equipment** on the schedule attached to the current program year renewal application agreed to and updated at least annually by the **Member**, loss or damage shall be based on the lesser of the following at the time of loss regardless of age:

        i.  The cost to repair;
        ii.  The cost to replace the property with new equipment of like kind and quality;

    b)    If not repaired or replaced, the actual cash value.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

7. On **Automobiles:**

   The Actual Cash Value on the date of loss or damage or the cost to repair the damage thereto, whichever is less.

8. On Property in Transit:

   The **Member** may accept ordinary bills of lading or receipts issued by carriers including those containing released and/or partially released value provisions, but shall not enter into any special arrangements with carriers releasing them from their common law or statutory liability.

9. On Vacant or Unoccupied Property:

   a) For the purposes of this section, a building is vacant or unoccupied if less than 31% of its total square footage is used by the **Member** to conduct customary operations, excluding common areas such as lobbies and garages. Buildings under construction or renovation shall not be considered vacant or unoccupied. Buildings with the same security and fire protection that existed prior to being vacant or unoccupied shall not be considered vacant or unoccupied. Buildings that are normally vacant during parts of the year shall not be considered vacant or unoccupied.

   b) If the building or leased premises has been vacant or unoccupied for a period of more than 60 consecutive days before the loss or damage occurs, CORSA will not pay for any loss or damage caused by any of the following:

      i. Vandalism;

      ii. Sprinkler leakage, unless the system has been protected against freezing;

      iii. Building glass breakage;

      iv. Water damage;

      v. Theft, or attempted theft

   c) With respect to direct physical loss or damage, other than from causes listed in b) i. through b) v. above, and not otherwise excluded by this Coverage Agreement, CORSA will reduce the amount CORSA would otherwise pay for the loss or damage by 15%.

10. On historical property, valuation will be based upon the following requirement:

    a) The Member shall provide written notice to CORSA, which specifically identifies where the property is located, with an attached appraisal that was conducted within five (5) years of the effective date of the current program year and was based upon Reproduction Value.

    Reproduction Value means the cost to repair, rebuild or replace with material of like, kind and quality compatible to those originally used, including the cost of skilled labor and/or authentic materials necessary to restore the property as nearly as possible to its original condition.

11. On all other property, the loss amount will not exceed the lesser of the following:

    a) The cost to repair;

52 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

b) The cost to rebuild or replace on the same site with new materials of like size, kind and quality;

c) The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss;

d) The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss;

e) The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

f) The increased cost of demolition, if any, resulting from loss covered by this Coverage Agreement, if such property is scheduled for demolition;

g) The unamortized value of improvements and betterments, if such property is not repaired or replaced at the **Member's** expense; or

h) The Actual Cash Value if such property is:

   i. Useless to the **Member**; or

   ii. Not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The **Member** may elect not to repair or replace the covered real and/or personal property lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the **Member's** operations within two years from the date of loss. As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an covered **Location** under this Coverage Agreement. This item does not extend to Demolition and Increased Cost of Construction.

Actual Cash Value means:

The amount it would cost to repair or replace covered property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

## SECTION III- TIME ELEMENT COVERAGE AGREEMENTS

CORSA agrees, subject to the limitations, exclusions, terms, and conditions of the Coverage Agreement and the maximum applicable **Limit of Liability** as shown in the Memorandum of Coverage, and all according to the current program year CORSA renewal application and schedules of property required by the renewal application agreed to and updated at least annually by the **Member** and kept on file by CORSA, to indemnify the **Member** for Time Element loss, as provided in the Time Element coverages,  directly resulting from physical loss or damage of the type covered by this Coverage Agreement, occurring during the **Coverage Period** and in excess of the applicable **Deductible** amount and not otherwise excluded.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

This Coverage Agreement covers Time Element loss only to the extent it cannot be reduced through:

1)    The use of any property or service owned or controlled by the **Member**;

2)    The use of any property or service obtainable from other sources;

3)    Working extra time or overtime; or

4)    The use of inventory;

all whether at a covered **Location** or at any other location. CORSA reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the **Member** in determining the Time Element loss.

This Coverage Agreement covers expenses reasonably and necessarily incurred by the **Member** to reduce the loss otherwise payable under this Section of this Coverage Agreement. The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

Except as respects rental value, in determining the amount of loss payable, CORSA will consider the experience of the business before and after and the probable experience during the **Period of Restoration.**

A.    TIME ELEMENT COVERAGES

1.    The actual loss of **Business Income** sustained by the **Member** due to necessary suspension of **Operations** during the **Period of Restoration** caused by or resulting from direct physical loss of or damage to property of the **Member** from any covered cause of loss;

2.    Any **Extra Expense** caused by or resulting from direct physical loss of or damage to property of the **Member** sustained by the **Member** to continue **Operations** at the described premise, or at temporary or replacement premises, including relocation expenses and cost to equip and operate such premises;

3.    The actual loss of **Business Income** sustained by the **Member** during the **Period of Service Interruption** at covered **Locations** when the loss is caused by the interruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of incoming or outgoing sewerage service by reason of physical loss or damage of the type covered against to real and personal property of the type covered to the facilities of the utility supplier of such service located within this Coverage Agreement's Territory, that immediately prevents in whole or in part the delivery of such usable services.  Such property does not include transmission and distribution lines which are in the open or underground.

