**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, CLEVELAND DIVISION**

| | | |
|---|---|---|
| NANCY SMITH, | ) | Case No. 1:24-cv-00344 |
| | ) | |
| Plaintiff, | ) | |
| | ) | HON. DAVID A. RUIZ |
| v. | ) | |
| | ) | |
| CITY OF LORAIN, et al., | ) | MAG. JUDGE JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Defendants. | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO <u>LORAIN DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

I. FACTUAL ALLEGATIONS ..... 2

A. Plaintiff's Wrongful Conviction ..... 2

B. The Complaint Alleges That Defendant Officers, Disregarding Lorain Detective Cantu's Thorough Investigation, Conspired to Violate Plaintiff's Rights ..... 3

C. The Complaint Alleges That Municipal, City, and Supervisory Defendants Failed to Train, Supervise, and Implement Policies to Prevent Lorain's Practice of Pursuing Wrongful Convictions ..... 4

II. ARGUMENT ..... 4

A. Legal Standard ..... 5

B. The Complaint Plausibly and Sufficiently Pleads Allegations Against Defendants for Violations of Plaintiff's Constitutional Rights ..... 7

1. The Complaint Sufficiently Notifies Lorain Officer Defendants of Federal Claims Against Them ..... 7

2. The City Defendants' Arguments Disregard the Extensive Factual Allegations in the Complaint ..... 10

3. Defendant Officers Are Not Entitled to Qualified Immunity ..... 10

4. The Complaint Sufficiently Pleads Supervisory Liability ..... 13

C. The Complaint Plausibly and Sufficiently Pleads a *Monell* Claim Against Defendant City of Lorain ..... 16

D. The Complaint Alleges State Law Claims Upon Which Relief May Be Granted ..... 18

1. The Complaint Sufficiently Notifies Lorain Officer Defendants of State Claims Against Them ..... 19

2. Defendants' Argument Regarding *Respondeat Superior* is Not Yet Ripe ..... 19

3. The Statute of Limitations Does Not Bar Plaintiff's IIED Claim ..... 20

CONCLUSION ..... 22

## TABLE OF AUTHORITIES

*Alahverdian v. Ohio*, 2013 WL 1964009 (May 10, 2013, S.D. Ohio)....15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....5

*Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950 (E.D. Mich. 2017)....8

*Bass v. Robinson*, 167 F.3d 1041 (6th Cir. 1999)....13

*Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008)....5, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....5

*Biro v. Hartman Funeral* Home, 107 Ohio App.3d 508 (Ohio Ct. App. 1995)....21

*Brady v. Maryland*, 373 U.S. 83 (1963)....11

*Brown v. Mississippi*, 297 U.S. 278 (1936)....11, 12

*Chesbrough v. VPA*, *P.C.*, 655 F.3d 461 (6th Cir. 2011)....8

*City of Los Angeles*, *et al. v. Heller*, 475 U.S. 796 (1986)....17

*Colemon v. City of Cincinnati*, No. 21-5968, 2023 WL 5095804 (6th Cir. Aug. 9, 2023)....12

*Comer v. Risko*, 833 N.E.2d 712 (Ohio 2005)....20

*Cooper v. Youngstown*, 2016-Ohio-7184 (Ohio Ct. App. 2016)....22

*Courtright v. City of Battle Creek*, 839 F.3d 513 (6th Cir. 2016)....5

*Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021)....13, 14

*Crosby v. Twitter*, 921 F.3d 617 (6th Cir. 2016)....22

*Daubenmire v. City of Columbus*, 507 F.3d 383 (6th Cir. 2007)....9

*Directv*, *Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)....5

*Doe ex rel. Doe v. City of Roseville,* 296 F.3d 431 (6th Cir. 2002)....14

*Giglio v. United States*, 405 U.S. 150 (1972)....11

*Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982)....14

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601 (6th Cir. 2014) ....................21

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012) ....................6, 8

*Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992)....................14

*Hoover v. Langston Equipment Associates, Inc.*, 958 F.2d 742 (6th Cir. 1992) ....................8

*In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2015 WL 1849152
(E.D. Mich. Apr. 22, 2015)....................6

*In re Se. Milk Antitrust Litig.*, 555 F.Supp.2d 934 (E.D. Tenn. 2008)....................6, 19

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).................... *passim*

*Jackson v. Schultz*, 429 F.3d 586 (6th Cir. 2005) ....................5

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012)....................6, 8

*King v. Harwood*, 852 F.3d 568 (6th Cir. 2017)....................12

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................12

*Miller v. Pate*, 386 U.S. 1 (1967)....................12

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) ....................11

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978) ....................16

*Mooney v. Holohan*, 294 U.S. 103 (1935) ....................11, 12

*Napue v. Illinois*, 360 U.S. 264 (1959) ....................12

*Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016) ....................13

*Pyle v. Kansas*, 317 U.S. 213 (1942) ....................11, 12

*Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579 (6th Cir. 2012)....................6

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014)....................17

*Saucier v. Katz*, 533 U.S. 194 (2001) ....................11

*Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) ....................14

*Smith v. Lake Cnty.*, No. 2:15-CV-123, 2017 WL 568590 (N.D. Ind. Feb. 13, 2017)....................20

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999)....................12

*Stemler v. Florence*, 126 F.3d 856 (6th Cir. 1997)....................12

*United States v. Lochmondy*, 890 F.3d 817 (6th Cir. 1989)....................12

*Virgil v. City of Newport*, 2018 WL 344986 (E.D. Ky. Jan. 9, 2018)....................11

*Virgil v. City of Newport*, 545 F. Supp. 3d 444 (E.D. Ky. June 24, 2021)....................12

*Webb v. United States*, 789 F.3d 647 (6th Cir. 2015)....................11

*Williams v. Duke Energy Int'l*, *Inc*., 681 F.3d 788 (6th Cir. 2012)....................5, 7, 8

*Young v. Klutznick*, 652 F.2d 617(6th Cir. 1981)....................