4.    The loss of **Business Income** and **Extra Expense** incurred by the **Member** during the **Period of Restoration** directly resulting from physical loss or damage of the type covered; and to property of the type covered, at direct supplier or customer locations located within the Territory of this Coverage Agreement.

a. The term supplier or customer does not include any company supplying to or receiving from the **Member Location**, as described elsewhere in this Coverage Agreement, electricity, fuel, gas, water, steam, refrigeration, sewage or telecommunications.

54 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

   b.   The **Member** will immediately notify the suppliers of services of any interruption of such services.

   c.   CORSA will not be liable if the interruption of such services is caused directly or indirectly by the failure of the **Member** to comply with the terms and conditions of any contracts the **Member** has for the supply of such specified services.

   The most CORSA will pay for this coverage (item A.4.) is $100,000.

**B.**   TIME ELEMENT EXCLUSIONS

   In addition to exclusion elsewhere in this Coverage Agreement, the following exclusions apply to Time Element loss:

This Coverage Agreement does not provide coverage against:

   1.   Any loss during any idle period, including but not limited to when production, operation, service  or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

      a.   Physical loss or damage not covered by this Coverage Agreement on or off of the covered **Location.**

      b.   Planned or rescheduled shutdown.

      c.   Strikes or other work stoppage.

      d.   Any other reason other than physical loss or damage covered by this Coverage Agreement.

   2.   Any increase in loss due to:

      **a.**   Suspension, cancellation or lapse of any lease, contract, license or orders; or

      b.   Fines or damages for breach of contract or for late or noncompletion of orders; or

      c.   For penalties of any nature; or

      d.   Any other consequential or remote loss.

   3.   Any loss resulting from loss or damage to finished goods manufactured by the **Member,** nor the time required for their reproduction.

   4.   Any loss of rental income during any period in which the **Member's** property would not have been tenantable for any reason other than a covered loss.

C.   TIME ELEMENT VALUATION

   1.   **Business Income** loss will be determined based on:

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

    a) The Net Income of the **Member** before the direct physical loss or damage occurred;

    b) The likely Net Income of the **Member** if no loss or damage occurred;

c) The operating expenses, including payroll expenses, necessary to resume **Operations** with the same quality of service the existed just before the direct physical loss or damage; and

d) Other relevant sources of information, including:

    i. The **Member**'s financial records and accounting procedures;

    ii. Bills, invoices, and other vouchers; and

    iii. Deeds, liens, or contracts.

2. **Extra Expense** will be determined based on:

a) All expenses that exceed the normal operating expenses that would have been incurred by **Operations** during the **Period of Restoration** if no direct physical loss or damage had occurred.

b) CORSA will deduct from the total of such expenses:

    i. The salvage value that remains of any property bought for temporary use during the **Period of Restoration**, once **Operations** are resumed;

    ii. Any **Extra Expense** that is paid for by other coverage, except for coverage that is written subject to the same plan, terms, conditions, and provisions at this Coverage Agreement; and

    iii. All necessary expenses that reduce the **Business Income** loss that otherwise would have been incurred;

### SECTION IV– CRIME COVERAGE AGREEMENTS

CORSA agrees, subject to the limitations, terms, and conditions of the Coverage Agreement and the maximum applicable **Limit of Liability** as shown in the Memorandum of Coverage, to indemnify the **Member** for direct loss or damage that the **Member** sustains from an **Occurrence** and in excess of the applicable **Deductible** amount and not otherwise excluded resulting from:

1. Employee Dishonesty/Faithful Performance Coverage

a) Loss of **Money, Securities** and other property which the **Member** sustains resulting directly from one or more dishonest or fraudulent acts committed by an **Employee** acting alone or in collusion with others, or from the failure of an **Employee** to perform faithfully his duties or to account properly for all monies and property received by virtue of his position of employment;

b) Dishonest or fraudulent acts as used in the Coverage Agreement shall mean only dishonest or fraudulent acts committed by **Employee**s with the manifest intent:

    i. to cause the **Member** to sustain such loss; and

56 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

ii.    to obtain financial benefit for the **Employee** or for any other person or organization intended by the **Employee** to receive such benefit other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other **Employee** benefits earned in the normal course of employment.

2.    Loss Inside the Premises Coverage

a)  Loss of **Money** and **Securities** by the actual destruction, disappearance, or wrongful abstraction from within the premises or within any bank;

b)  Loss of (1) other property by actual or attempted **Safe Burglary** or **Robbery** within the premises, or (2) loss of a locked cash drawer, cash box, or cash register by actual or attempted felonious entry into such container within the Premises, or by removing the entire container from within the Premises.

3.    Loss Outside the Premises Coverage

a)  Loss of **Money** and **Securities** by the actual destruction, disappearance, or wrongful abstraction outside the premises while being conveyed by a Messenger, or any armored vehicle company, or while within the living quarters in the home of any Messenger.  Messenger means a **Covered Party(ies)** who is duly authorized by the **Member** to have the care and custody of the **Member**'s property outside the premise;

b)  Loss of other property by actual or attempted **Robbery** outside the premises while being conveyed by a Messenger or any armored motor vehicle company or by theft while within the living quarters in the home of any Messenger.