**STATUTES AND OTHER AUTHORITIES**

FED. R. CIV. P. 15(a)....................22

FED. R. CIV. P. 8....................7, 16

FED. R. CIV. P. 8(a)(2)....................5

Ohio Rev. Code § 2744.04(A)....................19, 20

Restatement (Second) of Torts § 46....................21

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 1356 at 294 (1990)....15

NOW COMES Plaintiff, NANCY SMITH, by her attorneys LOEVY & LOEVY, and respectfully files this Response to Defendants' City of Lorain, Joel Miller, Russ Cambarare, The Estate of Cel Rivera, Pete Rewak, and Mark Carpentiere ("Lorain Defendants") Motion to Dismiss. In response, Plaintiff states as follows:

## INTRODUCTION

Plaintiff Nancy Smith was wrongfully convicted of unspeakable crimes. Due to Defendants' misconduct, Plaintiff lost more than 15 years of her life in prison. During that wrongful imprisonment, Plaintiff's family was torn apart, her children separated, and their lives broken beyond repair. To add insult to injury, not only did Plaintiff suffer 15 years of wrongful incarceration, she did so for crimes that never actually occurred. Shockingly, the Lorain City Defendants were always aware that the crimes never actually occurred and buried evidence demonstrating as much. After decades of injustice, Plaintiff now seeks justice for the life stolen from her. In response, Defendants filed a generic motion to dismiss challenging the sufficiency of Plaintiff's 28-page Complaint. For the reasons set forth below, Defendants motion should be resoundingly rejected.

As the Complaint sufficiently alleges, Plaintiff was a beloved school bus driver for preschool children attending Head Start when a parent falsely accused her of abuse. The false accuser—Defendant Grondin—did so in order to get an insurance payout, and her scheme succeeded when she finally got help from inside the police department. This incredible injustice could only occur because Defendant Officers, in concert with the other Defendants, were able to run a sham investigation within the Lorain Police Department, in total disregard for the thorough police investigation that had already established Plaintiff's innocence. These Defendant Officers

could engage in such misconduct because the City of Lorain and other entities failed to institute the necessary safeguards against rogue law enforcement.

Lorain Defendants' mechanical motion to dismiss challenges the substantial allegations in the Complaint by reciting legal doctrines without applying accurate standards for the motion to dismiss stage. Now, this Court must take Plaintiff's well-pleaded allegations in the Complaint as true, evaluating only whether those allegations plead sufficient facts to allow for a reasonable inference that Defendants are liable for the alleged misconduct. Plaintiff has easily met her burden and the Lorain Defendants' motion should be denied.

## I. FACTUAL ALLEGATIONS

In May 1993, Plaintiff was a school bus driver for Head Start and a single mother of four when she was falsely accused of horrific crimes against children. Dckt. 1 (Complaint), ¶¶ 1; 3; 11; 53.

### A. Plaintiff's Wrongful Conviction

Margaret Grondin, a parent and now a Defendant, originated the false accusations against Plaintiff. Dckt. 1, ¶¶ 8-10. The reason: Grondin wanted an insurance payout. *Id.* So, Defendant Grondin told police that Plaintiff had sexually abused Grondin's child and others who rode Plaintiff's bus, causing Plaintiff's life to be forever damaged. *Id*. ¶¶ 8-12; 53-57.

What began as a sinister insurance scheme resulted in Defendant Officers pursuing false charges, based on false facts, and conspiring to lock Plaintiff up for a crime that never actually happened. Dckt. 1, ¶¶ 4; 7; 113. Defendants' actions triggered Plaintiff's decades-long fight to be free from Defendants' false pursuit of "justice." *Id.* ¶¶ 53-55; 118. Sadly, Plaintiff could not overcome the sham investigation Defendants manufactured. *Id.* ¶¶ 4; 7; 113. As a result, Plaintiff spent 15 years in prison for a fictitious crime. *Id.*

### B. The Complaint Alleges That Defendant Officers, Disregarding Lorain Detective Cantu's Thorough Investigation, Conspired to Violate Plaintiff's Rights

Defendant Grondin originally reported false sexual abuse allegations against Plaintiff to the Lorain Police Department. Dckt. 1, ¶ 54. Detective Tom Cantu of the Lorain Police Department led the investigation and did so methodically. *Id.* at 59-71. Detective Cantu questioned Plaintiff extensively, submitted her to a polygraph examination (which she passed), and conducted a thorough investigation on multiple other fronts. *Id.* at ¶¶ 59-67. Cantu's investigation also included interviewing 11 alleged victims, potential witnesses, parents, and suspects, none of whom incriminated Plaintiff in any way. *Id.* at ¶¶ 66-71. Detective Cantu determined that, in fact, *no* crimes had occurred, let alone any wrongdoing by Plaintiff. *Id.* at ¶¶ 68-69. The exculpatory results of this investigation were buried by the Lorain Defendants for decades and form the basis of one of Plaintiff's due process theories. *Id.* at ¶¶ 16-19, 37, 145-52.

Nevertheless, Defendant Officers—colleagues of Detective Cantu at the Lorain Police Department—conspired with a prosecutor (Defendant Rosenbaum) to conduct a second sham "investigation" into the allegations they knew were unfounded. Dckt. 1, ¶¶ 71-78. As part of this conspiracy, Defendant Officers coerced witnesses, conducted unduly suggestive questioning and identification procedures, and manufactured a false case against Plaintiff. *Id.* at ¶¶ 77-78. Defendant Officers conducted interviews of children, purported witnesses, and Defendant Grondin. *Id.* at ¶ 15. During their "investigation," Defendant Officers discovered exculpatory evidence that they buried, which would have reinforced Plaintiff's previous exoneration by Detective Cantu and, had appropriate municipal mechanisms been in place, would have prevented prosecution on false charges. *Id.* at ¶¶ 98-106.