4.    Money Orders and Counterfeit Paper Currency Coverage

Loss due to the acceptance in good faith, in exchange for merchandise, **Money**, or services, or any post office or express **Money** order issued or purporting to have been issued by any post officer or express company if such **Money** order is not paid upon presentation, or due to the acceptance in good faith in the regular course of business of counterfeit United States or Canadian paper currency.

5.    Depositors Forgery Coverage

a)  Loss resulting from forgery or alteration of, on, or in an any checks, drafts, promissory notes, or similar written promises, commercial orders or directions to pay a certain sum in money that are made or drawn upon the **Member**, made or drawn by one acting as the **Member**'s agent, or that are reported to have been so made or drawn.

b)  If the **Member** is sued for refusing to pay for any loss on the basis it was due to a covered forgery or alteration, and the **Member** has CORSA's written consent to defend against the **Suit**, CORSA will indemnify the **Member** for any reasonable legal expenses that the **Member** incurs and pays in that defense.  This does not increase the **Limit of Liability** stated in the Memorandum of Coverage for Crime coverage 5, Depositors Forgery.

Mechanically reproduced facsimile signatures are treated the same as handwritten signatures.

6.    Fund Transfer Fraud

a)  Loss of **Money** or **Securities** resulting directly from a **Fraudulent Instruction** directing a financial Institution to transfer, pay or deliver **Money** or **Securities** from a **Member's Transfer Account**.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

7.      Computer Fraud

   a)  Loss of or damage to **Money**, **Securities** and other property resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **Member**'s premises or **Member**'s banking premises:

      i. to a person (other than a messenger) outside those premises; or

      ii. to a place outside those premises.

8.       Dog Warden Blanket Bond

Loss resulting from failure of the **Member's** duly appointed Dog Warden, and/or the Dog Warden's assistants or deputies, to faithfully perform their duties set forth in Ohio Revised Code, which failure occurs during the term of this bond.  The term of this bond is concurrent with the program year indicated in the current **Memorandum of Coverage.** This bond is intended to fulfill the bond requirements set forth in Ohio Revised Code Section 955.12.  If the Dog Warden and his or her assistants and deputies faithfully perform their said duties, then this obligation shall be void and of no effect. CORSA's total obligation under this bond shall not exceed, during the entire term of this bond, the sum of Two Thousand Dollars ($2,000.00).

Loss under these Crime coverages, #1 through #8 above, is covered only if discovered not later than one year from the end of the **Coverage Period**, and includes any resulting physical damage.

If the coverage of any of these Crime coverages, # 1 through #8 above is substituted for any prior bond or policy of insurance carried by the **Member** which is terminated, cancelled, or allowed to expire as of the time of such substitution, CORSA agrees that such Crime coverage applies to loss, if discovered within the applicable time limits, which would have been recoverable by the **Member** under such prior bond or policy except for the fact that the time within which to discover the loss had expired provided:

   a)      The coverage under this extension shall be part of any, not in addition to, the **Limit of Liability** of the applicable Crime coverage;

   b)      Such loss would have been covered under such Crime coverage had such Crime coverage been in force when the acts or events causing such loss were committed or occurred; and

   c)      Recovery under such Crime coverage shall not exceed the lesser of the amount which would have been recoverable under such Crime coverage as written as the time of such substitution, had such Crime coverage been in force when such acts or events were committed or occurred, or the amount which would have been recoverable under such prior bond or policy had such prior bond or policy continued in force until the discovery of such loss.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

## SECTION IV– CRIME EXCLUSIONS

This Section does not apply to any **Claim** for **Damages**, whether direct or consequential, or for any cause of action which is covered under any other Section of this Coverage Agreement.

**CORSA will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.**

1. Any **Claim** for **Damages**, whether direct or consequential, or for any cause of action which is covered under any other Section of this Coverage Agreement;

2. Loss due to any fraudulent, dishonest, or criminal act by any **Covered Part(ies)**, whether acting alone or in collusion with others, except under Crime Coverage, Employee Dishonesty/Faithful Performance;

3. Under Employee Dishonesty/Faithful Performance, loss or that part of any loss for which proof, either as to its factual existence or as to its amount, is solely dependent upon an inventory computation or a profit and loss computation;

4. Under Loss Inside/Loss Outside the Premises, loss due to any fraudulent, dishonest or criminal act by an **Employee**, official trustee, or authorized representative of any **Covered Party(ies)**, while working or otherwise and whether acting alone or in collusion with others, provided this exclusion does not apply to actual or attempted **Safe Burglary** or **Robbery**;

5. Under Loss Inside/Loss Outside the Premises, loss (a) due to the giving or surrendering of **Money** or **Securities** in any exchange or purchase (b) due to accounting or arithmetical errors or omissions or (c) of manuscripts, books or account or records;

6. Under Loss Inside the Premises, loss of **Money** contained in coin operated amusement devices or vending machines, unless the amount of **Money** deposited within the device or machine is recorded by a continuous recording instrument therein;