Specific misconduct included burying evidence that would have fully discredited the State's main witness, Defendant Grondin, regarding her criminal charges for distributing cocaine

in the presence of her minor children, which motivated her to cooperate as a government informant. Dckt. 1, ¶¶ 98-106. Defendant Officers also learned that the children who were alleged victims were actually "coaxed" by parents, provided incoherent and illogical responses, and were not, in fact, victims of sexual abuse. *Id.* at ¶ 18. Defendant Officers also fabricated statements from the young children who rode Plaintiff's bus, alleging that Plaintiff had sexually abused them. *Id.* at ¶ 110. Defendants intentionally withheld this exculpatory evidence to secure Plaintiff's wrongful prosecution, and later, conviction. *Id.* at ¶¶ 19; 31.

### C. The Complaint Alleges That Municipal, City, and Supervisory Defendants Failed to Train, Supervise, and Implement Policies to Prevent Lorain's Practice of Pursuing Wrongful Convictions

As stated in the Complaint, this conspiracy to frame Plaintiff was only possible due to institutional failures in the City of Lorain and other entities. *See* Dckt. 1, ¶¶ 71-76; 152-55; 176-79. Defendant Officers freely disregarded Detective Cantu's previous exonerative investigation to pursue this reckless investigation, withhold exculpatory evidence, and fabricate false reports and testimony to frame Plaintiff. *Id.* at ¶¶ 59-71;147.

The Complaint lays out each of the federal and state law claims against Defendants through eight counts, each of which begins with a paragraph that states, "Each of the Paragraphs of this Complaint is incorporated as if restated fully herein." Dckt. 1, ¶¶ 135; 145; 156; 163; 170; 175; 180; 185. Therefore, despite Lorain Defendants' attempt to whittle down the Complaint's allegations, every count Plaintiff alleged against any Defendant must be read in the context of the extensive factual allegations set forth throughout the entire Complaint.

## II. ARGUMENT

Lorain Defendants' Motion to Dismiss contends: (1) Plaintiff failed to plead sufficient facts regarding individual Defendants to support Counts I-V; (2) this alleged insufficiency

triggers qualified immunity for Defendant Officers; (3) this insufficiency also causes Plaintiff's *Monell* claims to fail; (3) the State law claims fail to state an actionable claim; (4) the City of Lorain is immune from tort liability; and (5) the statute of limitations has run on all state law claims. Dckt. 26, pp. 3-4. For the following reasons, Lorain Defendants' motion must be denied.

**A. Legal Standard**

Plaintiff's Complaint easily satisfies the pleading standard at this stage. A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The "pleading standard Rule 8 announces does not require 'detailed factual allegations,'" only "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, as Rule 8 provides, "the complaint need not set out the facts in detail," *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012), and a complaint may only be dismissed "'if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings.'" *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005).

In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). In so doing, as implied by the fact that the Court must make favorable inferences from the Complaint, the Court must also consider the totality of the Complaint rather than viewing it piecemeal. *See*, *e.g.*, *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) (noting a conclusory allegation but pointing to the factual allegations and then holding that "t]aken as a whole, and considered in the light most

favorable to [the plaintiff], the factual allegations in the complaint state[d] a plausible" § 1983 claim); *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2015 WL 1849152, at *6 (E.D. Mich. Apr. 22, 2015) (finding when, "viewed in their entirety" the allegations supported an inference of conspiracy); *In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 943 (E.D. Tenn. May 20, 2008) ("While viewing each of these factual allegations in isolation may lead one to the conclusion drawn by the defendants . . . a view of the complaint as a whole, which this Court must take, and accepting all of the factual allegations as true, does support a plausible inference of a conspiracy[.]").

Indeed, it is well established that: "Although *Twombly* and *Iqbal* clarified that a complaint must state a plausible claim—not just a possible claim—this Court has cautioned against reading '*Twombly* and *Iqbal* so narrowly as to be the death of notice pleading.'" *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 583 (6th Cir. 2012) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012), in turn quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012)).

Accordingly, the core issue remains one of notice: "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," it need only "assert sufficient facts to provide the defendant with 'fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555; *see also*, *e.g.*, *Milk Antitrust Litig.*, 555 F. Supp. 2d at 943 (holding that a complaint need not address all "specific questions about 'who, what, when and where,'" so long as the factual allegations "put defendants on notice concerning the basic nature of their complaints against the defendants and the grounds upon which their claims exist").

### B. The Complaint Plausibly and Sufficiently Pleads Allegations Against Defendants for Violations of Plaintiff's Constitutional Rights

The Complaint sufficiently pleads allegations against Lorain Defendants for the myriad violation of Plaintiff's constitutional rights. Ignoring the actual Complaint, and as a purported basis for dismissing Counts I (Detention Without Probable Cause), II (Due Process Violations), III (Fabricated Evidence), IV (Supervisory Liability), and V (Failure to Intervene), Defendants argue that they cannot be liable for these claims because Plaintiff's allegations are insufficient. Dckt. 26, pp. 5-6. Defendants state, "nowhere in Counts I through V does Plaintiff make any effort to describe individual conduct of any of the Lorain Officer Defendants" and "Plaintiff repeatedly attempts to allege supervisory liability without ever alleging specific actions of individual supervisors." *Id.* at 6; 8. Not so. As amply demonstrated above, and incorporated here, these arguments ignore and therefore mischaracterize the factual allegations made in the Complaint.