7. Under Loss Outside the Premises, loss of covered property while in the custody of any armored motor vehicle company, unless such is in excess of the amount recovered or received by the **Member** under (a) the **Member**'s contract with said armored motor vehicle company (b) insurance carried by said armored motor vehicle company for the benefit of users of its service and (c) all other insurance and indemnity in force in whatsoever form carried by of for the benefit of users of said armored motor vehicle company's service, and then this Crime Coverage shall cover only such excess;

8. Under Loss Inside the Premises, loss other than to **Money** or **Securities** or a safe or vault by fire whether or not such fire is caused by contributed to by or arises out of the **Occurrence** of a hazard;

9. Loss due to the surrender of **Money**, **Securities** other property away from the Premises as a result of a threat to do bodily harm to any person, or to do damage to the Premises or property of the **Member** or property held by a **Covered Party(ies)** in any capacity, provided however these exclusions do not apply:

   a) Under Employee Dishonesty/Faithful Performance; or

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

    b)    Under Loss Outside the Premises, to loss of **Money**, **Securities** or other property while being conveyed by a messenger when there was no knowledge by the **Covered Party(ies)** of any such threat at the time the conveyance was initiated;

10.    The defense by any legal proceeding brought against the **Member**, or to fees, costs or expenses incurred or paid by the **Member** in prosecuting or defending any legal proceeding whether or not such proceeding results or would result in a loss to the **Member** covered by this Section II, Property C., Crime. except as may be specifically stated to the contrary in this Section;

11.    Potential income, including but not limited to interest and dividends, not realized by the **Member** because of a loss covered under this Section;

12.    **Damages** of any type for which the **Member** is legally liable, except direct compensatory **Damages** arising from a loss covered under this Section;

13.    Costs, fees, and other expenses including audit costs incurred by the **Member** in establishing the existence of, prosecution of, or amount of loss covered under this Section.  This exclusion does not apply to costs, fees and other expenses including audit costs which result from a covered **Claim** to the extent of the claims expense **Limit of Liability** shown in the Memorandum of Coverage.

### SECTION IV – CRIME SPECIFIC CONDITIONS

1.    Loss Caused by Unidentifiable **Employee**s

If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the **Employee**s and the **Member** shall be unable to designate the specific **Employee** or **Employee**s causing such loss, the **Member** shall nevertheless have the benefit of Crime Coverage, Employee Dishonesty/Faithful Performance, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said **Employee**s, and provided further that the aggregate liability of CORSA for any such loss shall not exceed the **Limit of Liability** applicable to Crime Coverage, Employee Dishonesty/Faithful Performance.

2.    Ownership of Property, Interest Covered

The covered property may be owned by the **Member** or held by the **Member** in any capacity whether or not the **Member** is liable for the loss thereof, or may be property for which the **Member** is legally liable provided Crime Coverages, Loss Inside/Loss Outside the Premises, and Money Orders and Counterfeit Paper Currency apply only to the interest of the **Member** in such property including the **Member**'s liability to others, and do not apply to the interest of any other person or organization in any of said property unless included in the **Member**'s **Proof of Loss**, in which event Property Loss Payments, paragraph L of this Section is applicable to them.

3.    Books and Records

The **Member** shall keep records of all **Member's** property in such manner that the **Member** can accurately demonstrate to CORSA the amount of any loss.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

4.      Limit of Liability

Payment of loss under Employee Dishonesty/Faithful Performance, or Depositors Forgery, shall not reduce CORSA's liability for other losses under the applicable Coverage Agreement whenever sustained. CORSA's total liability (a) under Employee Dishonesty/Faithful Performance for all loss caused by an **Employee** or in which such **Employee** is concerned or implicated or (b) under Crime Coverage for all loss by forgery or alteration committed by any person or in which such person is concerned or implicated, whether such forgery or alteration involves one or more instruments, is limited to the applicable amount specified in the Memorandum of Coverage, Section III, Crime, or any applicable endorsement. The liability of CORSA for loss sustained by any or all of the **Covered Party(ies)** shall not exceed the amount for which CORSA would be liable had all such loss been sustained by any one of the **Covered Party(ies)**.

Except under Employee Dishonesty/Faithful Performance and Depositors Forgery, the applicable **Limit of Liability** stated the Memorandum of Coverage, Section III, Crime, is the total limit of CORSA liability with respect to all loss of property of one or more persons or organizations arising out of any one **Occurrence**.  All loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts at the Premises, whether committed by one or more persons, shall be deemed one **Occurrence**.

Regardless of the number of years this Coverage Agreement shall continue in force and the amount of contributions which shall be payable or paid, the limit of CORSA's liability as specified in the Memorandum of Coverage, Section III, Crime Coverage Agreements, shall not be cumulative from year to year or period to period.

5.      Limit of Liability under This Subsection and a Prior Coverage Agreement

This condition shall apply only to Employee Dishonesty/Faithful Performance, and Depositors Forgery.

With respect to loss caused by any person (whether one of the **Employee**s or not) or in which such person is concerned or implicated, or which is chargeable to any **Employee** as provided in Section IV – Crime Specific Conditions, 1.  Loss Caused by Unidentifiable Employees, and which occurs partly during the **Coverage Period** and partly during the period of the bonds or Coverage Agreements issued by CORSA to the **Member** and terminated or cancelled or allowed to expire, and in which the period for discovery has not expired at the time any such loss is discovered, the total liability of CORSA under this subsection and under such other bonds or Coverage Agreements shall not exceed, in the aggregate, the larger of the amount carried under the applicable Coverage Agreement of this subsection on such loss, or the amount available to the **Member** under such other bonds or Coverage Agreements as limited by the terms and conditions thereof, for any such loss.