#### 1. The Complaint Sufficiently Notifies Lorain Officer Defendants of Federal Claims Against Them

Defendants' first argument for dismissal—that Plaintiff does not sufficiently plead specific violations of her constitutional rights—easily fails. Here, Lorain Defendants' claim that the Complaint's allegations, particularly against Defendant Officers, do not provide fair notice of the claims they face. Dckt. 26, p. 6 ("Beyond the collective description that the Lorain Officers were employed by the Lorain Police Department, Plaintiff never identifies the Defendant Officers individually, nor does she ever describe and attribute individual conduct to any of these Officers."). Yet, Rule 8's notice pleading requirement of a "short and plain statement" does not require Plaintiff to "set out the facts in detail[,]" *Williams*, 681 F.3d at 799 (quoting FED. R. CIV. P. 8). Ignoring this, Defendants argue that Plaintiff, at the initial pleading stage, must have

alleged actions regarding each and every named Defendant for every claim so that they may "distinguish . . . their conduct not only from each other, but from the conduct of the other Defendants as well." Dckt. No. 26, p. 7. But Defendants' position would surely support "'the death of notice pleading,'" which the Sixth Circuit has explicitly warned against. *Keys*, 684 F.3d at 609 (quoting *HDC*, 675 F.3d at 614).

Importantly, Rule 8's pleading standard is distinct from pleading fraud, which Defendants indirectly invoke, requiring greater particularity to survive a motion to dismiss. *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 965 (E.D. Mich. July 26, 2017) ("Collective references to 'the defendants' or other such categories by themselves fail the specificity test of Rule 9(b)") (relying on *Hoover v. Langston Equipment Associates*, *Inc*., 958 F.2d 742, 745 (6th Cir. 1992). An examination of Defendants' language shows they are improperly invoking this heightened standard: "Plaintiff should not be allowed to use the Complaint as a basis for *a fishing expedition*, exposing the individual Defendants to the expense and riggers of litigation absent *specific factual allegations* as to their conduct that alleges a constitutional violation." Dckt. No. 26, p. 7 (emphasis added); *cf. Chesbrough v. VPA*, *P.C*., 655 F.3d 461, 466- 67 (6th Cir. 2011) (this "heightened pleading standard is also designed to prevent '*fishing expeditions*,' to protect defendants' reputations from allegations of fraud, ibid., and to narrow potentially wide-ranging discovery to relevant matters[.]") (internal citations omitted) (emphasis added); *Williams*, 681 F.3d at 799 ("set[ting] out the facts in detail" is not required under Rule 8).

Unlike fraud, the core consideration under Rule 8, again, is notice. *Twombly*, 550 U.S. at 554-55. Here, Lorain Defendants have ample notice of the allegations against them as required by the applicable standard. The Defendants have no legal basis for an "individualized" pleading

for every named Defendant. Rather, that is what discovery devices are for. At this stage, Plaintiff's allegations have sufficient particularity to survive dismissal.

For instance, the allegations in Plaintiff's Complaint contend that the named Defendant Officers Joel Miller, Russ Cambarare, (The Estate of) Cel Rivera, Pete Rewak, and Mark Carpentiere, in total disregard for the investigative findings of Detective Cantu, their colleague at the Lorain Police Department, were personally involved in a baseless and maliciously targeted "investigation." Dckt. 1, ¶¶ 47; 64-71. As the Complaint lays out in detail, these Defendant Officers—a faction within the greater department—presumed Plaintiff's guilt by reopening the closed investigation, then, individually and in concert with one another, fabricated statements of witnesses, suppressed evidence of their own misconduct and critical exculpatory evidence. *Id.* at ¶¶ 18-19; 31; 72-80; 110.

Taken together, and viewed in the light most favorable to Plaintiff, there is no question that the Complaint's factual allegations support "more than a sheer possibility that [Defendants] have acted unlawfully." *Iqbal*, 556 U.S. at 678. Defendant Officers comprised a small group within the Lorain Police Department who set forth to frame Plaintiff for a crime for which she was entirely and unequivocally innocent. As discussed further below, Defendants City of Lorain and other named entities facilitated this misconduct by failing to adequately implement and train on safeguards to prevent such rogue behavior. Dckt. 1, ¶¶ 59-71; 147. The Complaint puts the Lorain Defendants on notice of the facts supporting Plaintiff's claims – facts which, when read in the light most favorable to Plaintiff as is required in the consideration of a Rule 12(b)(6) motion, entitle Plaintiff to bring these claims. *See Daubenmire v. City of Columbus*, 507 F.3d 383, 387-88 (6th Cir. 2007).

### 2. The Lorain Defendants' Arguments Disregard the Extensive Factual Allegations in the Complaint

Additionally, Defendants' assertions ignore the entirety of the Complaint and focus almost exclusively on the legal counts, disregarding the factual allegations set out in paragraphs 1-134. *See*, *e.g.*, Dckt. No. 26, p. 6. *But see*, *e.g.*, Dckt. 1, ¶ 135 ("Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.") Allegations in the Complaint are more than sufficient to illustrate Defendant Officers' liability, either directly, as coconspirators, or as supervisors. Plaintiff's Complaint identifies the individual Defendants and then consistently discusses the misconduct of Defendant Officers in relation to other individuals involved, including Detective Cantu, Defendant Grondin, and Defendant Rosenbaum, which is entirely proper and sufficient. *See*, *e.g*., Dckt. 1 ¶¶ 54-66; 71-87. Defendant Officers are therefore on adequate notice of the claims against them.

Defendants' incorrect assertion that Plaintiff's Complaint is insufficient serves as the basis for most of their subsequent dismissal arguments. According to Lorain Defendants, the Complaint's "insufficiency" triggers qualified immunity for the Defendant Officers, negates Plaintiff's claim for supervisory liability, cuts off *Monell* liability, and fails to support her state claims. Dckt. 26, p. 4. As stated above, this presumption is false. The Court can end its analysis of Defendants' sufficiency arguments here, as the allegations in the Complaint upend each of them. Should the Court examine those arguments, Plaintiff defeats them in turn below.