6.      Cancellation As to Any Employee

Employee Dishonesty/Faithful Performance, shall be deemed cancelled as to any **Employee**: (a) immediately upon possession of knowledge or information by any official or **Employee** of the **Member** who is authorized to manage, govern or control that **Employee**, and who is not in collusion with such **Employee**, of any fraudulent or dishonest act on the part of such **Employee**, regardless of whether such act was committed before or after the date of employment by the **Member**; or, (b) at 12:01 a.m. Standard Time on the effective date specified in a written notice mailed to the **Member**.  Such date shall be not less than fifteen (15) days after the date of mailing.  The mailing by CORSA of such notice to the

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

**Member** at the address shown in this Coverage Agreement shall be sufficient proof of notice.  Delivery of such written notice by CORSA shall be equivalent to mailing.

7.      Joint **Covered Party(ies)**

If more than one **Covered Party(ies)** is covered under Section III, Crime Coverage Agreements, the **Member** shall act for itself and for every other **Covered Party(ies)** for all purposes of this Section. Knowledge possessed or discovery made by any official of the **Member** shall, for the purposes of Sections 4. and 7. above constitute knowledge possessed or discovery made by every **Covered Party(ies)**.

8.      No Benefit to Bailee

The coverage afforded by Crime Coverages 2., Loss Inside the Premises Coverage and 3., Loss Inside/ Loss Outside the Premises Coverage, shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire.

9.      Valuation

When there is proof that a loss of **Money** or **Securities** covered by Section III,  Crime Coverage Agreements,  has occurred, the actual cash value of the such **Securities** at the close of business on the business day next preceding the day on which the loss was discovered, or as respects other property, the actual cash value thereof at the time of loss, provided however, the actual cash value of such other property held by the **Member** as a pledge, or as collateral for an advance or a loan, shall be deemed not to exceed the value of the property as determined and recorded by the **Member** when making the advance or loan, nor in the absence of such record, the unpaid portion of the advance or loan plus accrued interest thereon at legal rates;

## SECTION V GENERAL EXCLUSIONS
### (APPLICABLE TO SECTIONS I, II III AND IV)

A.  DATE FUNCTIONALITY

CORSA will not pay, under any form, coverage, or amendment of this Coverage Agreement, for loss caused directly or indirectly by:

1**.**  The failure of any of the following, whether owned by you or others:

a**.**   **Data processing equipment, software, data**, or **media**;

b.   Hardware or **software** based computer operating systems;

c.   Microprocessors;

d.   Integrated circuits; or,

e.   Any other electronic equipment, computerized equipment, or similar devices;

due to the inability of these items to correctly recognize, process, or accept one or more dates or times as their true calendar date or time.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

2.  Loss resulting from:

    a.  Any services, functions, or products that use one or more of the systems or devices described in items 1.a-e.

    b.  Any advice, design, inspection, installation, repair or maintenance done by you or for you to determine or correct any problems described in items 1.a-e.

These losses are excluded regardless of any other cause or event, including a peril covered under this Coverage Agreement that contributes to the loss at the same time or in any sequence.

3.  If loss to covered property by a **specified peril** ensues, we will pay for that loss.

4.  We will not pay for modification, repair or replacement of systems or devices described in items 1.a-e in order to correct any potential or actual deficiencies.

5.  Terms in this Section A that appear in bold face type are defined below:

    a.  **Data** means any information recorded on **media** and used in your processing operations, but does not mean **software**.

    b.  **Data processing equipment** means processing units, terminals, tape drives, disk drives, controllers, printers, and other equipment capable of receiving, processing, storing or retrieving information.  It does not include **media**, **software**, or **data**.

    c.  **Media** means the material on which **data** or **software** is recorded, such as magnetic tape, perforated paper tape, punch cards, discs, drums, and other storage devices used in your **data** processing operations.

    d.  **Software** means programs stored on **media** which instruct **data processing equipment** how to process **data**.

    e.  **Specified perils** means any of the following:

        Fire; Lightning; Aircraft; Explosion; Riot; Civil commotion; Smoke; Vehicles; Windstorm or hail to property contained in any building; Malicious mischief; Leakage or accidental discharge from automatic fire protection system; or, Collapse.

B.  GOVERNMENTAL COMPLAINTS, REGULATORY AND ENFORCEMENT ACTIONS

This coverage does not apply to any **Damages**, costs, civil fines, penalties, or expenses incurred by any **Covered Party(ies)** arising out of any complaint or enforcement action from any federal, state, or local government; or any Regulatory agency.  This exclusion does not apply to Section 1, Liability Coverage Agreements, E. Privacy and Security Liability and Expense, 3. Regulatory Proceedings and Penalties.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

C.  WAR AND MILITARY ACTION

1.  This Coverage Agreement will not pay for loss, injury, or damage caused directly or indirectly by the following.  Such loss, injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a)  Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending, or expected attack:

      i.  By a government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval, or air forces;

      ii.  By military, naval or air forces; or

      iii.  By an agent of any such government, power, authority or forces.

   b)  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence;

   c)  Civil commotion assuming the proportions of or amounting to an uprising, military, or usurped power or martial law or confiscation by order of any Government or public authority.

   d)  Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

   e)  Risks of contraband, or illegal transportation or trade.