### 3. Defendant Officers Are Not Entitled to Qualified Immunity

Defendants next repurpose their first argument while attempting to manufacture a qualified immunity defense: "the law is clear that the individual defendant officers are entitled to qualified immunity from suit where a complaint fails to allege conduct of the officer that sets forth a violation of clearly established law." Dckt. 26, p. 7 ("This burden must be met as to each

defendant individually, based on their own conduct."). Plaintiff has already refuted the premise of Defendants' qualified immunity argument: that the Complaint is insufficient. *See* Section II.B.1, *supra*; Dckt. 26, pp. 7-8. To apply the pleading standard used by Lorain Defendants would heighten the notice pleading requirements of *Twombly* and *Iqbal* in favor of one more properly suited for cases requiring greater particularity, such as fraud under Rule 9(b). *See* Section II.B.1, *supra*.

Sufficiency of the Complaint aside, Defendants do not enjoy qualified immunity under these circumstances. Defendants violated clearly established law and do not enjoy the shield of qualified immunity for their misconduct. When a defendant raises qualified immunity, the burden shifts to the plaintiff to show a violation of a clearly established constitutional right. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). In these circumstances, Courts must answer two questions: (1) in viewing evidence most favorable to the injured party, was there a violation of a constitutional right; and (2) was that right clearly established. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, Defendants' qualified immunity argument has no merit.

It was established long before 1993 that police officers who suppress exculpatory evidence violate due process. *See Mooney v. Holohan*, 294 U.S. 103, 112 (1935); *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942); *Brown v. Mississippi*, 297 U.S. 278, 286 (1936); *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Moldowan v. City of Warren*, 578 F.3d 351, 381-82 (6th Cir. 2009) ("'*Brady*-derived' claims . . . date back as far as 1964" (citation omitted)); *Jackson v. City of Cleveland*, 925 F.3d 793, 823 (6th Cir. 2019) ("In 1975, it was clearly established law that prosecutorial withholding of exculpatory evidence violates a criminal defendant's Fourteenth Amendment right to due process."); *Virgil v. City of Newport*, 2018 WL 344986, at *8 (E.D. Ky. Jan. 9, 2018) ("As the *Moldowan* Court

noted, '[d]ecisions from other circuits recognizing the type of Brady-derived claims that [Virgil] asserts here date back as far as 1964.'") (internal quotation marks omitted); *Virgil v. City of Newport*, 545 F. Supp. 3d 444, 479 (E.D. Ky. June 24, 2021), *aff'd sub nom* (rejecting a qualified immunity claim when the constitutional right was clearly established, stating "evidence that a defendant was investigated and cleared in cases that were thought to be linked is plainly exculpatory.") (citing *Colemon v. City of Cincinnati*, No. 21-5968, 2023 WL 5095804 (6th Cir. Aug. 9, 2023)).

Second, it has long been clearly established that police officers violate the Constitution when they fabricate false evidence for use in criminal prosecutions. *See Mooney*, 294 U.S. at 111; *Pyle*, 317 U.S. at 215-16; *Brown*, 297 U.S. at 286; *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Miller v. Pate*, 386 U.S. 1, 7 (1967); *Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999); *Stemler v. Florence*, 126 F.3d 856, 872 (6th Cir. 1997) (concluding that a police officer "violate[s] . . . due process if he knowingly fabrication evidence against [a criminal defendant], and if there is a reasonable likelihood that the false evidence could have affected the judgment of the jury"); *United States v. Lochmondy*, 890 F.3d 817, 822 (6th Cir. 1989); *Jackson*, 925 F.3d at 825-26 ("as far back as 1935, the Supreme Court recognized that the introduction of fabricated evidence violates 'the fundamental conceptions of justice which lie at the base of our civil and political institutions.'") (quoting *Mooney*, 294 U.S. at 112).

Finally, it was clearly established that the Constitution prohibits malicious prosecution and detention in the absence of probable cause. *See King v. Harwood*, 852 F.3d 568, 582-83 (6th Cir. 2017) (holding that individuals have a clearly established Fourth Amendment right to be free from malicious prosecution, citing, among other authorities, *Malley v. Briggs*, 475 U.S. 335, 340-45 (1986), which affirmed, "an officer who seeks an arrest warrant by submitting a

complaint and supporting affidavit to a judge is not entitled to immunity unless the officer has an objectively reasonable basis for believing that the facts alleged in his affidavit are sufficient to establish probable cause"); *Jackson*, 925 F.3d at 826-27 (rejecting a qualified immunity defense based on a 1949 case establishing notice that an officer's actions equivalent to malicious prosecution were unconstitutional).

In light of the Complaint's comprehensive allegations laid out above, which the Court must presume as true, Defendant Officers do not enjoy qualified immunity when they have engaged in such misconduct that was clearly established as unconstitutional. The Complaint, therefore, puts Defendant Officers on notice of these federal claims and should not be dismissed.

**4. The Complaint Sufficiently Pleads Supervisory Liability**

Defendants' argument regarding supervisory liability (Count IV) repeats the same mistakes as above. Defendants who were supervisors, charged with overseeing the "investigation" and other Defendant Officers, can plausibly be liable under supervisory liability.