Any discharge, explosion or use of any weapon of war employing nuclear fission or fusion will be conclusively presumed to be such a hostile or warlike action by such a government, power, authority, or forces.

2.  With respect to any action that comes within the terms of this exclusion and:

   a)  Involves nuclear reaction or radiation, or radioactive contamination, this War and Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

   b)  Involves a discharge, dispersal, seepage, migration, release escape, or application of any pathogenic or poisonous biological or chemical materials, this War and Military Action Exclusion supersedes the Pathogenic or Poisonous Biological or Chemical Materials Exclusion; or

   c)  Involves **Electronic Vandalism** as defined in the **Electronic Vandalism** Exclusion, this War and Military Action Exclusion supersedes the **Electronic Vandalism** Exclusion.

D.  NUCLEAR HAZARD

This Coverage Agreement does not cover any loss, injury, or damage arising directly or indirectly from nuclear detonation, nuclear reaction, nuclear radiation, or radioactive contamination however caused.

With respect to any activity that comes within the terms of the War and Military Action Exclusion and involves nuclear reaction or radiation, or radioactive contamination, the War and Military Action Exclusion supersedes this Nuclear Hazard Exclusion.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

E.  PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS

CORSA will not pay for any loss, damage, cost or expense caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any other sequence thereto:

1.  The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, bacteriological, viral, radioactive or similar agents or matter regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2.  The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

In any action, suit or other proceeding where CORSA alleges that, by reason of either of the provisions above, some or all loss or damage is not covered by this Coverage Agreement, the burden of proving that such loss or damage is not excluded shall be upon the **Member.**

F.  ELECTRONIC VANDALISM

CORSA will not pay for loss or damage caused directly or indirectly by **Electronic Vandalism**.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss except as covered under Equipment Breakdown coverage, and except as covered under Privacy and Security Liability and Expense coverage and except as covered under Section IV Crime, 6. Fund Transfer Fraud and 7. Computer Fraud.

With respect to any activity that comes within the terms of the War and Military Action Exclusion and involves **Electronic Vandalism**, the War and Military Action Exclusion supersedes this **Electronic Vandalism** Exclusion.

G.  POLLUTION

This Coverage Agreement does not apply to:

1.  Any loss, injury or damage which would not have occurred in whole or in part but for the actual, alleged, or threatened existence, discharge, dispersal, seepage, migration, release, or escape of **Pollutant(s)**, irritants, or **Hazardous Substances** at any time, including:

a)  Any loss, cost, or expense arising out of any:

i.  Request, demand, or order that any **Covered Party(ies)** or others test for monitor, clean up, remove, contain, treat, detoxify or neutralize or in any other way respond to, or assess the effects of **Pollutant(s)**; or

ii.  **Claim** or **Suit** by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutant(s)**.

b)  As to Silica Dust or Asbestos or Lead:

i.  Any loss or damage arising out of the hazardous properties of lead or of silica dust or out of the existence of asbestos in any form, including the costs of investigations or facility studies, or the

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

costs of testing, monitoring, abatement, mitigation, cleaning, removal, or disposal of any property or substance; or

    ii.    Any loss or damage arising out of the following diseases:  Asbestosis; Silicosis; Mesothelioma; Emphysema, Pneumoconiosis, Pulmonary Fibrosis; Pleuritis; Endothelioma; or any other disease or any ailment caused by or aggravated by lead or asbestos in any form or silica dust;

    iii.    Any loss or damage arising out of any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with a. or b. above;

    iv.    Any obligation to share damages with or repay someone else who must pay damages in connection with i), ii), or iii) above.

2.  It is agreed that CORSA shall have no obligation under this Coverage Agreement:

    a)  To investigate, settle, or defend any **Claim** or **Suit** against the **Member** alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for, or allegedly but for, exposure to **Pollutant(s)** or to Silica Dust, Asbestos, or Lead; or

    b)  To pay any **Damages**, judgments, settlements, loss, costs, or expenses that may be awarded or incurred by reason of any such **Claim** or **Suit** or any such injury or damage, or in complying with any action authorized or required by law and relating to such injury or damage.

3.  However, notwithstanding any other provisions of this Coverage Agreement, it does include loss arising out of pollution from:

    a)  Backup or overflow of any sewer;

    b)  Use of teargas, mace, or similar substance by any law enforcement official or officer acting within the scope of employment for the **Member**;

    c)  Collision, upset, or overturn of any **Automobile**;

    d)  Use of chemicals to purify water which is sold by the **Member**;

    e)  Use of chemicals to purify water in swimming pools operated by the **Member**.

    f)  Use of chemicals for herbicide and pesticide application.