In the Sixth Circuit, for a Plaintiff to survive a 12(b)(6) motion on a supervisory liability claim, she must first allege "active unconstitutional behavior" by supervisory defendants, which may be established through implicit authorization, approval, or knowing acquiescence to the misconduct. *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 241-42 (6th Cir. 2016) (complaint plausibly pleaded supervisor liability when supervisor "knowingly acquiesced in the unconstitutional conduct of his subordinates through . . . his job function" and plausibly caused the constitutional violation at issue) and *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (allegations and evidence that a supervisor "failed to intervene to stop" on misconduct gives rise to a claim of supervisory liability)). Although a supervisor is not liable simply for failing to act, "[a]t a minimum a plaintiff must

show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

Contrary to Defendants' position, Plaintiff has sufficiently alleged constitutional violations by Defendant Officers that were only possible through supervisory acquiescence. *See*, *e.g.*, Dckt. 1, ¶¶ 14-22; 47; 53-87; 152-55. Put simply, Defendant Officers who were *not* acting in a supervisory capacity—those in need of supervision—could not have succeeded in their misconduct without such acquiescence. *Id.* (alleging how Defendant Officers disregarded a separate, internal police investigation that disproved the accusations and Plaintiff's involvement, reopened the case, and proceeded to fabricate new evidence to frame Plaintiff, under the authority of supervisory Defendant Officers). *See Peatross*, 818 F.3d at 242 ("Accordingly, where an official's execution of his or her job function causes injury to the plaintiff, the official may be liable under a supervisory-liability theory.") (citing *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992)).

Second, Plaintiff must plausibly allege "a causal connection" between the supervisors' involvement and Plaintiff's injuries. *Peatross,* 818 F.3d at 242; *Crawford*, 15 F.4th at 761-62; *Doe ex rel. Doe v. City of Roseville,* 296 F.3d 431, 441 (6th Cir. 2002). Here, Plaintiff has pleaded sufficient facts to render both "active unconstitutional behavior" and causation plausible. Dckt. 1, at ¶¶ 53-80; 152. Again, the Complaint lays out allegations regarding the 1993 exoneration by Lorain Detective Cantu, how Defendant Officers, including those in a supervisory capacity, were all working for the Lorain Police Department, which had received the reported allegations, and Defendant Officers were able to reopen the closed investigation and rely on witness coercion, unduly suggestive questioning and identification procedures, and

manufacturing a false case against Plaintiff. *Id.* All this was in total disregard of their fellow Lorain Detective's documented refutation of the false claims. *Id.*

Thus, contrary to Defendants' position that the Complaint is insufficient, the extensive factual allegations in the Complaint show that the supervising Defendant Officers had to have been aware of an active and then closed investigation, that Plaintiff had been exonerated, that no crime had occurred, and charged with *overseeing* the second investigation, which was fueled by unconstitutional misconduct. *See* Dckt. 1, at ¶¶ 53-80, 152; Dckt. 26, p. 8 (referring only to the counts, ignoring these fulsome factual allegations). These supervising Defendants were aware of what had transpired and yet, allowed other Defendant Officers to proceed with seeking Plaintiff's arrest and formal charging of crimes she did not commit, all while withholding the exculpatory evidence that would have halted the wrongful prosecution.[1]

In sum, Plaintiff has sufficiently alleged that supervisory Defendant Officers participated in the denial of her constitutional rights by knowing about, condoning, and overseeing specific practices by other Defendant Officers at Lorain Police Department in which they ignored and suppressed exculpatory evidence, coerced witnesses, and otherwise fabricated evidence to frame Plaintiff. Dckt. 1, ¶¶ 14-22; 47; 53-87; 152-55. Those allegations state a claim against them in their individual capacities, and thus, Defendant Officers cannot escape liability by manufacturing

[1] In effect, Defendants are contesting the truth of the allegations in the Complaint. Contesting the allegations of the Complaint is not a basis for dismissal under 12(b)(6), and this Court's review of a 12(b)(6) motion is not a procedure for resolving questions about disputed facts. *Bassett*, 528 F.3d at 430. Because Plaintiff's allegations must be accepted as true, *id.*, the Court may not dismiss the Complaint now on the basis that the allegations are false. *Cf. Alahverdian v. Ohio*, 2013 WL 1964009, at *9 (S.D. Ohio May 10, 2013) (explaining that "'[t]he purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case.'" (quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 1356 at 294 (1990)).

an improperly high pleading standard requiring greater particularity to survive dismissal. *See* Section II.B.1-2, *supra*.

### C. The Complaint Plausibly and Sufficiently Pleads a *Monell* Claim Against Defendant City of Lorain

In their next at bat, the City Defendants again repurpose their flawed argument refuted above, concluding that Plaintiff has not sufficiently pleaded her *Monell* claim (Count VII)[2] against the City of Lorain: "And, because Plaintiff failed to sufficiently plead any § 1983 violations against the Lorain Officer Defendants, Plaintiff is barred from bringing a *Monell* claim against the City of Lorain." Dckt. 26, p. 10. Defendants' motion further states, "Plaintiff has failed to identify any policy of the City that is the moving force behind any alleged constitutional violation. Plaintiff offers only insufficient legal conclusions." *Id.* at 11.

The Court can dispose of this argument for dismissal on the same grounds as above. Defendants' argument invokes a higher legal standard than is required by notice pleading, as established by Rule 8, *Twombly*, and *Iqbal*. *See* Section II.B.1, *supra.* Defendants again ignore the sufficient factual allegations laid out in the Complaint, including those regarding practices within the Lorain Police Department. *See* Section II.B.2-4, *supra.* However, Plaintiff has provided additional legal analysis for the Court below.[3]

It is well-established that a municipal liability claim brought pursuant to § 1983 and *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), is derivative of and dependent upon the underlying constitutional violation(s) committed by individual government agents. *See*

---

[2] The Complaint's enumerated Counts inadvertently skip Roman numeral VI due to a typographical error. Plaintiff alleges eight total Counts and will use the same Roman numerals used in the Complaint here.

[3] It is worth restating that at this stage, Plaintiff need not "prove" her claims. The Federal Rules and longstanding case law simply require Plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. Defendants will have the opportunity to argue proof, and to hold Plaintiff to a higher evidentiary burden, at summary judgment.

*Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("*Monell* holds that municipalities may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation. There can be no liability under *Monell* without an underlying constitutional violation.") (citations omitted). Defendants have pointed to a lack of individualized allegations as the basis for their insufficiency arguments, and their *Monell* position is no different. Dckt. 26, p. 11, *relying on City of Los Angeles*, *et al. v. Heller*, 475 U.S. 796, 799 (1986). Here, Plaintiff has amply demonstrated a flurry of constitutional violations, each of which would enable municipal liability through Plaintiff's *Monell* claim, for example: (1) the withholding of exculpatory evidence; (2) fabrication of false evidence; (3) unduly suggestive identification procedures; (4) malicious prosecution of an innocent person; and (5) conspiracy to violate the constitutional rights of an innocent person. Dckt. 1.

Based on Sixth Circuit law and pleading standards post-*Iqbal*, Plaintiff's *Monell* claim against Defendant City of Lorain must survive dismissal. In her Complaint, Plaintiff alleges that Defendant Officers' violations of her constitutional rights were "undertaken pursuant to a routine practice of the municipal and government Defendants to pursue wrongful prosecutions and wrongful convictions through reckless investigations and fabricated evidence[,]" and that those "policies and practices [] were the moving force driving the foregoing constitutional violations." *See* Dckt. 1, ¶¶ 142, 153-55, 176-79 (pleading, among other allegations, that "these widespread practices . . . are so well-settled so as to constitute *de facto* policy"). These legal claims come on the heels of the extensive factual allegations discussed above, concerning the acts of Defendant Officers who took over the investigation following Detective Cantu's exoneration of Plaintiff. *See*, *e.g.*, *id.* at ¶¶ 59-71, 76-80, 87, 96-110. Accepting Plaintiff's allegations as true and drawing

all inferences in the light most favorable to her, Plaintiff has sufficiently pleaded a *Monell* claim against the City of Lorain.

Failure to train is a subset of a *Monell* municipal policy claim. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). A municipality can be directly liable for a failure to train when the need for more or better training is sufficiently obvious and the lack of training causes injury. *Id*. at 388-89. In *Jackson v. City of Cleveland*, the Sixth Circuit held that a reasonable jury could find that Cleveland police detectives' unofficial "training" as to its *Brady* obligations amounted to "no training, on-the-job or otherwise" regarding plaintiff's allegation that the training program was deficient to satisfy detectives' *Brady* obligations. 925 F.3d at 836 (citing an officer's testimony that "he received 'no [training] to place any witness statements in the official file' despite the manual's rule "that those witness statements be available to prosecutors[.]" (emphasis in original). The Sixth Circuit's ruling goes beyond what is required to survive dismissal at the 12(b)(6) stage. *See id; Virgil*, 545 F. Supp. 3d at 490-91 (citing *Jackson*, finding "a genuine issue of fact as to whether [city police] training program was inadequate for the tasks that its officers had to perform, including recording and disclosing material, exculpatory evidence.")

Here, Plaintiff's Complaint alleges that the City of Lorain failed to train its officers as to critical police functions, including producing exculpatory evidence, the prohibition of fabricating evidence, and proper investigative procedures. Dckt. 1, ¶¶ 14-22, 53-87, 144, 152-55, 164, 167, 176. This is more than enough to survive dismissal, and even support a jury determination of liability in the Sixth Circuit. *See Jackson*, 925 F.3d at 836; *Virgil*, 545 F. Supp. 3d at 490-91.

**D. The Complaint Alleges State Law Claims Upon Which Relief May Be Granted**

Defendants' arguments regarding Plaintiff's state-law claims fail as well. Here, as before, Defendants reuse the same flawed insufficiency argument and misapply key legal doctrines.

### 1. The Complaint Sufficiently Notifies Lorain Officer Defendants of State Claims Against Them

Still relying on their misinterpretation of notice pleading, Defendants claim "Plaintiff's state law claims face the same pleading deficiencies that her federal claims do." Dckt. No. 26, p. 11 (citing ¶¶ 180-84 of the Complaint, the legal claim for Intentional or Reckless Infliction of Emotional Distress, ignoring the extensive factual allegations pleaded earlier). Defendants again expect this Court to demand more particularized pleading than is required. *See* Section II.B-C, *supra*. Without belaboring this point, binding precedent requires only factual allegations "concerning the basic nature of [Plaintiff's] complaints against the defendants and the grounds upon which their claims exist[,]" not all "specific questions about "who, what, when and where[.]" *Twombly*, 550 U.S. at 555; *Milk Antitrust Litig*., 555 F. Supp. 2d at 943. As stated above, the Complaint puts the City Defendants on notice, which includes the state claims, based on the same underlying factual allegations extensively pleaded in the Complaint.

### 2. Defendants' Argument Regarding *Respondeat Superior* is Not Yet Ripe

As to Plaintiff's *Respondeat Superior* claim (Count XIV), City Defendants raise an immunity defense under Ohio Rev. Code 2744, claiming that "[r]espondeat superior does not lie against a municipal defendant at state law" and that the City, as a municipality, is immune under this Ohio statute for intentional torts. Dckt. 26, p. 12 (relying on Ohio Rev. Code § 2744). Defendants assert that no exception to this immunity applies and Plaintiff's state law claims should therefore be dismissed.

A determination of the City's immunity under *respondeat superior* is not yet ripe. In the Sixth Circuit, questions of ripeness allow courts to prevent premature adjudication of otherwise cognizable claims. *See Jackson*, 925 F.3d at 808 (citations omitted) ("[T]he ripeness doctrine is discretionary," and courts should determine whether a "'judicial resolution would be desirable

under all of the circumstances'" and the "'hardship to the parties if judicial relief is denied' before the claim is allowed to ripen further.") (quoting *Young v. Klutznick*, 652 F.2d 617, 625-26 (6th Cir. 1981).