## H.   PRIOR ACTS OR LOSSES

Coverage does not apply to any **Claim** made against the **Member** for which the **Covered Party(ies)** are entitled to indemnity and/or payment by reason of having given notice of any circumstances which might give rise to a **Claim** under any policy or policies the term of which has commenced prior to the inception date of this Coverage Agreement or the applicable **Retroactive Date(s).**

## I.   BOND AND FINANCIAL SECURITIES

This coverage agreement does not apply to any loss or damage:

1.  Arising directly or indirectly out of or contributed to by any actual or alleged violation of:

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

a) The Securities Act of 1933;

b) The Securities Exchange Act of 1934;

c) The Public Utilities Holding Act of 1935;

d) The Trust Indenture Act of 1939;

e) The Investment Company Act of 1940; or

f) Any State Blue Sky Laws.

2. Based upon common law principles of liability similar to bonds, notes and debentures; or

3. Involving, directly or indirectly:

a) Debt security financing, including but not limited to bonds, notes and debentures; or

b) The investment of, or the failure to invest, public funds, including but not limited to the use of derivative investment instruments.

J. DECLARATORY, INJUNCTIVE OR EQUITABLE RELIEF

Except as provided in Section I, Liability Coverages, Coverage I. Declaratory, Injunctive and Equitable Defense Costs, this Coverage Agreement does not cover any **Claim** seeking solely declaratory, injunctive, or equitable relief, or any attorneys' fees or expenses incurred to defend such **Claim,** or any nominal damages in connection with such **Claim,** or any costs or expenses incurred to comply with orders providing for fines, penalties, or declaratory, injunctive, or equitable relief, including but not limited to attorney's fees and expenses of the claimant.

**SECTION VI – GENERAL CONDITIONS**
**(APPLICABLE TO SECTIONS I, II, III AND IV)**

A. ASSIGNMENT:

Interest under this Coverage Agreement may not be transferred except by written Amendment by CORSA's authorized representative.

B. BANKRUPTCY AND INSOLVENCY:

In the event of the bankruptcy or insolvency of the **Member** or any entity comprising the **Member**, CORSA shall not be relieved of the payment of any **Claim** to the **Member** or to its liquidator, receiver, or statutory successor of the **Member** under this Coverage Agreement without diminution because of the insolvency of the **Member**.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

C.   CANCELLATION/WITHDRAWAL:

Cancellation by CORSA and withdrawal by **Members** are subject to the terms and conditions of the CORSA Participation Agreement and Code of Regulations.

D.   CHANGES:

No notice to any agent or knowledge possessed by any agent or by any other person shall be held to affect a waiver or change in any part this Coverage Agreement.  None of the provisions, conditions, or other terms of this Coverage Agreement shall be waived or altered except by written Amendment signed by CORSA's authorized representative.

E.   DUTIES IN THE EVENT OF A CLAIM, OCCURRENCE, WRONGFUL ACT, OR PRIVACY OR SECURITY EVENT:

If any **Covered Party(ies)** or **Member** becomes aware of a **Claim**, or of an **Occurrence, Wrongful Act** or **Privacy or Security Event** that is reasonably likely to result in a **Claim**, the **Covered Party(ies)** or the **Member** must notify CORSA in writing as soon as practicable.  To the extent possible, notice should include dates and nature of the circumstances, the specific reasons for anticipating that a **Claim** may result, the names of persons involved, the names of potentially damaged parties, the nature of the alleged or potential damages, and the manner in which the **Covered Party(ies)** first became aware of the circumstances.  If a **Privacy or Security Event** is involved, notice also should include a specific description of any **Personal Information** actually or reasonably suspected to have been subject to theft, loss or unauthorized access or disclosure.

If the **Claim**, or the **Occurrence, Wrongful Act** or **Privacy or Security Event** that is reasonably likely to result in a **Claim** is due to a violation of law, the **Covered Party(ies)** or **Member** also must notify the appropriate law enforcement agency(ies).

It is understood and agreed that knowledge of an **Occurrence, Wrongful Act** or **Privacy or Security Event** by an agent, servant, or **Employee** of the **Member** shall not in itself constitute knowledge of the **Member**, unless an elected official or management personnel of the **Member** shall have first received notice from its agent, servant, or **Employee**.  Failure of an agent, servant, or **Employee** of the **Member**, other than an elected official or management personnel of the **Member**, to notify CORSA of any **Occurrence** of which he has knowledge shall not invalidate the **Member**'s coverage.

If a **Claim** is made or **Suit** is brought, the **Covered Party(ies)** or the **Member** must immediately forward to CORSA copies of any written demand, notice, summons, complaint, or other process or relevant papers.

The **Covered Party(ies)** or the **Member** must cooperate in the investigation and defense**;** provide CORSA with such information as CORSA may reasonably require**;** authorize CORSA to obtain records and other information; and, assist CORSA in the enforcement of any right against any person or organization which may be liable to the **Covered Party(ies)** because of injury,  damage or circumstances to which this Coverage Agreement may also apply.

No **Covered Party(ies)** or **Member** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, or to protect the property of the **Member** from loss as provided in Section II - Property Specific Conditions, G. Expense to Reduce or Prevent Loss, without CORSA's consent.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.