*Respondeat superior* is a doctrine of secondary liability, and any dispositive finding as to the City would only be ripe after a determination of liability for the principal—the other named Defendants. *See Comer v. Risko*, 833 N.E.2d 712, 716 (Ohio 2005) ("If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions.") Because Plaintiff's lawsuit has not begun discovery and there has been no finding of primary liability, adjudicating the issue of *respondeat superior* at this preliminary stage is premature. *See Smith v. Lake Cnty.*, No. 2:15-CV-123, 2017 WL 568590, at *8-9 (N.D. Ind. Feb. 13, 2017) (finding that claim of *respondeat superior* was not "subject to dismissal" at the motion to dismiss stage, allowing the plaintiff to have pleaded "alternative theories of recovery, or alternative claims"). At the very least, any determination of the applicability of *respondeat superior* should happen at the summary judgment stage, when the parties can more fully brief the merits of this issue.

### 3. The Statute of Limitations Does Not Bar Plaintiff's IIED Claim

Finally, Defendants make a conclusory argument that Plaintiff's state law claims are barred by a two-year statute of limitations because the events giving rise to her claims occurred in 1993 and 1994. Dckt. 26, p. 13 (citing Ohio Rev. Code § 2744.04(A)). As established below, this argument also fails.[4]

As stated above, Plaintiff alleges that Defendant Officers and others caused her wrongful prosecution, conviction, and incarceration in violation of her constitutional rights. *See generally*,

---

[4] Plaintiff will respond to City Defendant's affirmative defense regarding the statute of limitations as to her IIED claim, given that *respondeat superior* is not ripe at this stage.

Dckt. 1. Being framed for a crime one did not commit is conduct that causes emotional distress and constitutes "extreme and outrageous conduct" under the IIED standard. *See* Dckt. 1, ¶¶ 122-34; *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 619 (6th Cir. 2014) (citing Restatement (Second) of Torts § 46, "extreme and outrageous" is "go[ing] beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

As to the timing, a "cause of action for intentional infliction of emotional distress does not accrue until the tort is *complete*." *Biro v. Hartman Funeral* Home, 107 Ohio App.3d 508, 514 (Ohio Ct. App. 1995) (emphasis added). While Defendants have focused on the *onset* of the injury for which Plaintiff seeks redress, Ohio law provides that it is when the injury is *complete* that a claim for IIED accrues. Dckt. 26, p. 13; *Biro*, 107 Ohio App.3d at 514. Otherwise, a plaintiff facing an ongoing set of injuries over the course of years would be forced to file serial lawsuits seeking redress for the same injury again and again.

Plaintiff filed this action on February 23, 2024, less than two years after the Lorain County Prosecutor and Court vacated Plaintiff's wrongful conviction, dismissed all charges against her, and vacatur was granted. *See* Dckt. 1, ¶ 118; Dckt. 22-1 (Vacatur Orders).[5] With this suit, Plaintiff seeks redress for the bogus and traumatic criminal prosecution that continued until 2022, nearly 29 years after Defendants' misconduct began. As such, the two-year statute of limitations is no bar on Plaintiff's IIED claim because the infliction of emotional distress—through the criminal charges, incarceration, and prosecution all the while—had not ended until

[5] It should be noted that Plaintiff's extreme emotional distress did not cease upon the vacatur of the case against her and continues to this day. Dckt. 1, ¶ 6 ("Now free, Plaintiff lives each day with the physical injuries, mental anguish, and emotional trauma caused by Defendants' egregious misconduct."). Applying a two-year timeline, however, still satisfies the statute of limitations, despite City Defendants' assertions.

the prosecution was complete.[6] Until then, Plaintiff was *Heck* barred from filing suit. Plaintiff's claim is therefore timely.[7]

## CONCLUSION

Plaintiff has sufficiently alleged that the City Defendants violated her constitutional rights. Defendants' Motion to Dismiss largely ignores the allegations in the Complaint and misapplies binding precedent. As such, and for the reasons discussed above, the Lorain Defendants' motion should be denied. In the alternative, to the extent that the Court finds any allegations insufficiently pleaded, Plaintiff seeks leave to file an amended complaint. *See* FED. R. CIV. P. 15(a); *Crosby v. Twitter*, 921 F.3d 617, 627-28 (6th Cir. 2016).

RESPECTFULLY SUBMITTED,

/s/ Kathryn Montenegro
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Michael Kanovitz
Elliot Slosar
Amy Robinson Staples
Kathryn Montenegro
Loevy & Loevy
311 N. Aberdeen St., 3rd floor
Chicago, Illinois 60607
(312) 243-5900

---

[6] It also bears mentioning, as it concerns the accrual of Plaintiff's claims—which allege that she was wrongfully prosecuted, convicted, and imprisoned—that Ohio courts have looked to *Heck v. Humphrey*, 512 U.S. 477 (1994), which forbids wrongfully convicted individuals like Plaintiff from pursuing damages related to that conviction and prosecution until the conviction has been overturned, is another reason to find that the statute of limitations is no bar to Plaintiff's claims here. *See*, *e.g.*, *Cooper v. Youngstown*, 2016-Ohio-7184, ¶¶ 22 (Ohio Ct. App. 2016) (applying *Heck* to bar Plaintiff's claims that necessarily implied the invalidity of her conviction).

[7] Further, and in the alternative, under the continuing tort theory, the claim cannot have accrued before the prosecution did either because the harm of being prosecuted was, until that moment, "continuing.". *See Spriestersbach v. Ohio Edison Co.*, No. 95CA006026, 1995 WL 641146, at *1 (Ohio Ct. App. 1995) ("Under the continuing tort theory, a cause of action accrues at the time the tortious conduct ceases."). On either ground, the Court should reject this argument.

**CERTIFICATE OF SERVICE**

I, Elliot Slosar, an attorney, hereby certify that on July 10, 2024, I delivered by electronic means a copy of the foregoing motion to all counsel of record and served a copy via U.S. Mail to the following:

Margaret Grondin
27409 Detroit Rd., Apt. G10
Westlake, OH 44145

/s/ Elliot Slosar
Attorney for Plaintiff