F.   FRAUD:

This Coverage Agreement is void if there is a fraud committed by the **Member**.  It is also void if the **Member** or any other **Covered Party(ies)** intentionally conceals or misrepresents a material fact concerning: this Coverage Agreement; the statements made in any application or attachments used to secure this coverage; the **Member**'s **Claims** experience, whether insured or self insured, for the types of **Claims** that are covered by this Coverage Agreement; the property covered by this Coverage Agreement or the **Member**'s interest in the covered property; or a **Claims** under this Coverage Agreement.  If the **Member** shall make any **Claim** knowing the same to be false or fraudulent, as regards amount or otherwise, in addition to all other remedies available to CORSA, the contractual relationship between the **Member** and CORSA shall be immediately severed without any requirement for further notice, effective with the making of the false or fraudulent **Claims**, and CORSA will be entitled to an offset for monies paid or expenses incurred relative to the false or fraudulent **Claims** against any previously submitted **Claim** of such **Member**.

G.   INSPECTIONS, AUDIT AND VERIFICATION OF VALUES:

CORSA or its duly authorized representative shall be permitted at all reasonable times but is not obligated to inspect the covered property of the **Member**, premises used by the **Member** and the **Member**'s **Operations**, and to examine the **Member**'s books or records so far as they relate to coverage afforded by this Coverage Agreement.  Neither the right to make inspections nor the making thereof nor a report thereon shall constitute an undertaking on behalf of or for the benefit of any entity or person to determine or warrant that such property or **Operations** are safe or are in compliance with any law, rule, or regulation.

H.   MEMBER APPLICATION:

In granting coverage in this Coverage Agreement, CORSA has relied on the information and statements in the written application and accompanying information.  The **Member** and its agent signing the application represent that the statements contained in the written Application for Coverage, and reaffirmed as of the effective date of each **Coverage Period**, are the basis of this Coverage Agreement.  Failure of the **Member** to disclose all hazards existing as of the inception date of the coverage shall not prejudice the **Member** with respect to coverage provided, provided such failure or omission is not intentional, or grossly negligent.

I.   MORTGAGE CLAUSE:

The interest of any secured creditor, lien holder, or mortgagee on property covered hereunder is included as if a separate Amendment were attached hereto to the extent of the amount of mortgage or lien as of the date of loss subject to the limits of liability set forth in this Coverage Agreement.

J.   OTHER COVERAGE:

If other valid and collectible coverage is available to a **Covered Party(ies)** for a loss covered under this Coverage Agreement, CORSA's obligations are limited as follows:

1.   This Coverage Agreement shall at all times be excess over any other available coverage including any insurance naming the **Member** or other **Covered Party(ies)** as additional insured or additional **Covered Party(ies)** with respect to **Occurrences, Wrongful Acts** or **Privacy or Security Events** covered by this Coverage Agreement (other than coverage that is expressly and specifically excess of the limits of this Coverage Agreement) and nothing in this Coverage Agreement shall be construed to require CORSA to contribute with, or subject this coverage to the conditions of, any other Coverage Agreement or insurance;

69 of 70

©2017 County Risk Sharing Authority.  All rights reserved.

2. When this Coverage Agreement is excess, CORSA has no duty to defend any **Claim** or **Suit** that any insurer has a duty to defend, and CORSA will pay the amount of the loss, if any, that exceeds the sum of:

    a) The total amount that all such other policies would pay for the loss in the absence of this Coverage Agreement; and

    b) The total of all **Deductible** and self-insured amounts under all other policies and coverage agreements.

K.   SALVAGE AND RECOVERY:

All salvages, recoveries, and payments recovered or received subsequent to a loss settlement under this Coverage Agreement shall be applied as if recovered or received prior to the said settlement, and the parties hereto shall make all necessary adjustments.

L.   SUBROGATION:

CORSA shall be subrogated to all rights which the **Member** has against any person or other entity with respect to any **Claim** or payment under this Coverage Agreement, and the **Member** shall execute all papers required by CORSA and shall cooperate with CORSA to secure CORSA's rights.  In case any reimbursement is obtained or recovery made by the **Member** or CORSA on account of any loss covered by this Coverage Agreement, the net amount of such reimbursement or recovery, after deducting the actual cost of obtaining or making the same, shall be first applied in the following order:

    1. To reduce the amount of loss which exceeds the applicable **Limit of Liability**;

    2. To reduce CORSA's loss until CORSA is fully reimbursed;

    3. To reduce the **Member**'s loss because of the application of the **Deductible**.

CORSA shall have no right of subrogation against any person held strictly liable under Section 9.39 of the Ohio Revised Code unless such person committed a dishonest or fraudulent act.  For purposes of this General Condition L, a dishonest or fraudulent act means only dishonest or fraudulent acts committed with the manifest intent:

    a) To cause the **Member** to sustain a loss; and

    b) To obtain financial benefit for such person or for any other person or organization intended by such person to receive benefits to which such other person or organization was not lawfully entitled.

M.   WAIVER OF SUBROGATION:

This Coverage Agreement shall not be invalidated if the **Member** by written agreement has waived or shall waive its right of recovery from any party for loss or damage covered hereunder; provided that any such waiver is made prior to the **Occurrence** of said loss or damage.

CORSA CA 001 20170501
©2017 County Risk Sharing Authority.  All rights reserved.